# **EXHIBIT A**

# ALABAMA SJIS CASE DETAIL



**PREPARED FOR: DAWN BOWMAN**
**12/6/2024 8:43:02 AM**

County: **69**   Case Number: **CV-2024-900054.00**   Court Action:

Style: **LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL**

`Real Time`

## *Case Action Summary*

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 8/27/2024 | 11:29 AM | FILE | FILED THIS DATE: 08/27/2024          (AV01) | AJA |
| 8/27/2024 | 11:29 AM | EORD | E-ORDER FLAG SET TO "Y"           (AV01) | AJA |
| 8/27/2024 | 11:29 AM | ASSJ | ASSIGNED TO JUDGE: HON. BURT SMITHART     (AV01) | AJA |
| 8/27/2024 | 11:29 AM | SCAN | CASE SCANNED STATUS SET TO: N         (AV01) | AJA |
| 8/27/2024 | 11:29 AM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 8/27/2024 | 11:29 AM | STAT | CASE ASSIGNED STATUS OF: ACTIVE         (AV01) | AJA |
| 8/27/2024 | 11:29 AM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 8/27/2024 | 11:29 AM | C001 | C001 PARTY ADDED: CALTON LUCY          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | C001 | INDIGENT FLAG SET TO: N           (AV02) | AJA |
| 8/27/2024 | 11:29 AM | C001 | LISTED AS ATTORNEY FOR C001: DEGARIS ANNESLEY HOD | AJA |
| 8/27/2024 | 11:29 AM | C001 | LISTED AS ATTORNEY FOR C001: CALTON ALEXANDRA JOA | AJA |
| 8/27/2024 | 11:29 AM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | ECOMP | COMPLAINT E-FILED. | DEG002 |
| 8/27/2024 | 11:29 AM | D001 | D001 PARTY ADDED: MEDICAL CENTER BARBOUR   (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D001 | INDIGENT FLAG SET TO: N           (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE        (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D001 | CERTIFIED MAI ISSUED: 08/27/2024 TO D001   (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D002 | D002 PARTY ADDED: MCBH, LLC          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D002 | INDIGENT FLAG SET TO: N           (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE        (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D002 | CERTIFIED MAI ISSUED: 08/27/2024 TO D002   (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D003 | D003 PARTY ADDED: ALLIANT MANAGEMENT SERVICES | AJA |
| 8/27/2024 | 11:29 AM | D003 | INDIGENT FLAG SET TO: N           (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D003 | LISTED AS ATTORNEY FOR D003: PRO SE        (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D003 | CERTIFIED MAI ISSUED: 08/27/2024 TO D003   (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D003 | D003 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D004 | D004 PARTY ADDED: HEALTH CARE AUTHORITY FOR THE CI | AJA |
| 8/27/2024 | 11:29 AM | D004 | INDIGENT FLAG SET TO: N           (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D004 | LISTED AS ATTORNEY FOR D004: PRO SE        (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D004 | CERTIFIED MAI ISSUED: 08/27/2024 TO D004   (AV02) | AJA |
| 8/27/2024 | 11:29 AM | D004 | D004 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/28/2024 | 2:58 PM | ESCAN | SCAN - FILED 8/28/2024 - MISC | DEH |
| 9/4/2024 | 8:19 AM | ESCAN | SCAN - FILED 9/4/2024 - RETURN RECEIPT | DEH |
| 9/6/2024 | 4:32 PM | D004 | SERVICE OF CERTIFIED MAI ON 09/04/2024 FOR D004 | DEH |
| 9/6/2024 | 4:33 PM | D001 | SERVICE OF CERTIFIED MAI ON 09/06/2024 FOR D001 | DEH |
| 9/6/2024 | 4:33 PM | ESERC | SERVICE RETURN | DEH |
| 9/6/2024 | 4:33 PM | ESERC | SERVICE RETURN | DEH |
| 9/11/2024 | 3:33 PM | D002 | SERVICE OF CERTIFIED MAI ON 09/11/2024 FOR D002 | DEH |
| 9/11/2024 | 3:34 PM | ESERC | SERVICE RETURN | DEH |

| 9/23/2024 | 10:01 AM | EMOT | C001-CONSOLIDATION FILED. | CAL089 |
|---|---|---|---|---|
| 9/23/2024 | 12:59 PM | EMOT | C001-CONSOLIDATION /DOCKETED | DEH |
| 9/24/2024 | 2:32 PM | D003 | SERVICE OF CERTIFIED MAI ON 09/24/2024 FOR D003 | DEH |
| 9/24/2024 | 2:33 PM | ESERC | SERVICE RETURN | DEH |
| 9/26/2024 | 11:31 AM | DAT4 | CIVIL DOCKET SET ON 10/17/2024 FOR SCHEDULE (AV24) | DEH |
| 9/26/2024 | 11:38 AM | DOCK | NOTICE SENT: 09/26/2024 MEDICAL CENTER BARBOUR | DEH |
| 9/26/2024 | 11:38 AM | DOCK | NOTICE SENT: 09/26/2024 MCBH, LLC | DEH |
| 9/26/2024 | 11:38 AM | DOCK | NOTICE SENT: 09/26/2024 ALLIANT MANAGEMENT SERVICE | DEH |
| 9/26/2024 | 11:38 AM | DOCK | NOTICE SENT: 09/26/2024 HEALTH CARE AUTHORITY FOR | DEH |
| 9/26/2024 | 11:43 AM | DOCK | NOTICE SENT: 09/26/2024 CALTON ALEXANDRA JOAN | DEH |
| 9/26/2024 | 11:43 AM | DOCK | NOTICE SENT: 09/26/2024 DEGARIS ANNESLEY HODGES | DEH |
| 10/2/2024 | 10:14 AM | EMOT | C001-SUPPLEMENT TO PENDING MOTION FILED. | CAL089 |
| 10/2/2024 | 12:57 PM | EMOT | C001-SUPPLEMENT TO PENDING MOTION /DOCKETED | DEH |
| 10/8/2024 | 12:12 PM | JEORDE | ORDER E-FILED - ORDER - E-FILE ORDER - RENDERED & ENTERED: 10/8/2024 12:12:51 PM | |
| 10/9/2024 | 1:52 PM | JEORDE | ORDER GENERATED FOR CONSOLIDATION - RENDERED & ENTERED: 10/9/2024 1:52:02 PM - ORDER GRANTING PLAINTIFFS' UNOPPOSED JOINT MOTION TO  CONSOLIDATE AND REQUEST TO APPOINT INTERIM LEADERSHIP | |
| 10/16/2024 | 10:40 AM | EMOT | C001-CONTINUE FILED. | CAL089 |
| 10/16/2024 | 10:54 AM | EMOT | C001-CONTINUE /DOCKETED | DEH |
| 10/16/2024 | 2:45 PM | JEORDE | ORDER GENERATED FOR CONTINUE - RENDERED & ENTERED: 10/16/2024 2:45:45 PM - ORDER | |
| 10/23/2024 | 10:46 AM | CONT | GRANTED CONTINUANCE DUE TO: CONT'D NEXT TERM(AV01) | DEH |
| 10/23/2024 | 10:46 AM | CTDT | ABOVE CONTINUANCE EFFECTIVE: 10/24/2024    (AV01) | DEH |
| 10/31/2024 | 10:49 AM | C001 | LISTED AS ATTORNEY FOR C001: ROUCO RICHARD PAUL | AJA |
| 10/31/2024 | 10:49 AM | ENOTA | NOTICE OF APPEARANCE E-FILED | ROU008 |
| 11/8/2024 | 10:36 AM | EAMEN | AMENDED COMPLAINT E-FILED. | CAL089 |
| 11/24/2024 | 8:00 PM | JEVHR | MOTION TO SUPPLEMENT TO PENDING MOTION /SET FOR 1/14/2025 10:00:00 AM, LOCATION = VIRTUAL HEARING | |
| 11/25/2024 | 8:14 AM | DAT1 | FOR: VIRTUAL HEARING ON 01/14/2025 @ 1000A (AV01) | DEH |
| 11/25/2024 | 2:19 PM | EMISC | RETURN ON SERVICE - SERVED E-FILED | CAL089 |
| 12/2/2024 | 3:43 PM | EMISC | RETURN ON SERVICE - SERVED E-FILED | CAL089 |

   **END OF THE REPORT**

DOCUMENT 1

**State of Alabama**
**Unified Judicial System**

Form ARCiv-93    Rev. 9/18

# COVER SHEET
## CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

Case Number:
69-CV-2024-900054.00

ELECTRONICALLY FILED
8/27/2024 11:29 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
CLERK

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
LUCY CALTON v. MEDICAL CENTER BARBOUR ET AL

Date of Filing:
08/27/2024

Judge Code:

**First Plaintiff:** ☐ Business ☑ Individual
☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual
☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☑ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**    F ☑ INITIAL FILING        A ☐ APPEAL FROM DISTRICT COURT        O ☐ OTHER
R ☐ REMANDED        T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P. for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
DEG002    8/27/2024 11:29:34 AM
Date    /s/ ANNESLEY H DEGARIS
Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☑ UNDECIDED

Election to Proceed under the Alabama Rules for Expedited Civil Actions:    ☐ YES ☐ NO

ELECTRONICALLY FILED
8/27/2024 11:29 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | | |
|---|---|---|
| **LUCY CALTON**, individually and on behalf of all others similarly situated, | ) ) ) | |
| **Plaintiff**, | ) ) | |
| **v.** | ) ) | **CASE NO.:** _____ |
| **MEDICAL CENTER BARBOUR, MCBH, LLC, ALLIANT MANAGEMENT SERVICES, INC., THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA,** and **FICTITIOUS PARTY DEFENDANTS 1-27,** *et al.*, | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants**. | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Lucy Calton, on behalf of herself and all other Alabama citizens similarly situated, files this Class Action Complaint against Defendants Medical Center Barbour, MCBH, LLC, Alliant Management Services, Inc., The Health Care Authority of the City of Eufaula and Fictitious Party Defendants 1-27 and allege as follows:

### NATURE OF THE CASE

1.      Plaintiff brings the class action against Defendants Medical Center Barbour, MCBH, LLC, Alliant Management Services, Inc., The Health Care Authority of the City of Eufaula, and Fictitious Party Defendants 1-27 (collectively "MCB") for their failure to properly secure and safeguard personally identifiable information ("PII"), protected health information ("PHI"), as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), other medical and financial information, (collectively, "PII/PHI"), and for failing to provide timely,

accurate, and adequate notice to Plaintiff and other Alabama citizens who are Class Members (defined below) that the integrity of their PII/PHI had been compromised and stolen. MCB's actions and inactions also violated the Alabama Data Breach Notification Act of 2018, specifically Ala. Code § 8-38-3 and Ala. Code § 8-38-5.

2.       On or about August 22, 2024, MCB notified its current and former patients (collectively, "Patients") that unauthorized third parties accessed its networks and servers that contained Patients' private and sensitive PII/PHI including, but not limited to, full names, dates of birth, contact information, demographic information, medical information, health insurance information, and/or Social Security number ("Data Breach"). A copy of the data breach notification letter that MCB sent to its Patients is attached hereto as **Exhibit A**.

3.       On October 29, 2023, MCB discovered that unauthorized third parties accessed, viewed, and stole the PII/PHI of several Patients from its computer networks, systems and/or servers. This occurred because MCB stored the electronic files containing the PII/PHI of Plaintiff and other Alabama citizens who are Class Members without proper cybersecurity measures in place—the files were unguarded, unprotected, unencrypted, and/or otherwise vulnerable to unauthorized access and theft by unauthorized third parties.

4.       Despite the breadth and sensitivity of the PII/PHI that was exposed, and the attendant consequences to Patients as a result of the exposure, MCB failed to disclose the Data Breach for ***almost 10 months*** from the time it was first discovered, further exacerbating harm to its Patients.

5.       Ther Data Breach was a direct result of MCB's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Patients' PII/PHI.

6.       MCB disregarded the rights of Plaintiff and Class Members by: intentionally,

willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data networks, systems and/or servers were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Patients' PII/PHI; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach; and failing to provide comprehensive and effective credit protection services after notification of the Data Breach.

7.     As a result of MCB's failure to implement and follow basic security procedures, MCB's Patients' PII/PHI is now in the hands of thieves who, upon information and belief, have committed criminal acts against the Patients by misusing their data and/or have published and/or sold their data on the internet (i.e., the "dark web") for others to view, access, and/or misuse. Plaintiff and Class Members have had to spend, and will continue to spend, significant amounts of time and money to protect themselves from the adverse ramifications of the Data Breach and will forever be at a heightened risk of identity theft and financial fraud.

8.     Plaintiff, on behalf of all other citizens of Alabama similarly situated, allege claims for negligence, wantonness, negligence *per se*, breach of express and/or implied contracts, breach of fiduciary duty, breach of confidence, and unjust enrichment and seek to compel MCB to fully and accurately disclose the nature of the Data Breach and the information that has been compromised, in addition to adopting sufficient security practices and protocols to safeguard the Patients' PII/PHI that remains in its custody in order to prevent incidents like the Data Breach from reoccurring in the future, because the risk of future harm from another MCB data breach is both imminent and substantial.

9.     MCB disclosed to its Patients that unauthorized third parties had access to its

networks and servers for weeks, which was more than sufficient time to access and steal Plaintiff'

and Class Members' PII/PHI, leading to an imminent and substantial risk of identity theft and

other misuse of the Plaintiff's information.

10.    MCB flagrantly disregarded Plaintiff and the other Class Members' privacy

rights by intentionally, willfully, recklessly, negligently and/or wantonly failing to take the

necessary precautions required to safeguard and protect their PII/PHI from unauthorized

disclosure.

11.    Plaintiff and Class Members' PII/PHI was improperly handled and stored and

was otherwise not kept in accordance with federally prescribed, industry standard security

practices and procedures. As a result, Plaintiff and Class Members' PII/PHI was compromised,

accessed, and stolen.

12.    MCB's intentional, willful, reckless, negligent and/or wanton disregard of

Plaintiff and Class Members' rights directly and/or proximately caused a substantial unauthorized

disclosure of Plaintiff' and Class Members' PII/PHI. The improper use of PII/PHI by

unauthorized third parties resulted in an adverse impact on the credit rating and finances of

Plaintiff and the Class Members.

13.    The type of wrongful PII/PHI disclosure made by MCB is the most harmful

because it generally takes a significant amount of time for a data breach victim to become aware

of misuse of that PII/PHI. Additionally, it takes a significant amount of time to protect oneself

against attempted and actual identity theft and financial fraud.

14.    On behalf of themselves and Class Members, Plaintiff brings the lawsuit because

she has suffered, and will continue to suffer, actual injuries and damages as a direct and/or

proximate result of MCB's wrongful actions and/or inactions and the resulting Data Breach

including, but not limited to, unauthorized disclosure, publication, and dissemination of their PII/PHI on the internet, misuse of their PII/PHI, identity theft, financial fraud, loss of money and time in combatting the attempted and actual identity theft and fraud, and emotional distress.

15.    Additionally, Plaintiff seeks injunctive relief as a direct and/or proximate result of MCB's wrongful actions and/or inactions to prevent MCB's next data breach, which is both likely and imminent.

16.    MCB's wrongful actions and/or inactions and the resulting Data Breach have placed Plaintiff and Class Members at an imminent, immediate, substantial, and continuing increased risk of identity theft and identity fraud.[1] Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released a 2012 Identity Fraud Report (the "Javelin Report") quantifying the impact of data breaches. According to the Javelin Report, individuals whose PII/PHI is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported and a high probability that criminals who now possess Plaintiff' and Class Members' PII/PHI—if they have not already misused the data—will do so later or re-sell it. Even if they are without such loss now, Plaintiff and Class Members are entitled to relief and recovery because Plaintiff and Class Members are under an imminent risk that their information will soon be misused.

17.    MCB's wrongful actions and/or inactions constitute common law negligence and common law invasion of privacy by public disclosure of private facts. Further, MCB's wrongful

---

[1] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PII/PHI is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services)).

actions and/or inactions constitute a breach of contract, breach of fiduciary duty, breach of confidence, and unjust enrichment.

18.    Plaintiff, on behalf of herself and the Class Members, seek actual damages, economic damages, nominal damages, exemplary damages, injunctive relief, and costs of suit.

## JURISDICTION AND VENUE

19.    Jurisdiction is proper in Alabama because, at all relevant times, MCB conducted (and continues to conduct) business in Alabama, each Plaintiff received health services and contracted with MCB to safeguard their PII and PHI in Alabama, Plaintiff's PII/PHI was stored on MCB's computer networks, systems and/or servers in Alabama, many of MCB's wrongful acts and omissions took place in Alabama, MCB's principal place (and only place) of business is in Alabama, and, MCB's limited liability company members are Alabama corporations, entities, or citizens.

20.    Venue is proper in Barbour County, Alabama pursuant to Ala. Code §§ 6-3-2 and 6-3-7(a) and (b) because, at all relevant times, Plaintiff is a resident of Eufaula, Alabama. Plaintiff received health services and contracted with MCB to safeguard her PII/PHI in Barbour County, a substantial part of the events or omissions giving rise to the action occurred in Barbour County, MCB's principal place of business is in Barbour County, MCB conducts business throughout Barbour County, and MCB's limited liability company members include domestic corporations or resident citizens.

## PARTIES

### Plaintiff Lucy Calton

22.    Plaintiff Lucy Calton is and has been, at all relevant times, a resident and citizen of Eufaula, Alabama.

23.     In exchange for medical services, Plaintiff Calton entrusted her highly sensitive Private Information to Defendant.

24.     On or about September 15, 2023, Plaintiff Calton was notified via letter from Defendant that her PHI and/or PII had been accessed because of the Data Breach.

25.     Plaintiff Calton is an adult individual and, at all times relevant herein, a resident and citizen of the State of Alabama. Plaintiff Calton is a victim of the Data Breach. Defendant received Plaintiff's PHI/PII in connection with the services she received at MCB.

26.     Plaintiff is very careful about sharing her sensitive information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. To her knowledge, neither her PII or PHI has ever been exposed in any other data breach.

27.     Because of the Data Breach, Plaintiff's Private Information is now in the hands of cyber criminals.

28.     Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

29.     As a result of the Data Breach, which exposed highly valuable information such as her Social Security number and medical information, Plaintiff is now imminently at risk of crippling future identity theft and fraud.

30.     As a result of the Data Breach, Plaintiff has had no choice but to spend numerous hours attempting to ameliorate, mitigate, and address the harms caused by the Data Breach and addressing the future consequences of the Breach. Among other things, Plaintiff Calton has devoted time to investigating the Data Breach, regularly monitoring her credit, reviewing account

statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

31.    The letter Plaintiff Calton received from Defendant specifically directed her to take the actions described above. Indeed, the MCB breach letter stated: "We encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious or unauthorized activity." The letter then listed several additional "steps" that victims of the Data Breach could take to help protect themselves including, enrolling in credit monitoring, monitoring accounts, placing fraud alerts with credit reporting bureaus, placing freezes on credit reports, contacting the FTC and state Attorneys General, and obtaining information about identity theft and frauds.

32.    Plaintiff Calton is made uncomfortable because her personal information and all of her health information is in the hands of unauthorized individuals.

**Defendant Medical Center Barbour**

33.    Defendant Medical Center Barbour is a health care provider and health care facility that provided medical services, care, and treatment to the Plaintiff, and did business in Barbour County, Alabama at all times material to the Complaint. Defendant Medical Center Barbour owned, operated, employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with MCBH, LLC, Alliant Management Services, Inc., The Health Care Authority of the City of Eufaula, and Fictitious Party Defendants 1-27.

**Defendant MCBH, LLC**

46.    Defendant MCBH, LLC is a foreign limited liability company that does business in Barbour County, Alabama. At all times material to the complaint, Defendant MCBH, LLC

owned, operated, employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with Medical Center Barbour, Alliant Management Services, Inc., The Health Care Authority of the City of Eufaula, and Fictitious Party Defendants 1-27.

**Defendant Alliant Management Services, Inc.**

47.    Defendant Alliant Management Services, Inc. is a foreign limited liability company that does business in Barbour County, Alabama. At all times material to the complaint, Defendant Alliant Management Services, Inc. employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with MCBH, LLC, Medical Center Barbour, The Health Care Authority of the City of Eufaula, and Fictitious Party Defendants 1-27.

**Defendant The Health Care Authority of the City of Eufaula**

34.    Defendant The Health Care Authority of the City of Eufaula is a domestic corporation that does business in Barbour County, Alabama. At all times material to the Complaint, Defendant The Health Care Authority of the City of Eufaula employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with MCBH, LLC, Alliant Management Services, Inc., Medical Center Barbour, and Fictitious Party Defendants 1-27.

**Fictitious Parties 1-27**

35.    Fictitious Parties 1-27, whether singular or plural, wrongfully contributed to cause damages to Plaintiff and Class Members. Plaintiff avers that the identities of the Fictious Party Defendants are otherwise unknown to the Plaintiff at this time, but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

36.     Whenever reference in the Complaint is made to any act or transaction of MCB, such allocations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of all defendants committed, knew of, performed, authorized, ratified and/or directed such transaction on behalf of Medical Center Barbour while actively engaged in the scope of their duties.

**BACKGROUND FACTS**

A.     ***MCB Acquires, Collects, and Stores Plaintiff and Class Members' PII/PHI***

37.     In the regular course of its business, MCB acquires, collects, stores and maintains possession, custody, and control of a wide variety and massive amount of information of Plaintiff' and Class Members' personal and confidential information, including: full names, addresses, telephone numbers, email addresses, dates of birth, Social Security numbers, Passport and Driver's License numbers, medical and treatment information, billing and claims information, health insurance information, financial account information, and/or credit and debit card information.

38.     As a condition of engaging in health services, MCB requires that its customers (patients) provide and entrust it with highly sensitive and confidential personal information.

39.     By obtaining, collecting, using, and deriving a benefit from Plaintiff' and Class Members' PII/PHI, MCB assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiff' and Class Members' PII/PHI from disclosure.

40.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII/PHI. Plaintiff and Class Members, as current and former patients, relied on MCB to keep their PII/PHI confidential and securely maintained, to use the information for business purposes only, and to make only authorized disclosures of the sensitive information.

41.    MCB acknowledged its obligation to maintain the privacy of Patient PII/PHI entrusted to it by Plaintiff and Class Members through its Notice of Privacy Practices. MCB's Notice of Privacy Practices represents, inter alia, that it "is required by law to maintain the privacy of your health information."

42.    MCB stored Plaintiff' and Class Members' PII/PHI, at a minimum, in an unprotected, unguarded, unsecured, and/or otherwise unreasonable location.

43.    MCB stored the Plaintiff' and Class Members' PII/PHI in a location that had inadequate security to prevent unauthorized access.

*44.*    MCB's Notice states: "We encourage you to remain vigilant against incidents of theft and fraud, to review your account statements, and to monitor your credit reports for suspicious or unauthorized activity. Additionally, security experts suggest that you contact your financial institution and all major credit bureaus to inform them of such a breach and then take whatever steps are recommended to protect your interests, including the possible placement of a fraud alert on your credit file."[2]

### *MCB's Data Breach*

45.    Beginning as early as October 29, 2023, an unauthorized third party accessed MCB's networks, data systems, and/or servers.

46.    ON October 29, 2023, digital files containing Plaintiff' and Class Members' unencrypted PII/PHI were accessed from MCB's networks, data systems, and/or servers by unauthorized third parties.

47.    MCB finally discovered that on October 29, 2023, an unauthorized third party gained access to its networks, data systems, and/or servers, including sensitive files containing

---

[2] See Exhibit A.

Plaintiff' and Class Members' PII/PHI. However, the detection of the unauthorized activity was not disclosed until August 22, 2024.

48.     Thereafter, MCB determined that an unauthorized third party not only accessed Plaintiff' and Class Members' PII/PHI, but exfiltrated or removed data from its networks and servers.

49.     On or about August 22, 2024, ten (10) months after discovering the Data Breach, MCB finally informed Plaintiff and Class Members of the Data Breach by mailing them the following Notice[3].

50.     The Privacy Policy posted on MCB's website reassures: "We are required by law to protect the privacy of your health information. We are also required to provide you with this notice, which explains how we may use information about you and when we can give out or "disclose" that information to others. You also have rights regarding your health information that are described in this notice. We are required by law to abide by the terms of this notice. The effective date of this notice was April 14, 2003, and has been revised effective February 4, 2021. The terms "information," "health information" or "medical information" or "PHI" in this notice include any information that we maintain that reasonably can be used to identify you and that relates to your physical or mental health condition, the provision of health care to you, or the payment for your health care."[4]

51.     MCB's Letter to Plaintiff and Class Members state that MCB discovered the unauthorized access of its networks and servers and that a subsequent investigation determined that the third party was able to remove a copy of data from the network on October 29, 2023.

52.     Given the period of time during which unauthorized third parties had access to its

---

[3] *Notice* attached hereto as **Exhibit A.**
[4] *See https://www.medctrbarbour.org/privacy-notice (last visited August 27, 2024).*

files—and the multiple months between MCB's discovery of the Data Breach and MCB's public disclosure of it—the Plaintiff' and Class Members' PII/PHI has likely been bought and sold several times on the robust international cyber black market while MCB denied the Plaintiff and Class Members any opportunity to take measures to protect their PII/PHI and privacy, which created an imminent and substantial risk of harm and identity theft that is ongoing.

53.     MCB's wrongful actions and/or inactions—to wit, failing to protect Plaintiff' and Class Members' PII/PHI with which it was entrusted—directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff' and Class Members' PII/PHI without their knowledge, authorization, and/or consent. As a further direct and/or proximate result of MCB's wrongful actions and/or inactions, Plaintiff and Class Members have suffered, and will continue to suffer, injuries and damages including, without limitation: (i) an increased and imminent risk of substantial harm; (ii) the untimely and/or inadequate notification of the Data Breach; (iii) improper disclosure, dissemination and publication of their PII/PHI; (iv) criminal misuse of their PII/PHI; (v) identity theft; (vi) financial fraud; (vii) loss of privacy; (viii) out-of-pocket expenses incurred to mitigate the identity theft and financial fraud and the continued increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (ix) economic losses relating to the theft of their PII/PHI; (x) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (xi) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and (xii) stress, anxiety and emotional distress.

54.     Notwithstanding MCB's wrongful actions and/or inactions, MCB has offered a mere one year of ineffective credit monitoring services, which is wholly inadequate and insufficient, given the trove of PII/PHI that has been taken and disseminated to the world.

55.     As a result of MCB's failure to properly safeguard and protect Plaintiff and Class Members' PII/PHI, Plaintiff and Class Members' privacy has been invaded and their rights violated. Their compromised PII/PHI was private, confidential, and sensitive in nature and was left inadequately protected by MCB.

56.     MCB's wrongful actions and/or inactions and the resulting Data Breach have caused Plaintiff and Class Members to suffer from identity theft and fraud, as well as placing them at a continuing increased, imminent and substantial risk of identity theft and identity fraud that is fairly traceable to the Data Breach.

**B.     _The Value of Personally Identifiable Information_**

57.     Identity theft occurs when a person's PII/PHI, such as the person's name, address, date of birth, Social Security number, billing and mailing addresses, phone number, email, credit card information, and health information is used without her or his permission to commit fraud or other crimes.[5]

58.     According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[6] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute [PII]."[7]

59.     The FTC estimates that the identities of as many as nine million Americans are

---

[5] _See_ https://consumer.ftc.gov/articles/what-know-about-identity-theft#what_is (last visited November 28, 2023).

[6] Protecting Consumer Privacy in an Era of Rapid Change FTC Report (March 2012) (https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-report-protecting-consumer-privacy-era-rapid-change-recommendations/120326privacyreport.pdf ) (last visited November 28, 2023).

[7] _Id_., at 11–12.

stolen each year. *Id.*

60.    As a direct and/or proximate result of the Data Breach, Plaintiff and Class Members have been,  and will continue to be, required to spend money and to take the time and effort to combat actual or suspected identity theft and fraud and also mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, placing "freezes" and "alerts" with the credit reporting agencies, reviewing, closing or modifying financial accounts, scrutinizing their credit reports and bank and credit accounts, and purchasing products to monitor their credit reports and financial accounts for unauthorized activity.  Because Plaintiff' and Class Members' PII/PHI were stolen and/or compromised, they also now face a significantly heightened and imminent risk of harm and identity theft.

61.    Citizens of Alabama, like the members of the proposed class here, have suffered particularly severe losses from cybercrimes lately. A recent news article explained:

> According to the latest data on internet crimes compiled by the Federal Bureau of Investigation, Alabama saw the single-highest average of losses to cybercrime per victim in 2022. Research on the data published Friday by the online security company VPNpro found that ***victims of cybercrimes in Alabama lost, on average, $50,670 in 2022***. A total of 4,893 victims were reported in Alabama that year for a combined loss of nearly $248,000,000.[8]

62.    According to the FTC, identity theft is serious. "[Identity thieves] might steal your name and address, credit card, or bank account numbers, Social Security number, or medical insurance account numbers. And they could use them to buy things with your credit cards, get new credit cards in your name, open a phone, electricity, or gas account in your name, steal your tax refund, use your health insurance to get medical care, [or] pretend to be you if they are arrested."[9]

---

[8] *See* https://aldailynews.com/alabamians-see-highest-losses-to-cybercrime-in-nation-new-research-finds/ (last visited November 28, 2023) (emphasis added).

[9] *See* https://consumer.ftc.gov/articles/what-know-about-identity-theft#what_is (last visited November 28, 2023).

63.    Theft of medical information, such as that included in the Data Breach here, is equally serious: "Medical identity theft is when someone uses your personal information—like your name, Social Security number, health insurance account number or Medicare number—to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care. If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit."[10]

64.    Identity thieves also use Social Security numbers to commit other types of fraud. The GAO found that identity thieves use PII/PHI to open financial accounts and payment card accounts and incur charges in a victim's name. The type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, while in the meantime causing significant harm to the victim's credit rating and finances, which places Plaintiff at an increased and imminent risk of further future harm. Moreover, unlike other PII/PHI, Social Security numbers are incredibly difficult to change, and their misuse can continue for years into the future.

65.    Identity thieves use Social Security numbers to commit other types of fraud, such as obtaining false identification cards, obtaining government benefits in the victim's name, committing crimes and/or filing fraudulent tax returns on the victim's behalf to obtain fraudulent tax refunds. Identity thieves obtain jobs using stolen Social Security numbers, rent houses and apartments, and/or obtain medical services in the victim's name. Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record. The GAO states that

---

[10] *See* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last visited November 28, 2023).

victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

66.    The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card. In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently, as well as show that he has done all he can to fix the problems resulting from the misuse.[11] Thus, a person whose PII/PHI has been stolen cannot obtain a new Social Security number until the damage has already been done.

67.    Obtaining a new Social Security number, however, is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems. Because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

68.    Phone numbers are de facto identity documents, given the increasing reliance on using phone numbers as verification (i.e., two-factor authentication to access basic web pages.). A loss of a person's phone number can be as much of, if not more of, a risk than loss of a social security number—resulting in increased scam calls or loss of ability to access a web page.

69.    As a direct and/or proximate result of MCB's wrongful actions and/or inactions and the Data Breach, the thieves and/or their customers now have Plaintiff and Class Members' PII/PHI. As such, Plaintiff and Class Members have not only already lost actual value but have

---

[11] *See* https://consumer.ftc.gov/articles/do-you-need-new-social-security-number (last visited November 28, 2023).

been deprived, and will continue to be deprived, of the value of their PII/PHI.[12]

70.    Plaintiff and Class Members' PII/PHI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for a number of years.[13] Identity thieves and other cyber criminals openly post stolen Social Security numbers, and other personal financial information on various Internet websites, thereby making the information publicly available.

71.    The Data Breach was a direct and/or proximate result of MCB's failure to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect Plaintiff and Class Members' PII/PHI from unauthorized access, use, and/or disclosure, as required by various federal and state regulations and industry practices.

72.    MCB flagrantly disregarded and/or violated Plaintiff and Class Members' privacy rights, and harmed them in the process, by not obtaining Plaintiff and Class Members' prior written consent to disclose their PII/PHI to any other person—as required by HIPAA and other pertinent laws, regulations, industry standards and/or internal company policies.

73.    MCB flagrantly disregarded and/or violated Plaintiff and Class Members' privacy rights, and have harmed them in the process, by failing to establish and/or implement appropriate administrative, technical, and other safeguards required by both industry standards and the Alabama Data Breach Notification Act of 2018, Ala. Code 1975 § 8-38-3, to ensure the security

_____

[12] *See, e.g.,* John T. Soma, J. Zachary Courson, John Cadkin, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted); ABC News Report, http://abcnews.go.com/Health/medical-records-private-abc-news-investigation/story?id=17228986&page=2#.UGRgtq7yBR4 (last visited November 28, 2023).

[13] Companies, in fact, also recognize PII/PHI as an extremely valuable commodity akin to a form of personal property. *See* T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3–4 (2009).

and confidentiality of Plaintiff and Class Members' PII/PHI to protect against anticipated threats to the security or integrity of such information. MCB's security deficiencies allowed unauthorized individuals to access, remove from its servers and networks, disclose, and/or compromise the PII/PHI over four-hundred thousand of its Patients—including Plaintiff and Class Members.

74.     MCB's wrongful actions and/or inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PII/PHI without their knowledge, authorization, and consent. As a direct and proximate result of MCB's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and Class Members have incurred injuries and damages in the form of, *inter alia*: (i) an increased and imminent risk of future harm; (ii) the untimely and/or inadequate notification of the Data Breach; (iii) improper disclosure, dissemination and publication of their PII/PHI; (iv) criminal misuse of their PII/PHI; (v) identity theft; (vi) financial fraud; (vii) loss of privacy; (viii) out-of-pocket expenses incurred to mitigate the identity theft and financial fraud and the continued increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iv) economic losses relating to the theft of their PII/PHI; (x) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (xi) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and (xii) stress, anxiety and emotional distress. Plaintiff and Class Members' damages were foreseeable by MCB.

**C.     *Healthcare Organizations are Known High Risk Targets of Cyber Attackers***

75.     The risk of harm to Plaintiff and Class Members from MCB's failure to take precautionary measures was readily and clearly foreseeable. Not only was MCB aware of the risks created by its inaction, but it was also in a unique position to know of the risk and prevent it.

76.     Hospitals and healthcare organizations have become an attractive target of

cyberattacks because they house a gold mine of sensitive, personally identifiable information for thousands of patients at any given time. From Social Security numbers and insurance policies to credit cards and emergency contacts' information, no other organization, including credit bureaus, have so much monetizable information stored in their data centers.[14] As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to quickly regain access to their data."[15]

77.      Healthcare records are also preferred targets of cyberattacks because those records include far more information than other targets of cyberattacks (such as bank account numbers), and it has been estimated that medical records are **fifty times more valuable** on the black market than credit cards.[16]

78.      As such, it has been reported that "[s]tolen healthcare records are the source of 95% of all identity theft[.]"[17] According to the 2019 Health Information Management Systems Society, Inc. ("HIMMS") Cybersecurity Survey, "[a] pattern of cybersecurity threats and experiences is discernible across U.S. healthcare organizations. Significant security incidents are a near-universal experience in U.S. healthcare organizations with many of the incidents initiated by bad actors, leveraging emails to compromise the integrity of their targets."[18]

---

[14] https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited November 28).

[15] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targetedransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection (last visited November 28, 2023).

[16] See https://www.dmagazine.com/healthcare-business/2019/10/why-medical-data-is-50-times-more-valuable-than-a-credit-card/ (last visited November 28, 2023).

[17] See https://www.globenewswire.com/en/news-release/2022/03/31/2413675/0/en/Largest-Healthcare-Data-Breaches-Reported-in-February-2022-Confirms-Need-for-Network-Security-Based-on-Zero-Trust-Microsegmentation.html (last visited November 28, 2023).

[18] See https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf (last visited November 28, 2023).

79.     Despite years of rising awareness of healthcare organizations' position as the preeminent target of cyberattacks, the healthcare industry continues to suffer more data breaches than any other industry. According to Identity Theft Resource Center ("ITRC"), the healthcare industry in 2022, for the third year in a row, led all other industries in the number of data breaches.[19] Additionally, "[h]ealthcare organizations represented 19 percent of the 1,802 breaches reported in the 2022 IRTC report."[20]

80.     Indeed, cyberattacks against healthcare organizations have become so prevalent that the Federal Bureau of Investigation ("FBI") has specifically warned that industry of the threat it faces and has given it recommendations to protect against data breaches.[21]

81.     Therefore, the prevalence of such attacks, and the attendant, increased, and imminent risk of future attacks, was widely known to the public and anyone in the healthcare industry, including MCB.

**D.     _MCB's Conduct Violated HIPAA and Industry Standard Practices_**

82.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, _et seq_. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII/PHI like the data MCB left unguarded. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

83.     MCB's Data Breach resulted from a combination of insufficiencies that indicate MCB failed to comply with safeguards mandated by HIPAA regulations and industry standards.

---

[19] _See_ https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final.pdf (last visited November 28, 2023).
[20] https://www.prnewswire.com/news-releases/healthcare-remains-top-target-in-2022-itrc-breach-report-301730483.html (last visited November 28, 2023).
[21] _See_ https://www.aha.org/cybersecurity-government-intelligence-reports/2022-09-12-fbi-pin-tlp-white-unpatched-and-outdated (last visited November 28, 2023).

MCB's security failures include, but are not limited to:

    a.  Failing to maintain an adequate data security system to prevent data loss;

    b.  Failing to mitigate the risks of a data breach and loss of data;

    c.  Failing to adequately catalog the location of Patients', including Plaintiff and Class Members', digital information;

    d.  Failing to properly encrypt Plaintiff and Class Members' PII/PHI;

    e.  Failing to ensure the confidentiality and integrity of electronic protected health information MCB creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

    f.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

    g.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

    h.  Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

    i.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

    j.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy

rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

k.  Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 CFR 164.306(a)(94);

l.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*;

m.  Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.530(b) and 45 CFR 164.308(a)(5); and

n.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

84.     MCB is still in possession of Plaintiff' PII/PHI and, without the injunctive relief requested herein, Plaintiff and Class Members remain at substantial risk of having their PII/PHI stolen again in a future data breach due to MCB's woefully inadequate data security and cybersecurity. MCB has not invested the necessary resources into data security or cybersecurity, and another future data breach is imminent and likely to occur at any time.

85.     The substantial risk of harm to Plaintiff would be greatly reduced or eliminated by the injunctive relief requested herein, because the additional cybersecurity measures and policies would be capable of deterring would-be hackers and other cybersecurity threats—unlike MCB

current data security and cybersecurity measures, which have proven to be vulnerable to criminals.

86.     The state of Alabama's public health department follows HIPPA guidance and requires medical providers to as well.

87.     MCB violated federal and state statutes and industry standards to better secure its information privacy practices following the breach, which further created an imminent and substantial risk of future harm and identity theft.

88.     MCB also violated industry standards by shifting liability from its business practices to patients to mitigate the damages caused by the Data Breach. Patients cannot be expected to understand how to best mitigate damages from MCB's enterprise-wide cybersecurity breaches.

## <u>CLASS ACTION ALLEGATIONS</u>

89.     Pursuant to Rule 23 of the Alabama Rules of Civil Procedure, Plaintiff bring the class action as an Alabama citizen only state-wide class action on behalf of themselves and the following Class of similarly situated individuals:

> **All Alabama citizens whose personal identifying information (PII) and personal health information (PHI) was exposed to unauthorized third parties as a result of the Data Breach discovered by MCB.**

90.     Excluded from the Class are the (i) owners, officers, directors, employees, agents and/or representatives of MCB and its parent entities, subsidiaries, affiliates, successors, and/or assigns, and (ii) the Court, Court personnel, and members of their immediate families.

91.     The putative Class is comprised of persons who are Alabama citizens, making joinder impracticable. Disposition of the matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

92.     The rights of each Class Member were violated in a virtually identical manner as

a result of MCB's willful, reckless, negligent and/or wanton actions and/or inactions.

93.    Questions of law and fact common to all Class Members exist and predominate

over any questions affecting only individual Class Members including, *inter alia*:

a.  Whether MCB willfully, recklessly, negligently and/or wantonly failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff' and Class Members' PII/PHI;

b.  Whether MCB was negligent or wanton in the manner in which it stored Plaintiff' and Class Members' PII/PHI;

c.  Whether MCB owed a duty to Plaintiff and Class Members to exercise reasonable care in protecting and securing their PII/PHI;

d.  Whether MCB breached its duty to exercise reasonable care in protecting and securing Plaintiff' and Class Members' PII/PHI;

e.  Whether MCB was negligent in failing to secure Plaintiff' and Class Members' PII/PHI;

f.  Whether MCB failure to comply with HIPAA constitutes negligence *per se*;

g.  Whether MCB's failure to comply with Section 5 of the Federal Trade Commission Act (15 U.S.C. §45) constitutes negligence *per se*;

h.  Whether MCB failure to comply with the Alabama Data Breach Notification Act of 2018 constitutes negligence *per se*;

i.  Whether MCB breached its contracts by failing to maintain the privacy and security of Plaintiff' and Class Members' PII/PHI;

j.  Whether by publicly disclosing Plaintiff' and Class Members' PII/PHI without authorization, MCB invaded Plaintiff' and Class Members' privacy;

k.  Whether by publicly disclosing Plaintiff' and Class Members' PII/PHI without authorization, MCB breached the duty of confidence it owed to Plaintiff and Class Members;

l.  Whether by publicly disclosing Plaintiff' and Class Members' PII/PHI without authorization, MCB breached the fiduciary duties it owed to Plaintiff and Class Members;

m.  Whether MCB was unjustly enriched when it took money from Plaintiff and Class Members and failed to provide reasonable data security measures to protect Plaintiff' and Class Members' PII/PHI;

    n.  Whether Plaintiff and Class Members sustained damages as a result of MCB's failure to secure and protect their PII/PHI; and,

    o.  Whether injunctive relief is necessary to ensure MCB implements reasonable security measures to protect the PII/PHI of Plaintiff and the Class Members against any future data breaches by MCB.

94.    Plaintiff' claims are typical of Class Members' claims in that Plaintiff' claims and Class Members' claims all arise from MCB's failure to properly secure, safeguard and protect Plaintiff' and Class Members' PII/PHI and the resulting Data Breach.

95.    Plaintiff and their counsel will fairly and adequately represent the interests of Class Members. Plaintiff has no interests antagonistic to, or in conflict with, Class Members' interests. Plaintiff lawyers are experienced class action litigators and intend to vigorously prosecute the action on behalf of Plaintiff and Class Members.

96.    A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff and Class Members' claims. Plaintiff and Class Members have been irreparably harmed as a result of MCB's wrongful actions and/or inactions.  Litigating the case as a class action will reduce the possibility of repetitious litigation relating to MCB's failure to secure, safeguard and protect Plaintiff and Class Members' PII/PHI.

97.    Class certification, therefore, is appropriate pursuant to ALA. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

98.    Class certification also is appropriate pursuant to ALA. R. CIV. P. 23(b)(2) because MCB has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the putative class as a whole.

99.    The expense and burden of litigation would substantially impair the ability of

Class Members to pursue individual lawsuits in order to vindicate their rights.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/WANTONNESS

100.    Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

101.    MCB had a duty to exercise reasonable care in obtaining, using, retaining, securing, safeguarding, and protecting Plaintiff and Class Members' PII/PHI in its possession, including implementing federal, state, and industry standard security procedures sufficient to reasonably protect PII/PHI from unauthorized third parties.

102.    MCB owed a duty of care to Plaintiff and Class Members' because it was reasonably foreseeable that its failure to adequately safeguard the PII/PHI in accordance with federal, state, and industry standards for data security would result in the compromise of that PII/PHI and failing to safeguard the private information would be a conscious disregard and would put the Plaintiff and Class Members' at an increased, imminent risk of substantial harm and identity theft.

103.    MCB negligently and/or wantonly violated its duty by failing to exercise reasonable care in securing, safeguarding, and protecting Plaintiff and Class Members' PII/PHI (as set forth in detail above).

104.    MCB acted with conscious disregard for Class Members' PII/PHI because MCB was aware of other data healthcare data breaches prior to the Data Breach, yet MCB chose to do nothing to strengthen the cybersecurity to protect Plaintiff's data.

105.    After the previous data breaches, MCB executives and employees knew that their

decision not to invest additional resources into MCB's cybersecurity left the Plaintiff PII/PHI at risk of being accessed and/or exfiltrated by cybercriminals.

106.    MCB's conduct set forth herein was so reckless and so charged with indifference and conscious disregard to the consequences of its failure to exercise reasonable care in safeguarding and protecting Plaintiff and the Class Members' PII/PHI (as set forth above) as to amount to wantonness under Alabama law.

107.    It was reasonably foreseeable that MCB's failure to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' PII/PHI would result in an unauthorized third-party gaining access to such information for no lawful purpose.

108.    Plaintiff and the Class Members have suffered (and continue to suffer) actual, injuries-in-fact, and damages as a direct and/or proximate result of MCB's failure to secure, safeguard and protect their PII/PHI in the form of, inter alia, (i) improper disclosure of their PII/PHI; (ii) loss of privacy; (iii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iv) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and (vi) anxiety and emotional distress—for which they are entitled to compensation.

109.    MCB's wrongful actions and/or inaction (as described above) constituted negligence and/or wantonness at common law.

## COUNT II
## NEGLIGENCE *PER SE*

110.    Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

111.    Federal and state statutory law and applicable regulations, including HIPAA's Privacy Rule, Section 5 of the Federal Trade Commission Act (15 U.S.C. §45), and the Alabama Data Breach Notification Act of 2018, set forth and otherwise establish duties in the industry that were applicable to MCB and with which MCB was obligated to comply at all relevant times hereto.

112.    MCB violated these duties by failing to secure, safeguard and protect the Plaintiff and Class Members' PII/PHI, which resulted in an unauthorized disclosure of the Plaintiff and the Class Members' PII/PHI.

113.    Subsection 8-38-3(a) of the Alabama Data Breach Notification Act of 2018 imposes a clear duty on healthcare entities like MCB to protect PII/PHI: "Each covered entity and third-party agent shall implement and maintain reasonable security measures to protect sensitive personally identifying information against a breach of security."

114.    MCB breached the duty owed to Plaintiff and the Class Members under Subsection 8-38-3(a) of the Alabama Data Breach Notification Act of 2018 by failing to implement and maintain reasonable security measures to protect their sensitive PII/PHI against a breach of security.

115.    The purpose of HIPAA's Privacy Rule is to define and limit the circumstances in which the protected health information of individuals such as the Plaintiff and Class Members may be used or disclosed. The stated purpose of HIPAA's Privacy Rule was also to establish minimum standards for safeguarding the privacy of patient's individually identifiable health information.

116.    MCB was also prohibited by the FTC Act from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*,

799 F.3d 236 (3d Cir. 2015). Various FTC publications and orders also form the basis of MCB's duty.

117.    MCB violated Section 5 of the FTC Act by failing to maintain reasonable and appropriate data security for its Patients' PII/PHI.

118.    The unauthorized disclosure of the Plaintiff' and Class Members' PII/PHI at issue in the action was exactly the type of conduct that the legislation referenced above was intended to prohibit, and the harm at issue in the case that has been suffered by the Plaintiff and Class Members is the type of harm the legislation referenced above was intended to prevent.

119.    Plaintiff and Class Members, as owners of the sensitive personally identifying information that MCB failed to protect, fall within the class of persons HIPAA's Privacy Rule, the FTC Act and the Alabama Data Breach Notification Act were intended to protect.

120.    Subsection 8-38-5(b) of the Alabama Data Breach Notification Act of 2018 further imposes a clear duty on healthcare entities like MCB to promptly notify affected persons so that the persons can take action to protect themselves: "[T]he covered entity shall provide notice within 45 days of . . . the covered entity's determination that a breach has occurred and is reasonably likely to cause substantial harm to the individuals to whom the information relates."

121.    MCB breached its duty to promptly notify Plaintiff and Class Members by failing to send out notification letters until approximately 60 days after it purportedly discovered the Data Breach.

122.    The harm suffered and that may be suffered in the future by the Plaintiff and Class Members is the same type of harm HIPAA's Privacy Rule, the FTC Act and the Alabama Data Breach Notification Act of 2018 were intended to guard against.

123.    As a direct and proximate result of MCB's violation of HIPAA's Privacy Rule,

the FTC Act, and the Alabama Data Breach Notification Act of 2018, the Plaintiff and Class Members were damaged in the form of, without limitation, loss of time monitoring credit reports and financial accounts and placing credit freezes, expenses for credit monitoring and insurance, expenses for periodic credit reports, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and noneconomic harm.

**COUNT III**
**BREACH OF EXPRESS AND/OR IMPLIED CONTRACT**

124.    Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

125.    MCB offered to provide goods and services to Plaintiff' and Class Members' in exchange for payment and required Plaintiff and Class Members' to provide MCB with their PII/PHI in order to receive such goods and services.

126.    MCB had a written agreement and understanding with the Plaintiff and the Class Members as set forth in MCB Notice of Privacy Practices that MCB would not disclose Plaintiff' or the Class Members' confidential information in a manner not authorized by applicable law or industry standards.

127.    MCB's Notice of Privacy Practices provided to Plaintiff and the Class Members constitutes an express contract or at the very least created a meeting of the minds that was inferred from the conduct of the parties. Plaintiff and the Class Members fully discharged their obligations under the contract.

128.    Further, Alabama law imposes on physicians and health care professionals an implied contract of confidentiality that is breached by the unauthorized release of medical information, and MCB breached those implied contracts with Plaintiff and Class Members when it released their PII/PHI to unauthorized third parties.

129.     MCB materially breached its contracts with the Plaintiff and the Class Members by failing to secure, safeguard and protect Plaintiff' and the Class Members' PII/PHI such that an unauthorized disclosure of Plaintiff' and the Class Members' PII/PHI occurred.

130.     As a direct and proximate result of MCB's breach of its contracts with the Plaintiff and the Class Members, Plaintiff and the Class Members have been, and continue to be, damaged in an amount to be proven at trial.

131.     As further damages, Plaintiff and the Class Members request restitution and costs of mitigation including, but necessarily limited to, the purchase of credit monitoring, credit insurance, periodic credit reports and expenses associated with the loss or replacement of their valuable PII/PHI included in the Data Breach.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

132.     Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

133.     MCB had a fiduciary duty to secure, safeguard and protect private patient information, which included Plaintiff and Class Members.

134.     MCB became a fiduciary over Plaintiff' and Class Members' by its undertaking and guardianship of the PII/PHI, to act primarily for the benefit of Plaintiff' and Class Members', (1) for the safeguarding of Plaintiff and Class Members' PII/PHI; (2) to timely notify Plaintiff' and Class Members' of a data breach and disclosure; and (3) to maintain complete and accurate records of what patient information (and where) MCB did and does store.

135.     MCB breached the duty when it did not protect Plaintiff and Class Members private information.

136.     MCB breached the duty when it did not provide adequate and timely notification

of the Data Breach to Plaintiff and Class Members.

137.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.306(a)(1) by failing to ensure the confidentiality and integrity of Plaintiff and Class Member's protected and electronic health information (i.e., PHI) that MCB created, received, maintained, and transmitted.

138.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.312(a)(1) by failing to implement technical policies and procedures for its electronic information systems housing private information.

139.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.308(a)(1) by failing to implement policies and procedures to prevent, detect, contain, and correct security violations.

140.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.308(a)(6)(ii) by failing to mitigate, to the extent practicable, harmful effects of security incidents that were known to MCB.

141.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.306(a)(2) by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic private information, or PII/PHI.

142.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 106.308(a)(6)(ii) by failing to mitigate harmful effects of security incidents known to MCB.

143.     MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.306(a)(2) by failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic private information.

144.     MCB violated 45 C.F.R. § 164.306(a)(3) when it failed to protect against reasonably anticipated uses or disclosures.

145.    MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.530(b), and 45 C.F.R. § 164.308(a)(5) by failing to ensure that its workforce complied with HIPAA and failing to provide adequate training to their workforce.

146.    MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.502 by impermissibly and improperly using and disclosing private information that remains accessible to unauthorized people.

147.    MCB breached its fiduciary duty when it violated 45 C.F.R. § 164.530(c) by failing to design, implement, and enforce policies and procedures to establish a physical administrative safeguard to protect private information, such as PII/PHI.

148.    Plaintiff and Class Members face injuries as a direct and proximate result of MCB's breaches of its fiduciary duties. These injuries include, but are not limited to:

a.  Loss of control over private information;

b.  Compromise of private information;

c.  Lost opportunity costs associated with time spent to protect themselves and mitigating harm;

d.  Continued risk that Plaintiff and Class Members private information could be stolen again;

e.  Future costs associated with time spent protecting themselves from future harm;

f.  Diminished value of MCB's services;

g.  Diminished value of private information; and

h.  Anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT V**
**BREACH OF CONFIDENCE**

149.    Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

150.    At all times during Plaintiff and Class Members' interactions with MCB, MCB was fully aware of the confidential and sensitive nature of Plaintiff' and Class Members' private information that Plaintiff and Class Members provided to MCB.

151.    As alleged herein and above, MCB's relationship with Plaintiff and Class Members was governed by expectations that Plaintiff' and Class Members' private information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

152.    Plaintiff and Class Members provided their respective private information to MCB with the explicit and implicit understandings that MCB would protect and not permit the private information to be disseminated to any unauthorized parties.

153.    Plaintiff and Class Members also provided their respective private information to MCB with the explicit and implicit understanding that MCB would take precautions to protect that private information from unauthorized disclosure, such as following basic principles of information security practices.

154.    Due to MCB's failure to prevent, detect, and/or avoid the Data Breach from occurring by, *inter alia*, failing to follow best information security practices to secure Plaintiff' and Class Members' private information, Plaintiff' and Class Members' private information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff' and Class Members' confidence, and without their express permission.

155.    But for MCB's disclosure of Plaintiff' and Class members' private information in violation of the parties' understanding of confidence, their private information would not have

been compromised, stolen, viewed, accessed, and used by unauthorized third parties. MCB's Data Breach was the direct and legal cause of the theft of Plaintiff' and Class members' private information, as well as the resulting damages.

156.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of MCB's unauthorized disclosure of Plaintiff' and Class Members' private information. MCB knew or should have known its security systems were insufficient to protect the private information that is coveted by thieves worldwide. MCB also failed to observe industry standard information security practices.

157.    As a direct and proximate cause of MCB's conduct, Plaintiff and Class Members suffered damages as alleged above.

## COUNT VI
## UNJUST ENRICHMENT

158.    Plaintiff re-adopts and re-alleges the factual allegations contained in the preceding paragraphs, and further allege as follows.

159.    Plaintiff brings the claim in the alternative to their Implied Contract claim.

160.    Plaintiff and Class Members conferred a monetary benefit on MCB. Specifically, Plaintiff and Class Members purchased goods and services from MCB and provided MCB with their private information. In exchange, Plaintiff and Class Members should have received from MCB the goods and services that were the subject of the transaction and should have been entitled to have MCB protect their private information with adequate data security.

161.    MCB knew that Plaintiff and Class Members conferred a benefit on MCB and have accepted or retained that benefit. MCB profited from Plaintiff purchases and used Plaintiff' and Class Members' private information for business purposes.

162.    MCB failed to secure Plaintiff and Class Members' private information and,

therefore, did not fully compensate Plaintiff and Class Members for the value that their private information provided.

163.     MCB acquired the private information through inequitable means as it failed to disclose the inadequate security practices previously alleged.

164.     If Plaintiff and Class Members knew that MCB would not secure their private information using adequate security, they would have made alternative healthcare choices that excluded MCB.

165.     Plaintiff and Class Members have no adequate remedy at law.

166.     Under the circumstances, it would be unjust for MCB to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

167.     MCB should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, MCB should be compelled to refund the amounts that Plaintiff and Class Members overpaid.

## COUNT VII
### Fictious Parties

168.     All foregoing Counts and Causes of Action stated herein or contained in any subsequent amendment are hereby adopted and alleged against all fictious parties described in the caption and style of this Complaint and any Amended Complaint.

169.     The negligent and wanton conduct through acts and/or omissions described above by one or more of the Fictious Party Defendants caused and contributed to the damages suffered by Plaintiff and Class Members as herein described.

### RELIEF REQUESTED

170.     Plaintiff re-adopts and re-allege the factual allegations contained in the preceding

paragraphs, and further allege as follows.

171.    **DAMAGES.** As a direct and/or proximate result of MCB's wrongful actions and/or inactions (as described above), Plaintiff and Class Members suffered (and continue to suffer) damages in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure, dissemination and publication of their PII/PHI; (iii) criminal misuse of their PII/PHI; (iv) loss of privacy; (v) suspected and/or actual identity theft /financial fraud; (vi) loss of privacy; (vii) out-of-pocket expenses incurred to mitigate the identity theft and financial fraud and the continued increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (viii) economic losses relating to the theft of their PII/PHI; (ix) the value of their time spent mitigating suspected and/or actual identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (x) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and (xi) stress, anxiety and emotional distress. Plaintiff' and Class Members' damages were foreseeable by MCB.

172.    **EXEMPLARY DAMAGES.** Plaintiff and Class Members also are entitled to exemplary damages to punish MCB and to deter such wrongful conduct in the future.

173.    **INJUNCTIVE RELIEF.** Plaintiff and Class Members also are entitled to injunctive relief in the form of, without limitation, requiring MCB to, *inter alia*, (i) immediately disclose to Plaintiff and Class Members the precise nature and all details known to MCB regarding the Data Breach, (ii) immediately secure the PII/PHI of its past, present, and future patients, (iii) implement the above-referenced proactive policies and procedures in order to secure and protect its patients' PII/PHI and be in a position to immediately notify them about any future data breaches, (iv) submit to periodic compliance audits by a third party regarding the implementation of and compliance with such policies and procedures, (v) submit to periodic compliance audits by a third

party regarding the security of its patients' PII/PHI within its possession, custody and control, (vi) implement training for its personnel on new or modified security procedures through education programs, policies and tests, and (vii) pay for, not less than three years, identity theft and credit monitoring services for Plaintiff and Class Members. Plaintiff have standing to pursue injunctive relief. *See* Ala. Const. of 2022, art. I, section 10. ("That no person shall be barred from prosecuting or defending before any tribunal in the state, by herself or counsel, any civil cause to which he is a party.")

WHEREFORE, Plaintiff, on behalf of themselves and Class Members, respectfully request that (i) MCB be cited to appear and answer the lawsuit, (ii) the action be certified as a class action, (iii) Plaintiff be designated the Class Representatives, and (iv) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, on behalf of themselves and Class Members, further request that upon final trial or hearing, judgment be awarded against MCB, in favor of Plaintiff and the Class Members, for:

  i.   actual damages, consequential damages, and/or nominal damages (as described above) in an amount to be determined by the trier of fact;

  ii.  exemplary damages;

  iii. injunctive relief as set forth above;

  iv.  pre- and post-judgment interest at the highest applicable legal rates;

  v.   costs of suit and attorneys' fees; and,

  vi.  such other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demand a trial by jury on all claims and causes of action so triable.

Dated: August 27, 2024

Respectfully submitted,

/s/ Annesley H. DeGaris
ANNESLEY H. DEGARIS (DEG002)
ALEXANDRA J. CALTON (CAL089)

OF COUNSEL:

**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone:     (205) 575-8000
Facsimile:      (205) 278-1454
Email: adegaris@degarislaw.com
          acalton@degarislaw.com

/s/ Daniel Srourian
Daniel Srourian, Esq. (*Pro Hac Vice Forthcoming*)

OF COUNSEL:

**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd. Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile:  (213) 471-4160
Email:  daniel@slfla.com

*Counsel for Representative Plaintiff and the Proposed Class(es)*

<u>**TO CLERK: PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**</u>

Medical Center Barbour
820 West Washington Street
Eufaula, AL 36027

MCBH, LLC
641 South Lawrence Street
Montgomery, AL 36104

Alliant Management Services

2650 Eastpoint Parkway, Suite 310
Louisville, KY 40223

The Health Care Authority of the City of Eufaula
205 East Barbour Street
Eufaula, AL 36072

ELECTRONICALLY FILED
8/27/2024 11:29 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

Medical Center Barbour
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PKIIM200107747

ᵐᵗᵖᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗᵗ



August 22, 2024

Dear Lucy Calton:

Medical Center Barbour ("MCB") is writing to inform you of a recent data security incident that may have resulted in unauthorized access to your sensitive personal information. This letter contains details about the incident, our response to this incident, and steps yourself. MCB takes the protection and proper use of your personal information very seriously, and we sincerely apologize for any inconvenience this may cause.

**What Happened?**

On October 29, 2023, MCB detected suspicious activity in its network environment. Upon discovery of this incident, MCB promptly took steps to secure its network and engaged a specialized cybersecurity firm to investigate the nature and scope of the incident. The investigation concluded on December 8, 2023. As a result of the investigation, MCB learned that an unauthorized actor accessed certain files and data stored within our network.

Upon learning this in December of 2024, MCB began an internal review of the data stored on the server at the time of this incident. After our own review, on May 21, 2024, MCB engaged a reputable data mining vendor, to assist in the time-consuming and detailed reconstruction and review of the data stored on the server at the time of this incident to better understand whose information was affected. On July 31, 2024, the data mining vendor identified persons whose sensitive data was included within the impacted data. Because information related to you was disclosed, we are notifying you out of full transparency.

**What Information Was Involved?**

The following data was potentially accessed and acquired by a person not authorized to view them: Date of Birth, Social Security Number, Medical Information and Health Insurance Information.

**What We Are Doing?**

Data security is one of our highest priorities. Upon detecting this incident, we moved quickly to initiate an investigation, which included retaining a leading forensic investigation firm who assisted in conducting an investigation and confirming the security of our network environment. We also deployed additional monitoring tools and will continue to enhance the security of our systems. We take the protection and proper use of personal information very seriously.

As part of our ongoing commitment to information privacy and the security of information, we are notifying you of this incident, and we are providing you with access to **Single Bureau Credit Monitoring/Single Bureau Credit Report/Single Bureau Credit Score** services at no charge. These services provide you with alerts for twelve (12) months from the date of enrollment when changes occur to your credit file. This notification is sent to you the same day that the change or update takes place with the bureau. Finally, we are providing you with proactive fraud assistance to help with any questions that you might have or in event that you become a victim of fraud. These services will be provided by Cyberscout, a TransUnion company specializing in fraud assistance and remediation services.

## What You Can Do

We encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious or unauthorized activity. Additionally, security experts suggest that you contact your financial institution and all major credit bureaus to inform them of such a breach and then take whatever steps are recommended to protect your interests, including the possible placement of a fraud alert on your credit file. Please review the enclosed *Additional Information* to learn more about how to protect against the possibility of information misuse.

To enroll in Credit Monitoring services at no charge, please log on to **https://bfs.cyberscout.com/activate** and follow the instructions provided. When prompted please provide the following unique code to receive services: **B077F4A3C198**. Please note that the code is case-sensitive and will need to be entered as it appears.

In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age. Once enrolled you will have twelve (12) months of monitoring services. At the end of twelve (12) months, the services will be deactivated. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

## For More Information

Representatives are available for 90 days from the date of this letter, to assist you with questions regarding this incident, between the hours of 8:00 a.m. to 8:00 p.m. Eastern time, Monday through Friday, excluding holidays. Please call the help line 1-833-531-0168 and supply the fraud specialist with the unique code listed above. The call center representatives have been fully versed in the incident and can answer questions or concerns you may have regarding the protection of your personal information.

Janet Kinney
Chief Executive Officer

### Additional Information

**Credit Reports:** You may obtain a copy of your credit report, free of charge, whether or not you suspect any unauthorized activity on your account. You may obtain a free copy of your credit report from each of the three nationwide credit reporting agencies. To order your free credit report, please visit www.annualcreditreport.com, or call toll-free at 1-877-322-8228. You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available at https://www.consumer.ftc.gov/articles/0155-free-credit-reports) to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281.

**Security Freeze:** You also have the right to place a security freeze on your credit report. A security freeze is intended to prevent credit, loans, and services from being approved in your name without your consent. To place a security freeze on your credit report, you need to make a request to each consumer reporting agency. You may make that request by certified mail, overnight mail, regular stamped mail, or by following the instructions found at the websites listed below. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse or a minor under the age of 16, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue. As of September 21, 2018, it is free to place, lift, or remove a security freeze. You may also place a security freeze for children under the age of 16. You may obtain a free security freeze by contacting any one or more of the following national consumer reporting agencies:

| **Equifax Security Freeze** | **Experian Security Freeze** | **TransUnion Security Freeze** |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348 | Allen, TX 75013 | Woodlyn, PA 19094 |
| 1-800-349-9960 | 1-888-397-3742 | 1-888-909-8872 |
| https://www.equifax.com/personal/credit-report-services/credit-freeze/ | www.experian.com/freeze/center.html | www.transunion.com/credit-freeze |

**Fraud Alerts:** You can place fraud alerts with the three credit bureaus by phone and online with:

- ♦ Equifax (https://assets.equifax.com/assets/personal/Fraud_Alert_Request_Form.pdf);
- ♦ TransUnion (https://www.transunion.com/fraud-alerts); or
- ♦ Experian (https://www.experian.com/fraud/center.html).

A fraud alert tells creditors to follow certain procedures, including contacting you, before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit. As of September 21, 2018, initial fraud alerts last for one year. Victims of identity theft can also get an extended fraud alert for seven years. The phone numbers for all three credit bureaus are at the bottom of this page.

**Monitoring:** You should always remain vigilant and monitor your accounts for suspicious or unusual activity.

**File Police Report:** You have the right to file or obtain a police report if you experience identity fraud. Please note that in order to file a crime report or incident report with law enforcement for identity theft, you will likely need to provide proof that you have been a victim. A police report is often required to dispute fraudulent items. You can generally report suspected incidents of identity theft to local law enforcement or to the Attorney General.

**FTC and Attorneys General:** You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself, by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General. The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338), TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. You can obtain further information on how to file such a complaint by way of the contact information listed above. You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement. This notice has not been delayed by law enforcement.

**For Arizona residents,** the Attorney General may be contacted at the Consumer Protection & Advocacy Section, 2005 North Central Avenue, Phoenix, AZ 85004, 1-602-542-5025.

**For Colorado residents,** the Attorney General may be contacted through Consumer Protection 1300 Broadway, 9th Floor, Denver, CO 80203 1-720-508-6000, www.coag.gov.

**For District of Columbia residents,** the Attorney General may be contacted at the Office of the Attorney General for the District of Columbia, 441 4th Street NW, Washington, DC 20001, 1-202-727-3400, www.oag.dc.gov.

**For Illinois residents,** the Attorney General can be contacted at 100 West Randolph Street, Chicago, IL 60601; 1-866-999-5630; www.illinoisattorneygeneral.gov.

**For Iowa residents,** you can report any suspected identity theft to law enforcement or to the Attorney General.

**For Massachusetts residents,** it is required by state law that you are informed of your right to obtain a police report filed in regard to this incident. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

**For Maryland residents,** you may also may also wish to review information provided by the Maryland Attorney General on how to avoid identity theft at https://www.marylandattorneygeneral.gov/Pages/IdentityTheft/default.aspx, or by sending an email to idtheft@oag.state.md.us, or calling 410-576-6491.

**For New Mexico residents,** state law advises you to review personal account statements and credit reports, as applicable, to detect errors resulting from the security breach. You also have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from violators. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage you to review your rights pursuant to the Fair Credit Reporting Act at www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**For New York residents,** you may contact and obtain information from these state agencies: *New York Department of State Division of Consumer Protection,* One Commerce Plaza, 99 Washington Ave., Albany, NY 12231-0001, 518-474-8583 / 1-800-697-1220, http://www.dos.ny.gov/consumerprotection; and *New York State Office of the Attorney General,* The Capitol, Albany, NY 12224-0341, 1-800-771-7755, https://ag.ny.gov

**For North Carolina residents,** the Attorney General can be contacted at 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-877-566-7226 or 1-919-716-6400, and www.ncdoj.gov. You may also obtain information about steps you can take to prevent identify theft from the North Carolina Attorney General at https://ncdoj.gov/protecting-consumers/protecting-your-identity/protect-yourself-from-id-theft/.

**For Oregon residents,** state law advises you to report any suspected identity theft to law enforcement, including the Attorney General, and the Federal Trade Commission.

**For Rhode Island residents,** this incident involves 0 individuals in Rhode Island. Under Rhode Island law, you have the right to file and obtain a copy of a police report. You also have the right to request a security freeze, as described above. You may contact and obtain information from your state attorney general at: *Rhode Island Attorney General's Office,* 150 South Main Street, Providence, RI 02903, 1-401-274-4400, www.riag.ri.gov.



**For Vermont Residents:** If you do not have internet access but would like to learn more about how to place a security freeze on your credit report, contact the Vermont Attorney General's Office at 802-656-3183 (800-649-2424 toll free in Vermont only).

ELECTRONICALLY FILED
8/27/2024 11:29 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

Medical Center Barbour
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PKIIM200107747

ᵐᵗᴵᵗᴵᵗᴵᴵᴵᴵᵗᴵᵗᵗᴵᴵᵗᴵᵗᵗᴵᵗᵗᴵᵗᵗᴵᵗᵗᴵᴵᴵᴵᵗᵗᴵᵗᴵᴵᵗᴵᴵᴵᵗᵗᴵᴵᴵᴵ

August 22, 2024

Dear Lucy Calton:

Medical Center Barbour ("MCB") is writing to inform you of a recent data security incident that may have resulted in unauthorized access to your sensitive personal information. This letter contains details about the incident, our response to this incident, and steps yourself. MCB takes the protection and proper use of your personal information very seriously, and we sincerely apologize for any inconvenience this may cause.

### What Happened?

On October 29, 2023, MCB detected suspicious activity in its network environment. Upon discovery of this incident, MCB promptly took steps to secure its network and engaged a specialized cybersecurity firm to investigate the nature and scope of the incident. The investigation concluded on December 8, 2023. As a result of the investigation, MCB learned that an unauthorized actor accessed certain files and data stored within our network.

Upon learning this in December of 2024, MCB began an internal review of the data stored on the server at the time of this incident. After our own review, on May 21, 2024, MCB engaged a reputable data mining vendor, to assist in the time-consuming and detailed reconstruction and review of the data stored on the server at the time of this incident to better understand whose information was affected. On July 31, 2024, the data mining vendor identified persons whose sensitive data was included within the impacted data. Because information related to you was disclosed, we are notifying you out of full transparency.

### What Information Was Involved?

The following data was potentially accessed and acquired by a person not authorized to view them: Date of Birth, Social Security Number, Medical Information and Health Insurance Information.

### What We Are Doing?

Data security is one of our highest priorities. Upon detecting this incident, we moved quickly to initiate an investigation, which included retaining a leading forensic investigation firm who assisted in conducting an investigation and confirming the security of our network environment. We also deployed additional monitoring tools and will continue to enhance the security of our systems. We take the protection and proper use of personal information very seriously.

As part of our ongoing commitment to information privacy and the security of information, we are notifying you of this incident, and we are providing you with access to **Single Bureau Credit Monitoring/Single Bureau Credit Report/Single Bureau Credit Score** services at no charge. These services provide you with alerts for twelve (12) months from the date of enrollment when changes occur to your credit file. This notification is sent to you the same day that the change or update takes place with the bureau. Finally, we are providing you with proactive fraud assistance to help with any questions that you might have or in event that you become a victim of fraud. These services will be provided by Cyberscout, a TransUnion company specializing in fraud assistance and remediation services.

## What You Can Do

We encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious or unauthorized activity. Additionally, security experts suggest that you contact your financial institution and all major credit bureaus to inform them of such a breach and then take whatever steps are recommended to protect your interests, including the possible placement of a fraud alert on your credit file. Please review the enclosed *Additional Information* to learn more about how to protect against the possibility of information misuse.

To enroll in Credit Monitoring services at no charge, please log on to **https://bfs.cyberscout.com/activate** and follow the instructions provided. When prompted please provide the following unique code to receive services: **B077F4A3C198**. Please note that the code is case-sensitive and will need to be entered as it appears.

In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age. Once enrolled you will have twelve (12) months of monitoring services. At the end of twelve (12) months, the services will be deactivated. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

## For More Information

Representatives are available for 90 days from the date of this letter, to assist you with questions regarding this incident, between the hours of 8:00 a.m. to 8:00 p.m. Eastern time, Monday through Friday, excluding holidays. Please call the help line 1-833-531-0168 and supply the fraud specialist with the unique code listed above. The call center representatives have been fully versed in the incident and can answer questions or concerns you may have regarding the protection of your personal information.

Janet Kinney
Chief Executive Officer

## Additional Information

**Credit Reports:** You may obtain a copy of your credit report, free of charge, whether or not you suspect any unauthorized activity on your account. You may obtain a free copy of your credit report from each of the three nationwide credit reporting agencies. To order your free credit report, please visit www.annualcreditreport.com, or call toll-free at 1-877-322-8228. You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available at https://www.consumer.ftc.gov/articles/0155-free-credit-reports) to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281.

**Security Freeze:** You also have the right to place a security freeze on your credit report. A security freeze is intended to prevent credit, loans, and services from being approved in your name without your consent. To place a security freeze on your credit report, you need to make a request to each consumer reporting agency. You may make that request by certified mail, overnight mail, regular stamped mail, or by following the instructions found at the websites listed below. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse or a minor under the age of 16, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue. As of September 21, 2018, it is free to place, lift, or remove a security freeze. You may also place a security freeze for children under the age of 16. You may obtain a free security freeze by contacting any one or more of the following national consumer reporting agencies:

| Equifax Security Freeze | Experian Security Freeze | TransUnion Security Freeze |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348 | Allen, TX 75013 | Woodlyn, PA 19094 |
| 1-800-349-9960 | 1-888-397-3742 | 1-888-909-8872 |
| https://www.equifax.com/personal/credit-report-services/credit-freeze/ | www.experian.com/freeze/center.html | www.transunion.com/credit-freeze |

**Fraud Alerts:** You can place fraud alerts with the three credit bureaus by phone and online with:

♦ Equifax (https://assets.equifax.com/assets/personal/Fraud_Alert_Request_Form.pdf);
♦ TransUnion (https://www.transunion.com/fraud-alerts); or
♦ Experian (https://www.experian.com/fraud/center.html).

A fraud alert tells creditors to follow certain procedures, including contacting you, before they open any new accounts or change your existing accounts. For that reason, placing a fraud alert can protect you, but also may delay you when you seek to obtain credit. As of September 21, 2018, initial fraud alerts last for one year. Victims of identity theft can also get an extended fraud alert for seven years. The phone numbers for all three credit bureaus are at the bottom of this page.

**Monitoring:** You should always remain vigilant and monitor your accounts for suspicious or unusual activity.

**File Police Report:** You have the right to file or obtain a police report if you experience identity fraud. Please note that in order to file a crime report or incident report with law enforcement for identity theft, you will likely need to provide proof that you have been a victim. A police report is often required to dispute fraudulent items. You can generally report suspected incidents of identity theft to local law enforcement or to the Attorney General.

**FTC and Attorneys General:** You can further educate yourself regarding identity theft, fraud alerts, security freezes, and the steps you can take to protect yourself, by contacting the consumer reporting agencies, the Federal Trade Commission, or your state Attorney General. The Federal Trade Commission can be reached at: 600 Pennsylvania Avenue NW, Washington, DC 20580, www.identitytheft.gov, 1-877-ID-THEFT (1-877-438-4338), TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. You can obtain further information on how to file such a complaint by way of the contact information listed above. You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement. This notice has not been delayed by law enforcement.

**For Arizona residents,** the Attorney General may be contacted at the Consumer Protection & Advocacy Section, 2005 North Central Avenue, Phoenix, AZ 85004, 1-602-542-5025.

**For Colorado residents,** the Attorney General may be contacted through Consumer Protection 1300 Broadway, 9th Floor, Denver, CO 80203 1-720-508-6000, www.coag.gov.

**For District of Columbia residents,** the Attorney General may be contacted at the Office of the Attorney General for the District of Columbia, 441 4th Street NW, Washington, DC 20001, 1-202-727-3400, www.oag.dc.gov.

**For Illinois residents,** the Attorney General can be contacted at 100 West Randolph Street, Chicago, IL 60601; 1-866-999-5630; www.illinoisattorneygeneral.gov.

**For Iowa residents,** you can report any suspected identity theft to law enforcement or to the Attorney General.

**For Massachusetts residents,** it is required by state law that you are informed of your right to obtain a police report filed in regard to this incident. If you are the victim of identity theft, you also have the right to file a police report and obtain a copy of it.

**For Maryland residents,** you may also may also wish to review information provided by the Maryland Attorney General on how to avoid identity theft at https://www.marylandattorneygeneral.gov/Pages/IdentityTheft/default.aspx, or by sending an email to idtheft@oag.state.md.us, or calling 410-576-6491.

**For New Mexico residents,** state law advises you to review personal account statements and credit reports, as applicable, to detect errors resulting from the security breach. You also have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from violators. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage you to review your rights pursuant to the Fair Credit Reporting Act at www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**For New York residents,** you may contact and obtain information from these state agencies: *New York Department of State Division of Consumer Protection,* One Commerce Plaza, 99 Washington Ave., Albany, NY 12231-0001, 518-474-8583 / 1-800-697-1220, http://www.dos.ny.gov/consumerprotection; and *New York State Office of the Attorney General,* The Capitol, Albany, NY 12224-0341, 1-800-771-7755, https://ag.ny.gov

**For North Carolina residents**, the Attorney General can be contacted at 9001 Mail Service Center, Raleigh, NC 27699-9001, 1-877-566-7226 or 1-919-716-6400, and www.ncdoj.gov. You may also obtain information about steps you can take to prevent identify theft from the North Carolina Attorney General at https://ncdoj.gov/protecting-consumers/protecting-your-identity/protect-yourself-from-id-theft/.

**For Oregon residents**, state law advises you to report any suspected identity theft to law enforcement, including the Attorney General, and the Federal Trade Commission.

**For Rhode Island residents**, this incident involves 0 individuals in Rhode Island. Under Rhode Island law, you have the right to file and obtain a copy of a police report. You also have the right to request a security freeze, as described above. You may contact and obtain information from your state attorney general at: *Rhode Island Attorney General's Office*, 150 South Main Street, Providence, RI 02903, 1-401-274-4400, www.riag.ri.gov.



**For Vermont Residents:** If you do not have internet access but would like to learn more about how to place a security freeze on your credit report, contact the Vermont Attorney General's Office at 802-656-3183 (800-649-2424 toll free in Vermont only).



AlaFile E-Notice

69-CV-2024-900054.00

To:  ANNESLEY H DEGARIS
     adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 8/27/2024 11:29:35 AM

Notice Date:     8/27/2024 11:29:35 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

AlaFile E-Notice

69-CV-2024-900054.00

To:  MEDICAL CENTER BARBOUR
820 W WASHINGTON STREET
EUFAULA, AL, 36027

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 8/27/2024 11:29:35 AM

Notice Date:    8/27/2024 11:29:35 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MCBH, LLC
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 8/27/2024 11:29:35 AM

Notice Date:      8/27/2024 11:29:35 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

AlaFile E-Notice

69-CV-2024-900054.00

To:   ALLIANT MANAGEMENT SERVICES
      2650 EASTPOINT PARKWAY
      SUITE 310
      LOUISVILLE, KY, 40223

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 8/27/2024 11:29:35 AM

Notice Date:     8/27/2024 11:29:35 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA
      205 EAST BARBOUR STREET
      EUFAULA, AL, 36072

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 8/27/2024 11:29:35 AM

Notice Date:    8/27/2024 11:29:35 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>69-CV-2024-900054.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL

**NOTICE TO:** MEDICAL CENTER BARBOUR, 820 W WASHINGTON STREET, EUFAULA, AL 36027

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ANNESLEY H DEGARIS                                                              ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 2 North 20th Street, Suite 1030, BIRMINGHAM, AL 35203                     .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of  LUCY CALTON
pursuit to the Alabama Rules of the Civil Procedure.    *[Name(s)]*

| 08/27/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.    /s/ ANNESLEY H DEGARIS

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

*Certified Mail*

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to
_____ in _____ County, Alabama on _____ .

*(First and Last Name of Person Served)*     *(Name of County)*     *(Date)*

Document left:

☐ with above-named Defendant;

☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by
_____ in _____ County, Alabama on _____ who is:

*(First and Last Name of Person Served)*     *(Name of County)*     *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

*(Type of Process Server)*     *(Server's Signature)*     *(Address of Server)*

*(Badge or Precinct Number of Sheriff or Constable)*     *(Server's Printed Name)*

*(Badge or Precinct Number of Sheriff or Constable)*     *(Telephone Number of Designated Process Server)*

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>69-CV-2024-900054.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL**

**NOTICE TO:** MCBH, LLC, 641 S LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ANNESLEY H DEGARIS ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 2 North 20th Street, Suite 1030, BIRMINGHAM, AL 35203 .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of   LUCY CALTON
pursuant to the Alabama Rules of the Civil Procedure.   *[Name(s)]*

| 08/27/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.   /s/ ANNESLEY H DEGARIS

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

*Certified Mail*

☐ Return receipt of certified mail received in this office on .

*(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to

in County, Alabama on .

*(First and Last Name of Person Served)*          *(Name of County)*                          *(Date)*

Document left:

☐ with above-named Defendant;

☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by

in County, Alabama on who is:

*(First and Last Name of Person Served)*          *(Name of County)*                     *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

*(Type of Process Server)*          *(Server's Signature)*                *(Address of Server)*

*(Badge or Precinct Number of Sheriff or Constable)*   *(Server's Printed Name)*

*(Badge or Precinct Number of Sheriff or Constable)*   *(Telephone Number of Designated Process Server)*

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>69-CV-2024-900054.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL**

**NOTICE TO:** ALLIANT MANAGEMENT SERVICES, 2650 EASTPOINT PARKWAY SUITE 310, LOUISVILLE, KY 40223

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ANNESLEY H DEGARIS                                                                                                                          ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 2 North 20th Street, Suite 1030, BIRMINGHAM, AL 35203                          .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of   LUCY CALTON
pursuant to the Alabama Rules of the Civil Procedure.                                               *[Name(s)]*

| 08/27/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.        /s/ ANNESLEY H DEGARIS

*(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

*Certified Mail*

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to _____ in _____ County, Alabama on _____ .

*(First and Last Name of Person Served)*        *(Name of County)*        *(Date)*

Document left:

☐ with above-named Defendant;

☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by _____ in _____ County, Alabama on _____ who is:

*(First and Last Name of Person Served)*        *(Name of County)*        *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

| *(Type of Process Server)* | *(Server's Signature)* | *(Address of Server)* |
|---|---|---|
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Server's Printed Name)* | |
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Telephone Number of Designated Process Server)* | |

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 7/2023 | SUMMONS<br>- CIVIL - | Court Case Number<br>69-CV-2024-900054.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL

**NOTICE TO:** HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA, 205 EAST BARBOUR STREET, EUFAULA, AL 36072

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), ANNESLEY H DEGARIS

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 2 North 20th Street, Suite 1030, BIRMINGHAM, AL 35203

*(Address(es) of Plaintiff(s) or Attorney(s))*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of pursuant to the Alabama Rules of the Civil Procedure.

LUCY CALTON
*[Name(s)]*

| 08/27/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.      /s/ ANNESLEY H DEGARIS

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

*Certified Mail*

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to _____ in _____ County, Alabama on _____.

*(First and Last Name of Person Served)*      *(Name of County)*      *(Date)*

Document left:

☐ with above-named Defendant;

☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by _____ in _____ County, Alabama on _____ who is:

*(First and Last Name of Person Served)*      *(Name of County)*      *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

*(Type of Process Server)*      *(Server's Signature)*      *(Address of Server)*

*(Badge or Precinct Number of Sheriff or Constable)*      *(Server's Printed Name)*

*(Badge or Precinct Number of Sheriff or Constable)*      *(Telephone Number of Designated Process Server)*



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL

69-CV-2024-900054.00

To: CLERK EUFAULA
clerk.eufaula@alacourt.gov

**TOTAL POSTAGE PAID: $50.64**

Parties to be served by Certified Mail - Return Receipt Requested

MEDICAL CENTER BARBOUR                                    Postage: $12.66
820 W WASHINGTON STREET
EUFAULA, AL 36027

9589 0710 5270 0347 7144 38

MCBH, LLC                                                Postage: $12.66
641 S LAWRENCE STREET
MONTGOMERY, AL 36104

9589 0710 5270 0347 7144 52

ALLIANT MANAGEMENT SERVICES                              Postage: $12.66
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY 40223

9589 0710 5270 0347 7144 76

HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA            Postage: $12.66
205 EAST BARBOUR STREET
EUFAULA, AL 36072

9589 0710 5270 0347 7144 21

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

DOCUMENT 7

CW-24-000524

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

EUFAULA ALABAMA

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

AUG 31 2024

USPS 36027

Postage

$ 12.66

Total Postage and Fees

$ 12.66

Sent To
*Health Care Auth for the City Ef*

Street and Apt. No., or PO Box No.
*205 E. Barbour St.*

City, State, ZIP+4®
*Eufaula, Al 36027*

PS Form 3800, January 2023 PSN 7530-02-000-9047          See Reverse for Instructions

7144 7271 0347 5270 0710 9589

# U.S. Postal Service
# CERTIFIED MAIL® RECEIPT
## Domestic Mail Only

W-24-700054

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy) $ _____
☐ Return Receipt (electronic) $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

AUG 31 2024

Postage

$ 12.64

Total Postage and Fees

$

Sent To
alliant Men.

Street and Apt. No., or PO Box No.
2650 Eastpaint PKWY Ste 310

City, State, ZIP+4®
Lousville, QI 40223

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

7644 7647 0347 0270 5270 0710 9589 9

# U.S. Postal Service™

W-24-900054

# CERTIFIED MAIL® RECEIPT

*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| Certified Mail Fee | |
|---|---|
| $ | |

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy)  $ _____
- ☐ Return Receipt (electronic)  $ _____
- ☐ Certified Mail Restricted Delivery  $ _____
- ☐ Adult Signature Required  $ _____
- ☐ Adult Signature Restricted Delivery $ _____

AUG 31 2024

Postmark Here

USPS 36027

Postage

$ 12.64

Total Postage and Fees

$

Sent To  NCBA

Street and Apt. No. or PO Box No.  641 S. Lawrence St.

City, State, ZIP+4®  Mont. Al 36104

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

7052 7144 7347 0340 5270 0710 0589

# U.S. Postal Service
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

W-24-900054

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)    $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery    $ _____
☐ Adult Signature Required    $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

AUG 31 2024

Postage

$

Total Postage and Fees

$ *12.66*

Sent To *Med. Center Barbour*

Street and Apt. No., or PO Box No. *820 W. Washington St.*

City, State, ZIP+4® *Eufaula, Al 36027*

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

7144 38

7147

0347

0037

5270

5505

0710

9589

**SENDER:** *COMPLETE THIS SECTION*

- Complete Items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Health Care Auth. for the
City of Eufaula
205 E. Barbour St.
Eufaula, Al 36027

9590 9402 8218 3030 6910 41

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Darlene Jon_

☐ Agent
☐ Addressee

B. Received by (Printed Name)

D. Jones

C. Date of Delivery

9-4

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

9589 0710 5270 0347 7144 21

PS Form **3811**, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

DOCUMENT'S

DOCUMENT 8

**USPS TRACKING #**

MONTGOMERY AL 360

5 SEP 2024 PM 4 L

9590 9402 8218 3030 6910 41

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box*

Paige C...
Barbour County Circu...
405 East Barbour ...
Suite 3. Room ...
Eufaula, AL 3...

CV-24-900054



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To: DEGARIS ANNESLEY HODGES
adegaris@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/4/2024

**D004 HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA**
**Corresponding To**
CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
     acalton@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/4/2024

**D004 HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA**
**Corresponding To**
CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

**SENDER: *COMPLETE THIS SECTION***

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Medical Center Barbour
820 W. Washington St.
Eufaula, Al 36027

*DOCUMENT 10*

||||||||||||||||||||||||||||||
9590 9402 8218 3030 6910 10

2. Article Number (Transfer from service label)

9589 0710 5270 0347 7144 38

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X Patricia Glau
☐ Agent
☐ Addressee

B. Received by (Printed Name)
P. Glau

C. Date of Delivery
9/4/24

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt



**USPS TRACKING#**

MONTGOMERY, AL 360

5 SEP 2024 PM 4 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 8218 3030 6910 10

**United States
Postal Service**

DOCUMENT 10

* Sender: Please print your name, address, and ZIP+4® in this box*

P
Barbour County C
405 East Barbour
Suite 3, Room
Eufaula, AL



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  DEGARIS ANNESLEY HODGES
adegaris@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/6/2024

**D001 MEDICAL CENTER BARBOUR**

**Corresponding To**

CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
acalton@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/6/2024

**D001 MEDICAL CENTER BARBOUR**

**Corresponding To**

CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: *COMPLETE THIS SECTION***

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Kelly Webster*
☑ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

9-4-24

1. Article Addressed to:

MUBA
641 S. Lawrence St
Mont. Al 36104

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

DOCUMENT 12

9590 9402 8218 3030 6910 27

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ Mail
☐ ___ Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

9589 0710 5270 0347 7144 52

PS Form **3811**, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

**USPS TRACKING #**



9590 9402 8218 3030 6910 27

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

DOCUMENT 12

* Sender: Please print your name, address, and ZIP+4® in this box*

Re:
Barbour County C
405 East Barbour
Suite 3, Room
Eufaula, A

W-24-900/54



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  DEGARIS ANNESLEY HODGES
     adegaris@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/11/2024

**D002 MCBH, LLC**

**Corresponding To**

CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
     acalton@degarislaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/11/2024

**D002 MCBH, LLC**

**Corresponding To**

CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**STATE OF ALABAMA**                    Revised 3/5/08          **Case No.**

Unified Judicial System

69-BARBOUR       ☐ District Court  ☑ Circuit Court      CV2024900054.00

| | |
|---|---|
| LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL | **CIVIL MOTION COVER SHEET**<br>*Name of Filing Party:* C001 - CALTON LUCY |

| | |
|---|---|
| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*<br><br>ALEXANDRA JOAN CALTON<br>2 North 20th Street Suite 1030<br>BIRMINGHAM, AL 35203<br>*Attorney Bar No.:* CAL089 | ☐ Oral Arguments Requested |

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☑ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Disburse Funds |
| ☐ Motion to Intervene ($297.00) | ☐ Extension of Time |
| ☐ Other _____ | ☐ In Limine |
| pursuant to Rule _____ ($50.00) | ☐ Joinder |
| | ☐ More Definite Statement |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| ☐ Local Court Costs $ 0 | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| | | |
|---|---|---|
| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees)  ☐ | Date:<br><br>9/23/2024 9:53:05 AM | Signature of Attorney or Party<br>/s/ ALEXANDRA JOAN CALTON |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | |
|---|---|
| LUCY CALTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 69-CV-2024-900054.00 |
| v. | |
| MEDICAL CENTER BARBOUR, MCBH, LLC, ALLIANT MANAGEMENT SERVICES, INC., THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA, and FICTITIOUS PARTY DEFENDANTS 1-27, et al., | |
| Defendants. | |
| TERETHA SPANN and CHAKA FORD, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 69-CV-2024-900056.00 |
| v. | |
| MCBH, LLC d/b/a MEDICAL CENTER BARBOUR, and THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA, | |
| Defendants. | |

## PLAINTIFFS' JOINT UNOPPOSED MOTION TO CONSOLIDATE CASES AND APPOINT LEAD CLASS COUNSEL PURSUANT TO ALA. R. CIV. P. 23(D)(5)

### I.    INTRODUCTION

Plaintiffs Lucy Calton, Teretha Spann, and Chaka Ford (collectively, "Plaintiffs") hereby respectfully move to consolidate the related actions *Calton v. Medical Center Barbour, et al.* No. 69-CV-2024-900054.00, filed August 27, 2024 ("*Calton*") and *Spann, et al. v. MCBH, LLC, et al.*,

No. 69-cv-2024-900056.00, filed August 30, 2024 ("*Spann*") (collectively, the "Related Actions"),
both pending in Barbour County, and respectfully request that the Court appoint Alexandra Calton
of DeGaris Law as interim lead counsel. In support thereof, Plaintiffs state the following:

## II.    BACKGROUND

The Related Actions arise from a data breach incident at Medical Center Barbour Hospital
("MCBH") in which Defendants' information systems were breached by cybercriminals. MCBH
is a 74-bed hospital in Eufala, Alabama that provides radiology, emergency care, senior behavior
health, surgery, inpatient, family care, and wound care services. Defendants jointly operate
MCBH. As is typical for a healthcare services provider, MCBH collects, maintains, and stores
highly sensitive personal and medical information belonging to its patients, including, but not
limited to their full names, Social Security numbers, dates of birth, addresses, driver's license or
state ID numbers, passport information (collectively, "personally identifying information" or
"PII"), health insurance and medical information ("private health information" or "PHI"), and
financial information (collectively, with PII and PHI, "Private Information).

On October 29, 2023, MCBH experienced a data breach incident in which unauthorized
cybercriminals accessed their information systems and databases and stole Private Information
belonging to MCBH's current and former patients (the "Data Breach"). On August 22, 2024,
MCBH sent notice of the Data Breach to all affected individuals, and publicly disclosed that
approximately 61,014 individuals had their Private Information compromised in the Data Breach.

In August 2024, Plaintiffs brought the instant Related Actions on behalf of themselves and
a putative class of individuals whose information was compromised in the Data Breach against
Defendants. The Related Actions seek the same or similar damages and relief and assert largely
similar counts on behalf of Plaintiffs and similarly situated individuals, including, negligence,
negligence *per se*, breach of express and/or implied contract, and unjust enrichment.

III.    **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

A.    **The Related Actions Involve Common Questions of Law or Fact**

Circuit judges have broad powers under the Alabama Rules of Civil Procedure to order actions consolidated. *State v. Reynolds*, 887 So. 2d 848, 854 (Ala. 2004). A trial court's authority to consolidate actions is clearly within its discretion. *Ex parte Flexible Prods. Co.*, 915 So. 2d 34, 39 (Ala. 2005). Alabama Rule of Civil Procedure 42(a) provides:

> (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Ala. R. Civ. P. 42(a).

Thus, Rule 42(a) permits consolidation of cases involving common questions of law or fact. An order consolidating cases represents a judicial determination that the interests of justice would be better served by trying the cases together in one setting. *Ex parte Hill*, 166 So. 3d 701, 704 (Ala. Civ. App. Nov. 7, 2014).

Here, consolidation of the Related Actions is appropriate. The Related Actions are of the same nature in that each seeks certification of a class of persons affected by the Data Breach; alleges that Class Members suffered harm as a result of the Data Breach because their Private Information was exposed to third parties without their authorization; and seeks damages and equitable relief; and arises out of the same incident: the Data Breach that affected MCBH, who is named as a defendant both the Related Actions. The Related Actions assert multiple overlapping and shared claims, including negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, and unjust enrichment. Since the Related Actions assert overlapping claims, arise out of the same incident, and share a common defendant, they will necessarily raise numerous

3

identical issues of law and fact. Plaintiffs will rely on the same evidence to prove their shared claims. Any issues unique to any of the Related Actions will still require the same or substantially similar evidence as that required by the shared claims.

**B.      The Related Actions Should be Consolidated to Reduce Costs and Delay**

Consolidation will promote judicial economy by simplifying discovery, pretrial motions, class certification issues, and other case management issues, especially given that the cases are at their procedural inception. And, in preparation for each trial, the parties will engage in nearly identical discovery, depose the same witnesses, and gather the same evidence to prove their shared claims. Consolidation is warranted because common issues of both law and fact are involved in each Related Action, and because consolidation of the Related Actions will avoid unnecessary and costly duplication of discovery, depositions, subpoenas, hearings, and trials. Consolidating the Related Actions will also reduce the confusion or delay that may result from prosecuting related putative class actions separately, including eliminating the possibility of inconsistent rulings on class certification, evidentiary motions, and other pretrial matters.

Consolidating the Related Actions will not prejudice any party. The Related Actions were filed on August 27, 2024 (*Calton*) and August 30, 2024 (*Spann*). Defendants have yet to file a response in either Related Action, and discovery has not yet begun in any of the Related Actions. At this early stage of the proceedings, consolidation is unlikely to cause prejudice to any party as no party will be prevented from fully advocating their position on relevant issues.

**C.      Future-Filed Related Cases Should be Consolidated**

To ensure continued judicial efficiency, Plaintiffs in each of the Related Actions jointly and respectfully request that the Court order that any future actions that are filed or transferred to this Court and are based on the same Data Breach be consolidated into the first-filed action.

4

## IV.    THE COURT SHOULD APPOINT INTERIM LEAD CLASS COUNSEL

The commentary to Alabama Rule of Civil Procedure 23(d)(5) provides that the Court may utilize Rule 23(d)(5) as "a housekeeping provision," permitting the Court to submit orders during the action "for protection, simplification and other procedural matters." Such early appointments of interim lead counsel are beneficial procedural matters in complex cases such as this one because they help to "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *See* THE MANUAL FOR COMPLEX LITIGATION (Fourth) (2007) ("Manual") § 21.11. Selection of interim lead counsel also facilitates "efficiency and economy without jeopardizing fairness to the parties." *Id.* § 10.22 (noting that interim counsel "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel"). In matters such as this, appointing seasoned interim lead counsel is one of the Court's key organizational tools. *Id.* at §§ 10.224, 21.272.

### A.    Proposed Interim Lead Class Counsel Have Performed Substantial Work in the Investigation, Filing, and Prosecution of this Action

Proposed Interim Lead Class Counsel have committed substantial, yet appropriate, time and resources to organizing and working toward the advancement of this litigation, including but not limited to, investigating and researching the potential legal theories and claims at issue and researching and reviewing information relating to the factual underpinnings of the Data Breach and this litigation. Proposed Interim Lead Class Counsel are familiar with the facts and legal issues in this matter and intend to continue their pursuit of viable claims on behalf of Plaintiffs and the Proposed Class.

Proposed Interim Lead Class Counsel continue to perform substantial work that has been (and will be) valuable to the Class as the case moves forward. This includes, but is not limited to,

the following: (a) reviewing patient communications concerning the Data Breach; (b) engaging in ongoing communications with putative Class members; (c) fielding outreach from impacted MCBH patients; (d) investigating the scope of the Data Breach's consequences on Plaintiffs and Class members, as well as Defendants' public response regarding the same; (e) researching potential claims arising from the Data Breach and the potential defenses thereto; and (f) using this research to prepare and file detailed class action complaints.

Proposed Interim Lead Class Counsel have conducted all the work necessary to prosecute this litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of costs) necessary for advancing the claims of Plaintiffs and the proposed Class.

### B.    Proposed Interim Lead Class Counsel are Highly Experienced and Have Extensive Knowledge of the Applicable Law

Data breach cases present unique and novel issues of fact and law that are ever evolving. Proposed Interim Lead Class Counsel have extensive experience litigating class actions including large data breaches, and have gained superior knowledge of the law in this highly fluid area. Proposed Interim Lead Class Counsel have led numerous high-profile privacy cases affecting millions of consumers. This experience includes litigating, conducting significant discovery, and briefing essentially every aspect of privacy class cases. They have extensively litigated and overcome issues of standing, statutory claims, class certification, and damage models; devised injunctive relief programs in numerous data breach, data disclosure, and privacy cases; and established groundbreaking precedent.

### Alexandra Calton and DeGaris Law, LLC

DeGaris Law, LLC is a nationally recognized practice specializing in complex civil litigation including mass tort litigation, class actions, products liability, environmental litigation,

pharmaceutical drugs, and defective medical devices. DeGaris Law attorneys frequently serve in leadership roles in mass tort litigations.

DeGaris Law and its lawyers have consistently been recognized by national organizations and their peers as among the most successful and experienced courtroom lawyers in the country. These recognitions include U.S. News Best Law Firms in America, The Best Lawyers in America, Super Lawyers, and National Trial Lawyers.

###    C.    Proposed Interim Lead Class Counsel Are Committed to Representing and Expending the Resources Necessary to Protect the Putative Class's Interests

Proposed Interim Lead Class Counsel and their respective firms, have thoroughly investigated this case and will diligently prosecute it. They and their co-counsel have devoted substantial time to investigating the background facts and drafting a detailed complaint. Proposed Interim Lead Class Counsel are hard-working, organized, collaborative, effective, and cooperative. They have taken many cases from inception to favorable conclusions, and will do so here. Their firms possess the resources and manpower required to vigorously prosecute this litigation. They are committed to pursuing the best interests of Plaintiffs and the putative class in an effective and efficient manner. They will vigorously work to ensure that Plaintiffs and the putative class are represented in the best manner possible. They will continue to prosecute this litigation for the duration of the lawsuit with the same diligence they have already demonstrated.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the Related Actions and appoint Alexandra Calton of DeGaris Law, LLC as interim lead counsel.

Dated: September 23, 2024                   Respectfully Submitted,

                                            */s/ Alexandra J. Calton*
                                            Alexandra J. Calton (CAL089)
                                            Annesley H. DeGaris (DEG002)
                                            **DEGARIS LAW, LLC**

2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone: (205) 575-8000
Facsimile: (205) 278-1454
adegaris@degarislaw.com
acalton@degarislaw.com

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Nickolas J. Hagman*
Daniel O. Herrera*
Mohammed A. Rathur*
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com
dherrera@caffertyclobes.com
mrathur@caffertyclobes.com

*pro hac vice* to be submitted

ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

# Exhibit 1

**DECLARATION OF ALEXANDRA CALTON IN SUPPORT OF
PLAINTIFFS'MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**

I, Alexandra Calton, hereby declare as follows:

1.     I am an associate in the law firm DeGaris Law, LLC ("DeGaris"). I have personal knowledge of the matters stated in this declaration except those stated on information and belief and, as to those, I believe them to be true. If called upon, I could and would competently testify to the matters as stated. This declaration is submitted in support of Plaintiffs' Unopposed Joint Motion to Consolidate and Appoint Lead Class Counsel.

2.     Upon information and belief, on October 29, 2023, Medical Center Barbour Hospital ("MCBH") was the target of a cybersecurity attack and unauthorized individual or individuals had infiltrated its network system and accessed files from the system containing the sensitive personal information of Plaintiffs and Class Members (the "Data Breach"). On August 22, 2024, MCBH sent notice of the Data Breach to all affected individuals, and publicly disclosed that to the state Attorneys General that the personally identifying information ("PII") and personal health information ("PHI") of its patients was exposed during the Data Breach. This information reportedly included names, Social Security numbers, dates of birth, addresses, driver's license or state ID numbers, passport information, health insurance and medical information, and financial information (collectively, "Private Information). DeGaris began investigating potential claims arising out of the Data Breach. As part of that investigation, DeGaris researched the potential legal theories and claims at issue and investigated the facts and circumstances surrounding the breach, including the cause of the breach, Defendant's public statements regarding the Data Breach, media commentary and consumer experiences concerning information compromised in the Data Breach, and prepared a detailed class action complaint.

3.    On September 23, 2024, my co-counsels and I filed Plaintiff's Unopposed Joint Motion to Consolidate Cases and Appoint Lead Class Counsel Pursuant to Ala. R. Civ. P. 23(d)(5), and agreed to collectively prosecute the case on behalf of our respective plaintiffs and to propose ourselves as interim Lead Class Counsel.

4.    As part of the agreement to collectively prosecute the litigation, all counsel involved understand the legal and factual underpinnings of the litigation, the need to work cooperatively, to allocate necessary resources to the litigation, and to effectively advance the interests of the classes.

5.    I respectfully submit that I and my firm have demonstrated the requisite qualifications to serve as the lead counsel in this case.

6.    Proposed Interim Lead Class Counsel is qualified to lead the consolidated litigation on behalf of the class. *See* Proposed Interim Lead Class Counsel firm resume, Exhibit A.

7.    Proposed interim Lead Class Counsel are well equipped to prosecute this action on behalf of the putative classes. Proposed interim Lead Class Counsel and co-counsel are each self-funded firms, capable of advancing the costs of litigation, and do not rely on third party financing. Proposed interim Class Counsel will commit all necessary resources to this litigation and will vigorously represent the interests of the proposed classes.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 23 day of September 2024.

/s/ *Alexandra J. Calton*
Alexandra J. Calton (CAL089)
**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone: (205) 575-8000
Facsimile: (205) 278-1454
acalton@degarislaw.com

# Alexandra J. Calton

acalton@degarislaw.com | (334) 695-1785

**EXPERIENCE**

**2022 – PRESENT**

**ATTORNEY,** DEGARIS LAW LLC
BIRMINGHAM, ALABAMA
Trial practice focused on personal injury, wrongful death, and complex litigation including
defective medical devices, product liability, environmental torts, and pharmaceutical drug
litigation.

**EDUCATION**

CUMBERLAND SCHOOL OF LAW
**2021**
**JURIS DOCTOR**
BIRMINGHAM, ALABAMA
Dean's List
Cumberland Sports Law Society, *Treasurer*
Cumberland Public Interest and Community Service Society
Women in Law Society

THE UNIVERSITY OF ALABAMA
**2018**
**BACHELOR OF ARTS – POLITICAL SCIENCE**
TUSCALOOSA, ALABAMA
President's List

**MEMBERSHIPS**

**BAR ADMISSIONS**

ALABAMA, 2021
NEW JERSEY, 2024

**COURT ADMISSIONS**

ALABAMA SUPREME COURT
Admitted, 2021

UNITED STATES DISTRICT COURTS
**Northern, Middle, and Southern District of Alabama**
Admitted

UNITED STATES DISTRICT COURT
**Southern District of New York**
**ADMITTED, PRO HAC, 2022**

UNITED STATES DISTRICT COURT

4

**District of Massachusetts**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Southern District of Ohio**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Southern District of Illinois**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Northern District of Illinois**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Northern District of California**
Admitted, Pro Hac, 2022

**<u>LEGAL/PROFESSIONAL ASSOCIATIONS</u>**

NATIONAL TRIAL LAWYERS

AMERICAN ASSOCIATION FOR JUSTICE
New Lawyers Division, Publications Committee 2023
New Lawyers Division, Professional Development Committee 2023

ALABAMA BAR ASSOCIATION

ALABAMA ASSOCIATION OF JUSTICE

SOUTHERN TRIAL LAWYERS ASSOCIATION

THIRD CIRCUIT BAR ASSOCIATION

**HONORS**

THE NATIONAL TRIAL LAWYERS TOP 40 UNDER 40
2022, 2023, 2024

BEST LAWYERS: ONES TO WATCH IN AMERICA
2024, 2025 – Mass Tort Litigation/Class Action, Plaintiffs
2024, 2025 – Personal Injury Litigation, Plaintiffs

MARQUIS WHO'S WHO IN AMERICA
Admitted

NATIONAL ACADEMY OF PERSONAL INJURY ATTORNEYS TOP 10 UNDER 40
2024

CERTIFICATE OF RECOGNITION FROM GOVERNOR BOB RILEY
*Leadership and dedicated efforts towards a positive cultural change.*

DOCUMENT 17



ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | | |
|---|---|---|
| CALTON LUCY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No.:    CV-2024-900054.00 |
| | ) | |
| MEDICAL CENTER BARBOUR, | ) | |
| MCBH, LLC, | ) | |
| ALLIANT MANAGEMENT SERVICES, | ) | |
| HEALTH CARE AUTHORITY FOR THE CITY | ) | |
| OF EUFAULA ET AL, | ) | |
| Defendants. | ) | |

**Proposed ORDER GRANTING PLAINTIFFS' UNOPPOSED JOINT MOTION TO CONSOLIDATE AND REQUEST TO APPOINT INTERIM LEADERSHIP**

The Court has reviewed Plaintiffs' Unopposed Joint Motion to Consolidate and Appoint Co-Lead Interim Counsel (the "Motion") submitted by Plaintiffs , as well as the accompanying exhibits, and has determined that consolidation and appointment of Interim Class Counsel in this proposed class action will promote judicial efficiency and orderly case management while avoiding unnecessary cost and delay.

Therefore, IT IS ORDERED that the Motions are GRANTED as set forth below:

1.      Pursuant to Alabama Rule of Civil Procedure 42(a), the Court hereby consolidates  (each a "Related Action" and together the "Consolidated Action").

2.      No further filings shall be made in the *Spann* action, which shall be administratively closed. All pleadings therein maintain their legal relevance until the filing of the Consolidated Complaint.

3.      This Order shall apply to any subsequently filed action alleging the same or substantially similar allegations.

4.      All papers previously filed and served to date in the Related Actions are deemed part of the record in the Consolidated Action.

5.      Defendant shall file a Notice of Related Case whenever a case that should be consolidated into this action is filed in, or transferred to, this Court. If any party objects to such consolidation or otherwise wishes to seek alternative relief, they shall do so within ten (10) calendar days. If the Court determines that the case is related, the clerk shall:

    a.      Place a copy of this Order in the separate docket for such action;

    b.      Serve on plaintiff's counsel in the new case a copy of this Order;

    c.      Direct this Order to be served upon any additional defendant(s) in the new case; and

    d.      Make the appropriate entry on the Master Docket.

6.      The Court shall enter a scheduling order for further pretrial proceedings as soon as is reasonably practicable.

7.      Plaintiffs in the Consolidated Action shall file an operative Consolidated Complaint within 30 days of the date of this Order. Defendant shall have 30 days from the date on which Plaintiffs file the Consolidated Complaint to file a response thereto. In the event that any Defendant's response is a motion to dismiss, Plaintiffs shall have 30 days to file their opposition brief, and that Defendant shall have 21 days to file a reply brief.

IT IS FURTHER ORDERED that, having given due consideration to the relevant factors set forth in The Manual For Complex Litigation, Fourth, (2004), and finding that the proposed counsel meet the adequacy requirements thereunder, Alexandra Calton of DeGaris Law, LLC is appointed interim Lead Counsel.

Interim Lead Counsel will be responsible for and have plenary authority to prosecute any and all claims of Plaintiffs and the putative class and to provide general supervision of the activities of Plaintiffs' counsel in the Consolidated Action.

It is the Court's intent that, as to all matters common to these coordinated cases, and to the fullest extent consistent with the independent fiduciary obligations owed by any and all Plaintiffs' counsel to their clients and any putative class, pretrial proceedings shall be conducted by and through Interim Co-Lead Class Counsel.

**IT IS FURTHER ORDERED** that the mere communication of otherwise privileged information among and between Plaintiffs' counsel shall not be deemed a waiver of the attorney-client privilege or the attorney work product immunity, as the Court recognizes that cooperation by and among counsel is essential for the orderly and expeditious resolution of this litigation.

**IT IS FURTHER ORDERED** that counsel for all parties are directed to cooperate with one another, wherever possible, to promote the expeditious handling of pre-trial proceedings in the Consolidated Action, and to conduct themselves in a manner consistent with the Local Rules of the Circuit Court of Sangamon County. It is hereby **ORDERED** that this Order shall apply to any action filed in, transferred to, or removed to this Court which relates to the subject matter at issue in this case.

**SO ORDERED**

**DONE this[To be filled by the Judge].**

**/s/[To be filled by the Judge]**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

# Exhibit 1

**DECLARATION OF ALEXANDRA CALTON IN SUPPORT OF**
**PLAINTIFFS'MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**

I, Alexandra Calton, hereby declare as follows:

1.       I am an associate in the law firm DeGaris Law, LLC ("DeGaris"). I have personal knowledge of the matters stated in this declaration except those stated on information and belief and, as to those, I believe them to be true. If called upon, I could and would competently testify to the matters as stated. This declaration is submitted in support of Plaintiffs' Unopposed Joint Motion to Consolidate and Appoint Lead Class Counsel.

2.       Upon information and belief, on October 29, 2023, Medical Center Barbour Hospital ("MCBH") was the target of a cybersecurity attack and unauthorized individual or individuals had infiltrated its network system and accessed files from the system containing the sensitive personal information of Plaintiffs and Class Members (the "Data Breach"). On August 22, 2024, MCBH sent notice of the Data Breach to all affected individuals, and publicly disclosed that to the state Attorneys General that the personally identifying information ("PII") and personal health information ("PHI") of its patients was exposed during the Data Breach. This information reportedly included names, Social Security numbers, dates of birth, addresses, driver's license or state ID numbers, passport information, health insurance and medical information, and financial information (collectively, "Private Information). DeGaris began investigating potential claims arising out of the Data Breach. As part of that investigation, DeGaris researched the potential legal theories and claims at issue and investigated the facts and circumstances surrounding the breach, including the cause of the breach, Defendant's public statements regarding the Data Breach, media commentary and consumer experiences concerning information compromised in the Data Breach, and prepared a detailed class action complaint.

3.     On September 23, 2024, my co-counsels and I filed Plaintiff's Unopposed Joint Motion to Consolidate Cases and Appoint Lead Class Counsel Pursuant to Ala. R. Civ. P. 23(d)(5), and agreed to collectively prosecute the case on behalf of our respective plaintiffs and to propose ourselves as interim Lead Class Counsel.

4.     As part of the agreement to collectively prosecute the litigation, all counsel involved understand the legal and factual underpinnings of the litigation, the need to work cooperatively, to allocate necessary resources to the litigation, and to effectively advance the interests of the classes.

5.     I respectfully submit that I and my firm have demonstrated the requisite qualifications to serve as the lead counsel in this case.

6.     Proposed Interim Lead Class Counsel is qualified to lead the consolidated litigation on behalf of the class. *See* Proposed Interim Lead Class Counsel firm resume, Exhibit A.

7.     Proposed interim Lead Class Counsel are well equipped to prosecute this action on behalf of the putative classes. Proposed interim Lead Class Counsel and co-counsel are each self-funded firms, capable of advancing the costs of litigation, and do not rely on third party financing. Proposed interim Class Counsel will commit all necessary resources to this litigation and will vigorously represent the interests of the proposed classes.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 23 day of September 2024.

/s/ *Alexandra J. Calton*
Alexandra J. Calton (CAL089)
**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone: (205) 575-8000
Facsimile: (205) 278-1454
acalton@degarislaw.com

# Alexandra J. Calton

**acalton@degarislaw.com | (334) 695-1785**

**EXPERIENCE**

2022 – PRESENT

**ATTORNEY,** DEGARIS LAW LLC
BIRMINGHAM, ALABAMA
Trial practice focused on personal injury, wrongful death, and complex litigation including defective medical devices, product liability, environmental torts, and pharmaceutical drug litigation.

**EDUCATION**

CUMBERLAND SCHOOL OF LAW
**2021**
**JURIS DOCTOR**
BIRMINGHAM, ALABAMA
Dean's List
Cumberland Sports Law Society, *Treasurer*
Cumberland Public Interest and Community Service Society
Women in Law Society

THE UNIVERSITY OF ALABAMA
**2018**
**BACHELOR OF ARTS – POLITICAL SCIENCE**
TUSCALOOSA, ALABAMA
President's List

**MEMBERSHIPS**

**BAR ADMISSIONS**

ALABAMA, 2021
NEW JERSEY, 2024

**COURT ADMISSIONS**

ALABAMA SUPREME COURT
Admitted, 2021

UNITED STATES DISTRICT COURTS
**Northern, Middle, and Southern District of Alabama**
Admitted

UNITED STATES DISTRICT COURT
**Southern District of New York**
**ADMITTED, PRO HAC, 2022**

UNITED STATES DISTRICT COURT

4

**District of Massachusetts**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Southern District of Ohio**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Southern District of Illinois**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Northern District of Illinois**
Admitted, Pro Hac, 2022

UNITED STATES DISTRICT COURT
**Northern District of California**
Admitted, Pro Hac, 2022

**LEGAL/PROFESSIONAL ASSOCIATIONS**

NATIONAL TRIAL LAWYERS

AMERICAN ASSOCIATION FOR JUSTICE
New Lawyers Division, Publications Committee 2023
New Lawyers Division, Professional Development Committee 2023

ALABAMA BAR ASSOCIATION

ALABAMA ASSOCIATION OF JUSTICE

SOUTHERN TRIAL LAWYERS ASSOCIATION

THIRD CIRCUIT BAR ASSOCIATION

**HONORS**

THE NATIONAL TRIAL LAWYERS TOP 40 UNDER 40
2022, 2023, 2024

BEST LAWYERS: ONES TO WATCH IN AMERICA
2024, 2025 – Mass Tort Litigation/Class Action, Plaintiffs
2024, 2025 – Personal Injury Litigation, Plaintiffs

MARQUIS WHO'S WHO IN AMERICA
Admitted

NATIONAL ACADEMY OF PERSONAL INJURY ATTORNEYS TOP 10 UNDER 40
2024

CERTIFICATE OF RECOGNITION FROM GOVERNOR BOB RILEY
*Leadership and dedicated efforts towards a positive cultural change.*

5

ELECTRONICALLY FILED
9/23/2024 10:01 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION**

| | |
|---|---|
| CALTON LUCY, | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No.:    CV-2024-900054.00 |
| | ) |
| MEDICAL CENTER BARBOUR, | ) |
| MCBH, LLC, | ) |
| ALLIANT MANAGEMENT SERVICES, | ) |
| HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA ET AL, | ) |
| Defendants. | ) |

**Proposed ORDER GRANTING PLAINTIFFS'™ UNOPPOSED JOINT MOTION TO
CONSOLIDATE AND REQUEST TO APPOINT INTERIM LEADERSHIP**

The Court has reviewed Plaintiffs' Unopposed Joint Motion to Consolidate and Appoint Co-Lead Interim Counsel (the "Motion") submitted by Plaintiffs , as well as the accompanying exhibits, and has determined that consolidation and appointment of Interim Class Counsel in this proposed class action will promote judicial efficiency and orderly case management while avoiding unnecessary cost and delay.

Therefore, IT IS ORDERED that the Motions are GRANTED as set forth below:

1.    Pursuant to Alabama Rule of Civil Procedure 42(a), the Court hereby consolidates  (each a "Related Action" and together the "Consolidated Action").

2.    No further filings shall be made in the *Spann* action, which shall be administratively closed. All pleadings therein maintain their legal relevance until the filing of the Consolidated Complaint.

3.    This Order shall apply to any subsequently filed action alleging the same or substantially similar allegations.

4.      All papers previously filed and served to date in the Related Actions are deemed part of the record in the Consolidated Action.

5.      Defendant shall file a Notice of Related Case whenever a case that should be consolidated into this action is filed in, or transferred to, this Court. If any party objects to such consolidation or otherwise wishes to seek alternative relief, they shall do so within ten (10) calendar days. If the Court determines that the case is related, the clerk shall:

   a.      Place a copy of this Order in the separate docket for such action;

   b.      Serve on plaintiff's counsel in the new case a copy of this Order;

   c.      Direct this Order to be served upon any additional defendant(s) in the new case; and

   d.      Make the appropriate entry on the Master Docket.

6.      The Court shall enter a scheduling order for further pretrial proceedings as soon as is reasonably practicable.

7.      Plaintiffs in the Consolidated Action shall file an operative Consolidated Complaint within 30 days of the date of this Order. Defendant shall have 30 days from the date on which Plaintiffs file the Consolidated Complaint to file a response thereto. In the event that any Defendant's response is a motion to dismiss, Plaintiffs shall have 30 days to file their opposition brief, and that Defendant shall have 21 days to file a reply brief.

IT IS FURTHER ORDERED that, having given due consideration to the relevant factors set forth in The Manual For Complex Litigation, Fourth, (2004), and finding that the proposed counsel meet the adequacy requirements thereunder, Alexandra Calton of DeGaris Law, LLC is appointed interim Lead Counsel.

Interim Lead Counsel will be responsible for and have plenary authority to prosecute any and all claims of Plaintiffs and the putative class and to provide general supervision of the activities of Plaintiffs' counsel in the Consolidated Action.

It is the Court's intent that, as to all matters common to these coordinated cases, and to the fullest extent consistent with the independent fiduciary obligations owed by any and all Plaintiffs' counsel to their clients and any putative class, pretrial proceedings shall be conducted by and through Interim Co-Lead Class Counsel.

**IT IS FURTHER ORDERED** that the mere communication of otherwise privileged information among and between Plaintiffs' counsel shall not be deemed a waiver of the attorney-client privilege or the attorney work product immunity, as the Court recognizes that cooperation by and among counsel is essential for the orderly and expeditious resolution of this litigation.

**IT IS FURTHER ORDERED** that counsel for all parties are directed to cooperate with one another, wherever possible, to promote the expeditious handling of pre-trial proceedings in the Consolidated Action, and to conduct themselves in a manner consistent with the Local Rules of the Circuit Court of Sangamon County. It is hereby **ORDERED** that this Order shall apply to any action filed in, transferred to, or removed to this Court which relates to the subject matter at issue in this case.

**SO ORDERED**

**DONE this [To be filled by the Judge].**

/s/[To be filled by the Judge]
**CIRCUIT JUDGE**



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/4/2024

**D004 HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA**

**Corresponding To**

CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
     acalton@degarislaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/4/2024

**D004 HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA**
**Corresponding To**
CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

DOCUMENT 19

1. Article Addressed to:

Alliant Man. Serv.
2650 Eastpoint Pkwy
Ste 310
Louisville, KY 40223

9590 9402 8218 3030 6910 34

2. Article Number *(Transfer from service label)*

9589 0710 5270 0347 7144 76

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Julie M_           ☐ Agent
                       ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

Julie Musick

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053         Domestic Return Receipt

**USPS TRACKING #**

LOUISVILLE KY 400

9 SEP 2024 PM 1 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 8218 3030 6910 34

**United States
Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box*

Paige Smith
Barbour County Ci...
405 East Barbour ...
Suite 3, Room ...
Eufaula, AL ...





AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  DEGARIS ANNESLEY HODGES
adegaris@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/24/2024

**D003 ALLIANT MANAGEMENT SERVICES**
**Corresponding To**
CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
     acalton@degarislaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was served on 9/24/2024

**D003 ALLIANT MANAGEMENT SERVICES**
**Corresponding To**
CERTIFIED MAIL

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
10/2/2024 10:14 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

| **STATE OF ALABAMA** | | **Case No.** |
|---|---|---|
| Unified Judicial System | **Revised 3/5/08** | |
| 69-BARBOUR | ☐ District Court  ☑ Circuit Court | CV202490005400 |

69-CV-2024-900054.00

| LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL | **CIVIL MOTION COVER SHEET** |
|---|---|
| | *Name of Filing Party:* C001 - CALTON LUCY |

| *Name, Address, and Telephone No. of Attorney or Party. If Not Represented.* | ☐ Oral Arguments Requested |
|---|---|
| ALEXANDRA JOAN CALTON<br>2 North 20th Street Suite 1030<br>BIRMINGHAM, AL 35203<br>*Attorney Bar No.:* CAL089 | |

## TYPE OF MOTION

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Disburse Funds |
| ☐ Motion to Intervene ($297.00) | ☐ Extension of Time |
| ☐ Other _____ | ☐ In Limine |
| pursuant to Rule _____ ($50.00) | ☐ Joinder |
| | ☐ More Definite Statement |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.* | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| ☐ Local Court Costs $ 0 | ☐ Objection of Exemptions Claimed |
| | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☑ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐ | Date:<br>10/2/2024 10:08:11 AM | Signature of Attorney or Party<br>/s/ ALEXANDRA JOAN CALTON |
|---|---|---|

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
10/2/2024 10:14 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | |
|---|---|
| LUCY CALTON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>MEDICAL CENTER BARBOUR, MCBH, LLC, ALLIANT MANAGEMENT SERVICES, INC., THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA, and FICTITIOUS PARTY DEFENDANTS 1-27, et al.,<br><br>          Defendants. | Case No. 69-CV-2024-900054.00 |
| TERETHA SPANN and CHAKA FORD, individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>MCBH, LLC d/b/a MEDICAL CENTER BARBOUR, and THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA,<br><br>          Defendants. | Case No. 69-CV-2024-900056.00 |

## DECLARATION OF ALEXANDRA CALTON IN SUPPORT OF PLAINTIFFS' JOINT MOTION TO CONSOLIDATE CASES AND APPOINT CO-LEAD CLASS COUNSEL PURSUANT TO ALA. R. CIV. P. 23(D)(5)

1.      I am counsel for Plaintiff Lucy Calton. The below is based upon my personal knowledge, and if called as a witness, I could and would competently testify regarding the statements below.

1

2.      On September 23, 2024, my office filed a Joint Motion to Consolidate Cases and Appoint Lead Class Counsel (the "Joint Motion") on behalf of named plaintiffs Lucy Calton, Teretha Spann, and Chaka Ford (collectively, "Plaintiffs"). At the time such motion was filed, Plaintiffs' undersigned counsel were of the understanding that (A) David Ross, Esq. of law firm Wilson Elser Moskowitz Edelman & Dicker LLP would be representing all named defendants in the action and (B) Attorney Ross was not opposed to the Joint Motion. Based on that dual understanding, Plaintiffs through undersigned counsel filed the Joint Motion as "Unopposed."

3.      However, subsequent to the filing of the motion, Attorney Ross clarified that his only confirmed client at the present time is Medical Center Barbour ("MCB"), but he is currently in the process of determining which of the other named defendants, if any, he will be representing in this litigation. Attorney Ross has confirmed that as counsel for MCB, he does not oppose consolidation of the actions and takes no position on Plaintiffs' request to appoint interim class counsel.

4.      With Attorney Ross's representation of defendants other than MCB still uncertain as of the time of the filing of this declaration, the Joint Motion is not fully unopposed, since some named defendants remain unrepresented. Plaintiffs' counsel apologizes for mistaken designation of the Joint Motion as such.

I declare under penalty of perjury under the laws of Alabama that the foregoing is true and correct, and that this declaration was executed on October 2, 2024, in Jefferson County, Alabama.


Respectfully submitted,

*/s/ Alexandra J. Calton*
ALEXANDRA J. CALTON (CAL089)
ANNESLEY H. DEGARIS (DEG002)
Attorneys for the Plaintiff

2

OF COUNSEL:

**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone:     (205) 575-8000
Facsimile:     (205) 278-1454
Email:         acalton@degarislaw.com
               adegaris@degarislaw.com

### CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following via the United States Postal Service, first class postage prepaid, email, and/or the electronic ALAFILE system, on this 2nd day of October, 2024.

David Ross, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Telephone: (202) 626 7660
Facsimile: (202) 628-3606
david.ross@wilsonelser.com

Nickolas J. Hagman, Esq.
Daniel O. Herrera, Esq.
Mohammed A. Rathur, Esq.
Cafferty Clobes Meriwether & Sprengel LLP
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com
dherrera@caffertyclobes.com
mrathur@caffertyclobes.com

Daniel Srourian, Esq.
Srourian Law Firm, P.C.
3435 Wilshire Blvd. Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile:  (213) 471-4160
Email:  daniel@slfla.com

*/s/ Alexandra J. Calton*
OF COUNSEL

3



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALEXANDRA JOAN CALTON
     acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   MEDICAL CENTER BARBOUR (PRO SE)
      820 W WASHINGTON STREET
      EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:    10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MCBH, LLC (PRO SE)
641 S LAWRENCE STREET
MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:    10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



## AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:    10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/2/2024 10:14:12 AM

**C001 CALTON LUCY**

MOTION TO SUPPLEMENT TO PENDING MOTION

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:      10/2/2024 10:14:12 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
10/8/2024 12:12 PM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | |
|---|---|
| CALTON LUCY,<br>Plaintiff, | )<br>)<br>) |
| V. | ) Case No.:   CV-2024-900054.00 |
| | ) |
| MEDICAL CENTER BARBOUR,<br>MCBH, LLC,<br>ALLIANT MANAGEMENT SERVICES,<br>HEALTH CARE AUTHORITY FOR THE<br>CITY OF EUFAULA ET AL,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter is set for a scheduling conference before Honorable Burt Smithart on October 17, 2024. In lieu of a court appearance, the parties may jointly file their positions is writing as to setting this case for trial on February 18, 2025 or continuing this matter to the next civil term of August 2025.

**DONE this 8th day of October, 2024.**

**/s/ BURT  SMITHART**
**CIRCUIT JUDGE**



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:      10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:      10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MEDICAL CENTER BARBOUR (PRO SE)
820 W WASHINGTON STREET
EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:      10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:     10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:     10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/8/2024 12:12:51 PM

Notice Date:     10/8/2024 12:12:51 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
10/9/2024 1:52 PM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**EUFAULA DIVISION**

CALTON LUCY,                                      )
Plaintiff,                                        )
                                                  )
V.                                                )   Case No.:        CV-2024-900054.00
                                                  )
MEDICAL CENTER BARBOUR,                           )
MCBH, LLC,                                        )
ALLIANT MANAGEMENT SERVICES,                      )
HEALTH CARE AUTHORITY FOR THE                     )
CITY OF EUFAULA ET AL,                            )
Defendants.                                       )

**ORDER GRANTING PLAINTIFFS' UNOPPOSED JOINT MOTION TO**
**CONSOLIDATE AND REQUEST TO APPOINT INTERIM LEADERSHIP**

The Court has reviewed Plaintiffs' Unopposed Joint Motion to Consolidate and Appoint Co-Lead Interim Counsel (the "Motion") submitted by Plaintiffs , as well as the accompanying exhibits, and has determined that consolidation and appointment of Interim Class Counsel in this proposed class action will promote judicial efficiency and orderly case management while avoiding unnecessary cost and delay.

Therefore, IT IS ORDERED that the Motions are GRANTED as set forth below:

1.      Pursuant to Alabama Rule of Civil Procedure 42(a), the Court hereby consolidates  (each a "Related Action" and together the "Consolidated Action").

2.      No further filings shall be made in the *Spann* action, which shall be administratively closed. All pleadings therein maintain their legal relevance until the filing of the Consolidated Complaint.

3.      This Order shall apply to any subsequently filed action alleging the same or substantially similar allegations.

4.      All papers previously filed and served to date in the Related Actions are deemed part of the record in the Consolidated Action.

5.      Defendant shall file a Notice of Related Case whenever a case that should be consolidated into this action is filed in, or transferred to, this Court. If any party objects to such consolidation or otherwise wishes to seek alternative relief, they shall do so within ten (10) calendar days. If the Court determines that the case is related, the clerk shall:

a.      Place a copy of this Order in the separate docket for such action;

b.      Serve on plaintiff's counsel in the new case a copy of this Order;

c.      Direct this Order to be served upon any additional defendant(s) in the new case; and

d.      Make the appropriate entry on the Master Docket.

6.      The Court shall enter a scheduling order for further pretrial proceedings as soon as is reasonably practicable.

7.      Plaintiffs in the Consolidated Action shall file an operative Consolidated Complaint within 30 days of the date of this Order. Defendant shall have 30 days from the date on which Plaintiffs file the Consolidated Complaint to file a response thereto. In the event that any Defendant's response is a motion to dismiss, Plaintiffs shall have 30 days to file their opposition brief, and that Defendant shall have 21 days to file a reply brief.

IT IS FURTHER ORDERED that, having given due consideration to the relevant factors set forth in The Manual For Complex Litigation, Fourth, (2004), and finding that the proposed counsel meet the adequacy requirements thereunder, Alexandra Calton of DeGaris Law, LLC is appointed interim Lead Counsel.

Interim Lead Counsel will be responsible for and have plenary authority to prosecute any and all claims of Plaintiffs and the putative class and to provide general supervision of the activities of Plaintiffs' counsel in the Consolidated Action.

It is the Court's intent that, as to all matters common to these coordinated cases,

and to the fullest extent consistent with the independent fiduciary obligations owed by any and all Plaintiffs' counsel to their clients and any putative class, pretrial proceedings shall be conducted by and through Interim Co-Lead Class Counsel.

**IT IS FURTHER ORDERED** that the mere communication of otherwise privileged information among and between Plaintiffs' counsel shall not be deemed a waiver of the attorney-client privilege or the attorney work product immunity, as the Court recognizes that cooperation by and among counsel is essential for the orderly and expeditious resolution of this litigation.

**IT IS FURTHER ORDERED** that counsel for all parties are directed to cooperate with one another, wherever possible, to promote the expeditious handling of pre-trial proceedings in the Consolidated Action, and to conduct themselves in a manner consistent with the Local Rules of the Circuit Court of Sangamon County. It is hereby **ORDERED** that this Order shall apply to any action filed in, transferred to, or removed to this Court which relates to the subject matter at issue in this case.

**SO ORDERED**

**DONE this 9th day of October, 2024.**

**/s/ BURT  SMITHART**
**CIRCUIT JUDGE**



## AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

Disposition:      GRANTED
Judge:            LBS

Notice Date:      10/9/2024 1:52:02 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
acalton@degarislaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

| | |
|---|---|
| Disposition: | GRANTED |
| Judge: | LBS |
| Notice Date: | 10/9/2024 1:52:02 PM |

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   MEDICAL CENTER BARBOUR (PRO SE)
      820 W WASHINGTON STREET
      EUFAULA, AL, 36027-0000

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

Disposition:      GRANTED
Judge:            LBS

Notice Date:      10/9/2024 1:52:02 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          LBS

Notice Date:    10/9/2024 1:52:02 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   ALLIANT MANAGEMENT SERVICES (PRO SE)
      2650 EASTPOINT PARKWAY
      SUITE 310
      LOUISVILLE, KY, 40223-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          LBS

Notice Date:    10/9/2024 1:52:02 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/9/2024 1:52:02 PM

ORDER

[Filer: ]

Disposition:     GRANTED
Judge:           LBS

Notice Date:     10/9/2024 1:52:02 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

Case 2:24-cv-00787-RAH-KFP    Document 1-2    Filed 12/06/24    Page 139 of 306

ELECTRONICALLY FILED
10/16/2024 10:40 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**STATE OF ALABAMA**    Revised 3/5/08    **Case No.**

Unified Judicial System

69-BARBOUR    ☐ District Court  ☑ Circuit Court    CV20249000054.00    69-CV-2024-900054.00

| | |
|---|---|
| LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL | **CIVIL MOTION COVER SHEET** |
| | *Name of Filing Party:*C001 - CALTON LUCY |

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*

ALEXANDRA JOAN CALTON

2 North 20th Street Suite 1030

BIRMINGHAM, AL 35203

*Attorney Bar No.:* CAL089

☐ Oral Arguments Requested

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☑ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Disburse Funds |
| ☐ Motion to Intervene ($297.00) | ☐ Extension of Time |
| ☐ Other _____ | ☐ In Limine |
| pursuant to Rule _____ ($50.00) | ☐ Joinder |
| | ☐ More Definite Statement |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| ☐ Local Court Costs $  0 | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☐ Other _____ |
| | pursuant to Rule _____ (Subject to Filing Fee) |

| | | |
|---|---|---|
| Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees)  ☐ | Date:<br><br>10/16/2024 10:39:04 AM | Signature of Attorney or Party<br>/s/ ALEXANDRA JOAN CALTON |

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
10/16/2024 10:40 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**EUFAULA DIVISION**

| | |
|---|---|
| LUCY CALTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 69-CV-2024-900054.00 |
| v. | |
| MEDICAL CENTER BARBOUR, MCBH, LLC, ALLIANT MANAGEMENT SERVICES, INC., THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA, and FICTITIOUS PARTY DEFENDANTS 1-27, et al., | |
| Defendants. | |

**UNOPPOSED MOTION TO CONTINUE**
**OCTOBER 17, 2024 STATUS CONFERENCE**

COME NOW all Parties who have appeared in this action, by and through their undersigned counsel, and pursuant to the Court's Order of October 8, 2024, respectfully request the Court enter an Order passing this case and continuing this matter to the next civil term of August 2025. Counsel for Plaintiffs have spoken with counsel for the remaining parties who have affirmed that they do not oppose this motion to continue. The consolidated action will proceed after Plaintiffs file a Consolidated Complaint, but the case is not currently ready for trial. The Parties are also informed that another case has been filed involving the same underlying cyber incident, *Conklin v. Medical Center Barbour*, Case No. 69-CV-2024-900064.00. Pursuant to the Court's October 9, 2024 Order Granting Plaintiff's Unopposed Joint Motion to Consolidate and Request to Appoint Interim Leadership, Defendants will file a Notice of Related Case because the *Conklin* case should be consolidated into this action.

1

Respectfully submitted,

*/s/ Alexandra J. Calton*
ALEXANDRA J. CALTON (CAL089)
Attorney for the Plaintiffs

OF COUNSEL:

**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone:     (205) 575-8000
Facsimile:     (205) 278-1454
Email:         acalton@degarislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following via the United States Postal Service, first class postage prepaid, email, and/or the electronic ALAFILE system, on this 16th day of October, 2024.

| | |
|---|---|
| David Ross, Esq. | Nickolas J. Hagman, Esq. |
| Wilson Elser Moskowitz Edelman & Dicker LLP | Daniel O. Herrera, Esq. |
| 1500 K Street, NW, Suite 330 | Mohammed A. Rathur, Esq. |
| Washington, D.C. 20005 | Cafferty Clobes Meriwether & Sprengel LLP |
| Telephone: (202) 626 7660 | 135 S. LaSalle, Suite 3210 |
| Facsimile: (202) 628-3606 | Chicago, Illinois 60603 |
| david.ross@wilsonelser.com | Telephone: (312) 782-4880 |
| | Facsimile: (312) 782-4485 |
| | nhagman@caffertyclobes.com |
| | dherrera@caffertyclobes.com |
| | mrathur@caffertyclobes.com |
| | |
| Daniel Srourian, Esq. | |
| Srourian Law Firm, P.C. | Angel A. Croes, Esq. |
| 3435 Wilshire Blvd. Suite 1710 | Carr Allison, P.C. |
| Los Angeles, California 90010 | 100 Vestavia Parkway |
| Telephone: (213) 474-3800 | Birmingham, AL 35216 |
| Facsimile:  (213) 471-4160 | Telephone: (205) 822-2006 |
| daniel@slfla.com | Facsimile: (205) 822-2057 |
| | acroes@carrallison.com |

*/s/ Alexandra J. Calton*
OF COUNSEL

2



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   ALEXANDRA JOAN CALTON
      acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:    10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MEDICAL CENTER BARBOUR (PRO SE)
820 W WASHINGTON STREET
EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:     10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter was FILED on 10/16/2024 10:40:24 AM

**C001 CALTON LUCY**

MOTION TO CONTINUE

[Filer: CALTON ALEXANDRA JOAN]

Notice Date:    10/16/2024 10:40:24 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
10/16/2024 2:45 PM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**EUFAULA DIVISION**

| | | |
|---|---|---|
| CALTON LUCY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No.:    CV-2024-900054.00 |
| | ) | |
| MEDICAL CENTER BARBOUR, | ) | |
| MCBH, LLC, | ) | |
| ALLIANT MANAGEMENT SERVICES, | ) | |
| HEALTH CARE AUTHORITY FOR THE | ) | |
| CITY OF EUFAULA ET AL, | ) | |
| Defendants. | ) | |

**ORDER**

MOTION TO CONTINUE filed by CALTON LUCY is hereby GRANTED.  Trial of this case is hereby set for the August 2025 term of Court.

**DONE this 16ᵗʰ day of October, 2024.**

**/s/ BURT  SMITHART**
_____
**CIRCUIT JUDGE**



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER
[Filer: ]

Disposition:     GRANTED
Judge:           LBS

Notice Date:     10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  CALTON ALEXANDRA JOAN
acalton@degarislaw.com

---

# NOTICE OF COURT ACTION

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          LBS

Notice Date:    10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To: MEDICAL CENTER BARBOUR (PRO SE)
820 W WASHINGTON STREET
EUFAULA, AL, 36027-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER

[Filer: ]

Disposition:     GRANTED
Judge:           LBS

Notice Date:     10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   MCBH, LLC (PRO SE)
      641 S LAWRENCE STREET
      MONTGOMERY, AL, 36104-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER

[Filer: ]

Disposition:     GRANTED
Judge:           LBS

Notice Date:     10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



**AlaFile E-Notice**

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          LBS

Notice Date:    10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

A court action was entered in the above case on 10/16/2024 2:45:45 PM

ORDER

[Filer: ]

Disposition:      GRANTED
Judge:            LBS

Notice Date:      10/16/2024 2:45:45 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

DOCUMENT 33

ELECTRONICALLY FILED
10/31/2024 10:49 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

# IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION

| | | |
|---|---|---|
| **LUCY CALTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** |
| | ) | **1-CV-2024-900054.00** |
| **MEDICAL CENTER OF BARBOUR,** | ) | |
| **MCBH, LLC, ALLIANT** | ) | |
| **MANAGEMENT SERVICES, HEALTH** | ) | |
| **CARE AUTHORITY FOR THE CITY** | ) | |
| **OF EUFAULA,** | ) | |
| | ) | |
| **Defendants.** | | |

## NOTICE OF APPEARANCE

COMES NOW, Richard P. Rouco of the firm Quinn, Connor, Weaver, Davies and Rouco, LLP, and enters his appearance as counsel of record for Plaintiffs in the above referenced case.

/s/ *Richard P. Rouco*
Richard P. Rouco

OF COUNSEL:
QUINN, CONNOR, WEAVER
 DAVIES and ROUCO, LLP
2 – 20th Street North, Suite 930
Birmingham, AL  35203
(205) 870-9989
rrouco@qcwdr.com

## **CERTIFICATE OF SERVICE**

I certify that on October 31, 2024, I electronically filed the foregoing with the Clerk of Court using the AlaFile system, which will send notification of such filing to all counsel of record.

/s/ *Richard P. Rouco*
Richard P. Rouco



AlaFile E-Notice

69-CV-2024-900054.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:      10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MEDICAL CENTER BARBOUR (PRO SE)
820 W WASHINGTON STREET
EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:      10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:     10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:     10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:        10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:     10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   CALTON ALEXANDRA JOAN
      acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following NOTICE OF APPEARANCE was FILED on 10/31/2024 10:49:50 AM

Notice Date:       10/31/2024 10:49:50 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

ELECTRONICALLY FILED
1/8/2024 10:36 AM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**EUFALA DIVISION**

| | |
|---|---|
| LUCY CALTON, TERETHA SPANN and CHAKA FORD, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 69-CV-2024-900054.00 |
| v. | |
| MCBH, LLC d/b/a MEDICAL CENTER BARBOUR, ALLIANT MANAGEMENT SERVICES, INC., and THE HEALTH CARE AUTHORITY OF THE CITY OF EUFAULA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Lucy Calton, Teretha Spann and Chaka Ford ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against MCBH, LLC d/b/a Medical Center Barbour, Alliant Management Services, Inc., and The Health Care Authority of the City of Eufaula (collectively, "MCB" or "Defendants"). Plaintiffs bring this action by and through their attorneys, and allege, based on personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

## I.    INTRODUCTION

1.    MCB is a 74-bed hospital located in Eufaula, Alabama providing laboratory, radiology, emergency care, senior behavior health, surgery, inpatient, family care, and wound care services.[1]

---

[1] *See* https://www.medctrbarbour.org/mcb-hospital-services (last accessed August 29, 2024).

2.      As part of their operations, MCB collects, maintains, and stores highly sensitive personal and medical information belonging to their patients, including, but not limited to their full names, Social Security numbers, dates of birth, addresses, driver's license or state ID numbers, passport information (collectively, "personally identifying information" or "PII"), medical and treatment information, billing and claims information and health insurance information ("private health information" or "PHI"), as well as financial account information and/or credit and debit card information (collectively, with PII and PHI, "Private Information").

3.      On October 29, 2023, MCB experienced a data breach incident in which unauthorized cybercriminals accessed MCB's information systems and databases and stole Private Information belonging to Plaintiffs and Class members (the "Data Breach").

4.      On August 22, 2024, ten (10) months after discovery the Data Breach, MCB sent a notice to individuals whose information was accessed in the Data Breach.

5.      Because MCB stored and handled current and former patients' and employees' highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

6.      Ultimately, MCB failed to fulfill this obligation, as unauthorized cybercriminals breached MCB's information systems and databases and stole vast quantities of Private Information belonging to MCB's patients, including Plaintiffs and Class members. The Data Breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of MCB.

7.      The Data Breach occurred because MCB failed to implement reasonable security protections to safeguard their information systems and databases. Moreover, before the Data Breach occurred, MCB failed to inform the public that their data security practices were deficient

2

and inadequate. Had Plaintiffs and Class members been made aware of this fact, they would have never provided such information to MCB.

8.      MCB's subsequent handling of the Data Breach was also deficient.

9.      MCB's meager attempt to ameliorate the effects of this data breach with one year of complimentary credit monitoring is woefully inadequate. Much of the Private Information that was stolen is immutable and victims will face of a life-long heightened risk of identity theft.

10.     As a result of MCB's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy their contractual, statutory, and common-law obligations, Plaintiffs and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their Private Information.

11.     Accordingly, Plaintiffs bring this action on behalf of themselves and all those similarly situated to seek relief for the consequences of Defendants' failure to reasonably safeguard Plaintiffs' and Class members' Private Information; their failure to reasonably provide timely

notification to Plaintiffs and Class members that their Private Information had been compromised; and for Defendants' failure to inform Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    PARTIES

### Plaintiff Lucy Calton

12.    Plaintiff Calton is a resident and citizen of Eufaula, Alabama. Plaintiff Calton was a patient at MCB. Plaintiff Calton received Defendants' Data Breach Notice.

### Plaintiff Teretha Spann

13.    Plaintiff Spann is a resident and citizen of Clayton, Alabama. Plaintiff Spann was a patient at MCB. Plaintiff Spann received Defendants' Data Breach Notice.

### Plaintiff Chaka Ford

14.    Plaintiff Ford is a resident and citizen of Midway, Alabama. Plaintiff Ford was a patient at MCB. Plaintiff Ford received Defendants' Data Breach Notice.

### Defendant MCBH, LLC d/b/a Medical Center Barbour

15.    Defendant MCBH, LLC is a foreign limited liability company with its principal address located at 6300 Wilshire Boulevard, Suite 1800, Los Angeles, California 90048. Defendant conducts business in Barbour County, Alabama. Defendant operates the Medical Center Barbour Hospital under the name Medical Center Barbour. At all times material to this complaint, Defendant MCBH, LLC employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with Medical Center Barbour, Alliant Management Services, Inc., and The Health Care Authority of the City of Eufaula.

### Defendant Alliant Management Services, Inc.

16.    Defendant Alliant Management Services, Inc. is a foreign limited liability company that does business in Barbour County, Alabama. At all times material to this complaint, Defendant

4

Alliant Management Services, Inc. employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with MCBH, LLC, Medical Center Barbour, and The Health Care Authority of the City of Eufaula.

**Defendant Healthcare Authority of the City of Eufaula**

17.    Defendant Healthcare Authority of the City of Eufaula is an Alabama corporation with its principal address located at 205 East Barbour Street, Eufaula, Alabama 36072. At all times material to this complaint, Defendant Health Care Authority of the City of Eufaula employed, represented, administered, controlled, managed, contracted with, was a subsidiary of, was the principal of, or was affiliated with Medical Center Barbour, MCBH, LLC, and Alliant Management Services, Inc.

### III.    JURISDICTION AND VENUE

18.    Jurisdiction is proper in Alabama because, at all relevant times, Defendants conducted (and continue to conduct) business in Alabama, each Plaintiff received health services and contracted with MCB to safeguard their Private Information in Alabama, Plaintiffs' Private Information was stored on MCB's computer networks, systems and/or servers in Alabama, many of MCB's wrongful acts and omissions took place in Alabama, Defendants' principal places of business are in Alabama, and MCB's limited liability company members are Alabama corporations, entities, or citizens.

19.    Venue is proper in Barbour County, Alabama pursuant to Ala. Code § 6-3-2 and § 6-3-7(a) and (b) because, at all relevant times, Plaintiffs are residents of Barbour County, Alabama, Plaintiffs' received health services and contracted with Defendants to safeguard their Private Information in Barbour County, Defendants' principle places of business are in Barbour County, a substantial part of the events or omissions giving rise to Plaintiffs' and Class members'

claims occurred in Barbour County and MCB's limited liability company members include domestic corporations or resident citizens.

## IV.     FACTUAL ALLEGATIONS

### A.     MCB – Background

20.     MCB is a 74-bed hospital located in Eufaula, Alabama providing laboratory, radiology, emergency care, senior behavior health, surgery, inpatient, family care, and wound care services located in Eufaula, Alabama.[2] As part of their normal operations, MCB collects, maintains, and stores large volumes of Private Information belonging to their current and former patients.

21.     As a condition of engaging in health services, MCB requires its patients provide and entrust to it their highly sensitive and confidential personal information, including their Private Information.

22.      MCB failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of MCB's current and former patients—Plaintiffs and Class members.

23.     Current and former patients of MCB, such as Plaintiffs and Class members, made their Private Information available to MCB with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

24.     This expectation was objectively reasonable and based on an obligation imposed on MCB by statute, regulations, industrial custom, and standards of general due care.

---

[2] *See* https://www.medctrbarbour.org/mcb-hospital-services (last accessed August 29, 2024).

25.    Unfortunately for Plaintiffs and Class members, MCB failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiffs and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.    The Data Breach**

26.    According to Defendants' public statements, cybercriminals breached MCB's information systems on or before October 29, 2023 (the "Data Breach"). MCB discovered the unauthorized intrusion on or about October 29, 2023, and began an investigation into the extent of the breach.

27.    On December 8, 2023, MCB concluded the investigation and determined that the unauthorized actors were able to access and acquire Private Information concerning Defendants' current and former patients, including Plaintiffs and Class members

28.    On August 22, 2024—***10 months*** after Defendants discovered the Data Breach— MCB finally sent notice of the Data Breach to all individuals affected by this data security incident.

29.    MCB estimates that the Private Information belonging to at least 61,014 individuals was compromised in the Data Breach.[3]

30.    Omitted from the notice were the date that the cybercriminal first obtained access to Defendants' systems, the length of time the cybercriminals had access to Defendants' systems, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class members, who retain a vested interest in ensuring that their Private Information remains protected.

---

[3] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/dd0e1242-6b33-43be-bcc2-3cdc38fe7b3b.html (last accessed August 29, 2024).

31.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

32.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiffs and Class members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

33.     Plaintiffs further believe that their Private Information and that of Class members was or will be sold on the dark web, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

34.     The Data Breach notice letters that Defendants sent to victims of the Data Breach direct the recipient to take actions to protect their identities and accounts. The notice letter states: "we encourage you to remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious or unauthorized activity." The letter then listed several additional "steps" that victims of the Data Breach could take to help protect themselves including, enrolling in credit monitoring, monitoring accounts, placing fraud alerts with credit reporting bureaus, placing freezes on credit reports, contacting FTC and state Attorneys General, and obtaining information about identity theft and fraud.

**C.      MCB's Many Failures Both Prior to and Following the Breach**

35.     Defendants collect and maintain vast quantities of Private Information belonging to Plaintiffs and Class members as part of their normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendants.

8

36.    Firstly, Defendants inexcusably failed to implement reasonable security protections to safeguard their information systems and databases.

37.    Secondly, Defendants failed to inform the public that their data security practices were deficient and inadequate. Had Plaintiffs and Class members been aware that Defendants did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendants.

38.    In addition to the failures that lead to the successful breach, Defendants' failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiffs and Class members.

39.    Defendants' delay in informing victims of the Data Breach that their Private Information was compromised virtually ensured that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before the Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

40.    Additionally, Defendants' attempt to ameliorate the effects of the Data Breach with limited complimentary credit monitoring is woefully inadequate. Plaintiffs' and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as healthcare data, is immutable.

41.     In short, Defendants' myriad failures, including the failure to timely detect an intrusion, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiffs' and Class members' Private Information for almost an entire ten (10) months before Defendants finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near and long-term consequences of the Data Breach.

## D.     Data Breaches Pose Significant Threats

42.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

43.     In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[4] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[5]

44.     Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[6] The

---

[4] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.
[5] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/.
[6] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/.

number of impacted individuals has also risen precipitously from approximately 318 million in

2015 to 422 million in 2022, which is an increase of nearly 50%.[7]



45.     Citizens of Alabama, like members of the proposed Class, have suffered

particularly severe losses from cybercrimes lately. A recent news article explained:

> According to the latest data on internet crimes compiled by the Federal
> Bureau of Investigations, Alabama saw the single-highest average losses to
> cybercrime per victim in 2022. Research on the data published Friday by
> the online security company VPNpro found that *victims of cybercrimes in
> Alabama lost, on average, $50,670 in 2022*. A total of 4,893 victims were
> reported in Alabama that year for a combined loss of nearly $248,000,000.[8]

---

[7] *Id.*

[8] *See* https://aldailynews.com/alabamians-see-highest-losses-to-cybercrime-in-nation-new-research-finds/
(last accessed Nov. 28, 2023) (emphasis added).

46.     This stolen PII is then routinely traded on dark web black markets as a simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[9]

47.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[10]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[11]

---

[9] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/.
[10] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.
[11] *Id.*

48.     The most sought after and expensive information on the dark web are stolen medical records which command prices from $250 to $1,000 each.[12] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and Social Security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information."[13] With this bounty of ill-gotten information, cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[14] Cybercriminals can also change the victims' medical records, which can lead to misdiagnosis or mistreatment when the victims seek medical treatment.[15] Victims of medical identity theft could even face prosecution for drug offenses when cybercriminals use their stolen information to purchase prescriptions for sale in the drug trade.[16]

49.     The wrongful use of compromised medical information is known as medical identity theft and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's

---

[12] Paul Nadrag, Capsule Technologies*, Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web.
[13] *Id.*
[14] *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare. *See also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016), available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/.
[15] *Id.*
[16] *Id.*

liability for fraudulent credit card charges is capped at $50).[17] It is also "considerably harder" to reverse the damage from the aforementioned consequences of medical identity theft.[18]

50.    Instances of Medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[19]

51.    In light of the dozens of high-profile health and medical information data breaches that have been reported in recent years, entities like Defendants charged with maintaining and securing patient PII should know the importance of protecting that information from unauthorized disclosure. Indeed, Defendants knew, or certainly should have known, of the recent and high-profile data breaches in the health care industry: UnityPoint Health, Lifetime Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[20]

52.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendants on notice of their obligation to safeguard customer and patient information.[21]

---

[17] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.
[18] *Id.*
[19] *Id.*
[20] *See, e.g.*, *Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics.
[21] *See, e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

53.     Given the nature of Defendants' Data Breach, as well as the length of the time Defendants' networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in their names.

54.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[22] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

55.     To date, Defendants has offered their consumers only limited identity theft monitoring services. The services offered are inadequate to protect Plaintiffs and Class members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

56.     Despite the prevalence of public announcements of data breach and data security compromises, their own acknowledgment of the risks posed by data breaches, and their own acknowledgment of their duties to keep Private Information private and secure, Defendants failed to take appropriate steps to protect the Private Information of Plaintiffs and Class members from misappropriation. As a result, the injuries to Plaintiffs and Class members were directly and

---

[22] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

proximately caused by Defendants' failure to implement or maintain adequate data security measures for their current and former patients.

**E.     MCB Had a Duty and Obligation to Protect Private Information**

57.     Defendants have an obligation to protect the Private Information belonging to Plaintiffs and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII and medical records. Plaintiffs and Class members provided, and Defendants obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.     HIPAA Requirements and Violation**

58.     HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

59.     HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology. . . ." 45 CFR § 164.402.

60.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires entities to provide notice of a data breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***" (emphasis added).

16

61.    Defendants failed to implement and/or maintain procedures, systems, and safeguards to protect the Private Information belonging to Plaintiffs and Class members from unauthorized access and disclosure.

62.    Upon information and belief, Defendants' security failures include, but are not limited to:

a.    Failing to maintain an adequate data security system to prevent data loss;

b.    Failing to mitigate the risks of a data breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendants creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.    Failing to identify and respond to suspected or known security incidents;

g.    Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.    Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.    Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR 164.306(a)(94); and

k. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

63. Upon information and belief, Defendants also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

### 2. FTC Act Requirements and Violations

64. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

65. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[23] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[24] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts

---

[23] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[24] *Id.*

of data being transmitted from the system; and have a response plan ready in the event of a breach.[25] Defendants clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data accessed.

66.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

67.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

68.    Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

69.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

70.    Defendants were fully aware of their obligation to protect the Private Information of their current and former patients, including Plaintiffs and Class members. Defendants are

---

[25] *Id.*

sophisticated and technologically savvy businesses that rely extensively on technology systems and networks to maintain their practice, including storing their patients' PII, protected health information, and medical information in order to operate their business.

71.    Defendants have and continue to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendants and Plaintiffs and Class members. Defendants alone had the exclusive ability to implement adequate security measures to their cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

### 3.    Industry Standards and Noncompliance

72.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

73.    Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendants, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

74.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training

staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

75.     Defendants should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**4.     Defendants' Own Stated Policies and Promises**

76.     Defendants' own published privacy policy states that MCB is:

> required by law to maintain the privacy of your health information. We are also required to provide you with this notice, which explains how we may use information about you and when we can give out or "disclose" that information to others. You also have rights regarding your health information that are described in this notice. We are required by law to abide by the terms of this notice. The effective date of this notice was April 14, 2003, and has been revised effective February 4, 2021. The terms "information," "health information" or "medical information" or "PHI" in this notice include any information that we maintain that reasonably can be used to identify you and that relates to your physical or mental health conditions, the provision of health care to you or payment for your health care.[26]

77.     Defendants thereby incorporated various statutory duties as self-imposed obligations.

78.     Further, MCB acknowledges that "medical information about [its patients'] health is personal" and MCB promises patients that they "are committed to protecting medical information about you."[27] MCB further promises to "[m]ake sure medical information that identifies [patients] is kept private."

---

[26] https://www.medctrbarbour.org/privacy-notice
[27] *Id.*

79.      Defendants failed to live up to their own stated policies and promises with regards to data privacy and data security as cybercriminals were able to infiltrate their systems and steal the Private Information belonging to Plaintiffs and Class members.

## F.      Plaintiffs and the Class Suffered Harm Resulting from the Data Breach

80.      Like any data hack, the Data Breach presents major problems for all affected.[28]

81.      The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[29]

82.      The ramifications of Defendants' failure to properly secure Plaintiffs' and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

83.      According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

84.      Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

85.      Accordingly, Defendants' wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing

---

[28] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[29] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[30] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[31]

86.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

87.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[32] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[33]

88.     The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[34] Medical Identity Theft is especially

---

[30] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.
[31] *Id.*
[32] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.
[33] *Id.*
[34] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.

troublesome for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (e.g., a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[35]

89.    In response to the Data Breach, Defendants offered to provide certain individuals whose Private Information was exposed in the Data Breach with two years of credit monitoring. However, this is inadequate to protect victims of the Data Breach from the lifelong risk of harm as a result of Defendants' multiple failures.

90.    Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

   a.    Theft of Private Information;

   b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

   c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

   d.    Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendants' delay in disseminating notice in accordance with state law;

---

[35] *Id.*

e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.    The loss of Plaintiffs' and Class members' privacy.

91.    Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within the limited time of credit monitoring offered by Defendants.

92.    As a direct and proximate result of Defendants' acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

93.    Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    EXPERIENCES SPECIFIC TO PLAINTIFFS

### *Plaintiff Lucy Calton*

94.    Plaintiff Calton was a patient of MCB. As a condition of receiving services, Plaintiff Calton was required to provide Defendants with her Private Information. When providing her Private Information, Plaintiff Calton reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

95.    On or about September 15, 2024, Plaintiff Calton received notice from defendants that her Private Information had been improperly accessed and obtained by third parties.

96.    Plaintiff Calton is very careful about sharing her sensitive information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has

never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. To her knowledge, neither her PII or PHI has ever been exposed in any other data breach.

97.    Because of the Data Breach, Plaintiff Calton's Private Information is now in the hands of cybercriminals.

98.    After the Data Breach, Plaintiff Calton has noticed a dramatic increase in spam phone calls, emails, and text messages.

99.    As a result of the Data Breach, Plaintiff Calton has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Calton has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

100.    As a result of the Data Breach, Plaintiff Calton has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Calton is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

101.    Plaintiff Calton suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendants obtained

from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

102.    As a result of the Data Breach, Plaintiff Calton anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come

***Plaintiff Teretha Spann***

103.    Plaintiff Spann was a patient of MCB. As a condition of receiving services from MCB, Plaintiff Spann was required to provide Defendants with her Private Information. When providing her Private Information, Plaintiff Spann reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

104.    Plaintiff Spann received MCB's Data Breach notice. The notice informed Plaintiff Spann that her Private Information was improperly accessed and obtained by third parties.

105.    Plaintiff Spann is very careful about sharing her sensitive information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. To her knowledge, neither her PII or PHI has ever been exposed in any other data breach.

106.    Because of the Data Breach, Plaintiff Spann's Private Information is now in the hands of cybercriminals.

107.    After the Data Breach, Plaintiff Spann has noticed a dramatic increase in spam phone calls, emails, and text messages.

108.   As a result of the Data Breach, Plaintiff Spann has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Spann has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

109.   As a result of the Data Breach, Plaintiff Spann has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Spann is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

110.   Plaintiff Spann suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

111.   As a result of the Data Breach, Plaintiff Spann anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### *Plaintiff Chaka Ford*

112.     Plaintiff Ford was a patient of MCB. As a condition of receiving services from MCB, Plaintiff Ford was required to provide Defendants with her Private Information. When providing her Private Information, Plaintiff Ford reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

113.     Plaintiff Ford received MCB's Data Breach notice. The notice informed Plaintiff Ford that her Private Information was improperly accessed and obtained by third parties.

114.     Plaintiff Ford is very careful about sharing her sensitive information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. To her knowledge, neither her PII or PHI has ever been exposed in any other data breach.

115.     Because of the Data Breach, Plaintiff Ford's Private Information is now in the hands of cybercriminals.

116.     Following the Data Breach, Plaintiff Ford has noticed a dramatic increase in spam phone calls, emails, and text messages.

117.     As a result of the Data Breach, Plaintiff Ford has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Ford has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

118.    As a result of the Data Breach, Plaintiff Ford has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Ford is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

119.    Plaintiff Ford suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

120.    As a result of the Data Breach, Plaintiff Ford anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.    CLASS REPRESENTATION ALLEGATIONS

121.    Plaintiffs bring this action on behalf of themselves and, pursuant to Ala. R. Civ. P. 23, a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendants, their executives and officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

122.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. On information and belief, the number of affected individuals estimated to be 61,014 individuals.[36] The members of the Class will be identifiable through information and records in Defendants' possession, custody, and control.

123.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.      When Defendants learned of the Data Breach;

b.      Whether hackers obtained Class members' Private Information via the Data Breach;

c.      Whether Defendants' response to the Data Breach was adequate;

d.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.      Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

f.      Whether Defendants owed a duty to safeguard their Private Information;

g.      Whether Defendants breached their duty to safeguard Private Information;

h.      Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

i.      Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

---

[36] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/dd0e1242-6b33-43be-bcc2-3cdc38fe7b3b.html (last accessed August 29, 2024).

j.      Whether Defendants' conduct violated the FTCA and/or HIPAA;

k.      Whether Defendants' conduct was negligent;

l.      Whether Defendants' conduct was *per se* negligent;

m.      Whether Defendants were unjustly enriched;

n.      What damages Plaintiffs and Class members suffered as a result of Defendants' misconduct;

o.      Whether Plaintiffs and Class members are entitled to actual and/or statutory damages; and

p.      Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief.

124.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class as Plaintiffs and all members of the Class had their Private Information compromised in the Data Breach. Plaintiffs' claims and damages are also typical of the Class because they resulted from Defendants' uniform wrongful conduct. Likewise, the relief to which Plaintiffs is entitled to is typical of the Class because Defendants have acted, and refused to act, on grounds generally applicable to the Class.

125.    <u>Adequacy</u>: Plaintiffs are adequate class representatives because Plaintiffs' interests do not materially or irreconcilably conflict with the interests of the Class Plaintiffs seek to represent, Plaintiffs have retained counsel competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that are antagonistic to the interests of other members of the Class.

126.    <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would

be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/WANTONNESS
**(By Plaintiffs on behalf of the Class)**

127.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

128.    Defendants owe a duty of care to protect the Private Information belonging to Plaintiffs and Class members. Defendants also owe several specific duties including, but not limited to, the duty:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

    b.    to protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    to have procedures in place to detect the loss or unauthorized dissemination of Private Information in their possession;

    d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class members pursuant to the FTCA;

    e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

> f.  to promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

129.  Defendants owe this duty because they had a special relationship with Plaintiffs' and Class members. Plaintiffs and Class members entrusted their Private Information to Defendants on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendants had the ability to protect their systems and the Private Information stored on them from attack.

130.  Defendants also owe this duty because industry standards mandate that Defendants protect their patients' confidential Private Information.

131.  Defendants also owe a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiffs and Class members. This duty exists to provide Plaintiffs and Class members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

132.  Defendants breached their duties owed to Plaintiffs and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

133.  Defendants also breached the duties they owed to Plaintiffs and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

134.  As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

135.    Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

136.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendants also acted with reckless disregard for the rights of Plaintiffs and Class members.

137.    Plaintiffs and the Class are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiffs on behalf of the Class)

138.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

139.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendants to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiffs and Class members.

140.    HIPAA imposes a duty on Defendants to implement reasonable safeguards to protect Plaintiffs' and Class members' Private Information. 42 U.S.C. § 1302(d), *et seq*.

141.    HIPAA also requires Defendants to render unusable, unreadable, or indecipherable all Private Information it collected. Defendants was required to do so through "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

142.    In the event of a data breach, HIPAA obligates Covered Entities and Business Associates to notify affected individuals, prominent media outlets, and the Secretary of the Department of Health and Human Services of the data breach without unreasonable delay and in no event later than 60 days after discovery of the data breach. 45 CFR § 164.400, *et seq.*

143.    Similarly, the Alabama Data Breach Notification Act of 2018 imposes a clear duty on healthcare entities like MCB to protect Private Information: "Each covered entity and third-party agent shall implement and maintain reasonable security measures to protect sensitive personally identifying information against a breach of security." Ala. Code § 8-38-3(a).

144.    The Alabama Data Breach Notification Act further imposes a clear duty on healthcare entities like MCB to promptly notify affected persons so that the persons can take action to protect themselves: "[T]he covered entity shall provide notice within 45 days of . . . the covered entity's determination that a breach has occurred and is reasonably likely to cause substantial harm to the individuals to whom the information relates." Ala. Code § 8-38-5(b).

145.    Defendants violated the FTCA, HIPAA and Alabama Data Breach Notification Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiffs' and Class members' Private Information.

146.    Defendants violated FTCA, HIPAA and Alabama Data Breach Notification Act by failing to properly encrypt the Private Information it collected.

147.    Defendants violated HIPAA and the Alabama Data Breach Notification Act by unduly delaying reasonable notice of the actual breach; in this case by at least 150 days.

148.    Defendants' failure to comply with HIPAA, the Alabama Data Breach Notification Act, and the FTCA constitutes negligence *per se*.

149.    Plaintiffs and Class members are within the class of persons that the FTCA, the Alabama Data Breach Notification Act, and HIPAA are intended to protect.

150.    It was reasonably foreseeable that the failure to protect and secure Plaintiffs' and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

151.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

152.    Plaintiffs and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## COUNT III
## BREACH OF EXPRESS AND/OR IMPLIED CONTRACT
### (By Plaintiffs on behalf of the Class)

153.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

154.    Defendants offered to provide goods and services to Plaintiffs and Class members in exchange for payment and required Plaintiffs and Class members to provide Defendants with

their PII/PHI in order to receive such goods and services. Plaintiffs and Class members provided Defendants with their Private Information.

155.    Defendants had a written agreement and understanding with the Plaintiffs and Class members as set forth in Defendants' Notice of Privacy Practices that Defendants would not disclose Plaintiffs' and Class members' confidential information in a manner not authorized by applicable law or industry standards.

156.    Defendants' Notice of Privacy Practices provided to Plaintiffs and the Class members constitutes an express contract or at the very least created a meeting of the minds that was inferred from the conduct of the parties. Plaintiffs and the Class members fully discharged their obligations under the contract.

157.    Additionally, by providing their Private Information, and upon Defendants' acceptance of this information, Plaintiffs and the Class, on one hand, and Defendants, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

158.    The express and implied contracts between Defendants and Plaintiffs and Class members obligated Defendants to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' Private Information. The terms of these express and implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendants expressly adopted and assented to these terms in their public statements, representations and promises as described above.

159.    The express and implied contracts for data security also obligated Defendants to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

160.    Defendants breached these express and implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

161.    As a direct and proximate result of Defendants' breaches of the express and implied contracts, Plaintiffs and Class members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
### (By Plaintiffs on behalf of the Class)

162.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

163.    Defendants had a fiduciary duty to secure, safeguard and protect private patient information, which included Plaintiffs and Class members.

164.    Defendants became a fiduciary over Plaintiffs and Class members by their undertaking and guardianship of the PII/PHI, to act primarily for the benefit of Plaintiffs and Class members, (1) for the safeguarding of Plaintiffs' and Class members' PII/PHI; (2) to timely notify Plaintiffs and Class members of a data breach and disclosure; and (3) to maintain complete and accurate records of what patient information (and where) Defendants stored.

165.    Defendants breached the duty when they did not protect Plaintiffs' and Class members' private information.

166.    Defendants breached the duty when they did not provide adequate and timely notification of the Data Breach to Plaintiffs and Class Members.

167.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(1) by failing to ensure the confidentiality and integrity of Plaintiffs' and Class members' protected and electronic health information (*i.e.*, PHI) that Defendants created, received, maintained, and transmitted.

168.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.312(a)(1) by failing to implement technical policies and procedures for their electronic information systems housing private information.

169.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.308(a)(1) by failing to implement policies and procedures to prevent, detect, contain, and correct security violations.

170.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.308(a)(6)(ii) by failing to mitigate, to the extent practicable, harmful effects of security incidents that were known to Defendants.

171.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(2) by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic private information, or PII/PHI.

172.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 106.308(a)(6)(ii) by failing to mitigate harmful effects of security incidents known to MCB.

173.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(2) by failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic private information.

174.    Defendants violated 45 C.F.R. § 164.306(a)(3) when they failed to protect against reasonably anticipated uses or disclosures.

175.    Defendants breached their fiduciary duty when it violated 45 C.F.R. § 164.530(b), and 45 C.F.R. § 164.308(a)(5) by failing to ensure that their workforce complied with HIPAA and failing to provide adequate training to their workforce.

176.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.502 by impermissibly and improperly using and disclosing private information that remains accessible to unauthorized people.

177.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.530(c) by failing to design, implement, and enforce policies and procedures to establish a physical administrative safeguard to protect private information, such as PII/PHI.

178.    Plaintiffs and Class members face injuries as a direct and proximate result of Defendants' breaches of their fiduciary duties. These injuries include, but are not limited to:

    a.  Loss of control over private information;

    b.  Compromise of private information;

    c.  Lost opportunity costs associated with time spent to protect themselves and mitigating harm;

    d.  Continued risk that Plaintiffs and Class members private information could be stolen again;

    e.  Future costs associated with time spent protecting themselves from future harm;

    f.  Diminished value of Defendants' services;

    g.  Diminished value of private information; and

    h.  Anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
## BREACH OF CONFIDENCE
### (By Plaintiffs on behalf of the Class)

179.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

180.    At all times during Plaintiffs' and Class members' interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintiffs' and Class members' private information that Plaintiffs and Class members provided to Defendants.

181.    As alleged herein and above, Defendants' relationships with Plaintiffs and Class members was governed by expectations that Plaintiffs' and Class members' private information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

182.    Plaintiffs and Class members provided their respective private information to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the private information to be disseminated to any unauthorized parties.

183.    Plaintiffs and Class members also provided their respective private information to Defendants with the explicit and implicit understanding that Defendants would take precautions to protect that private information from unauthorized disclosure, such as following basic principles of information security practices.

184.    Due to Defendants' failure to prevent, detect, and/or avoid the Data Breach from occurring by, *inter alia*, failing to follow best information security practices to secure Plaintiffs' and Class members' private information, Plaintiffs' and Class members' private information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class members' confidence, and without their express permission.

185.    But for Defendants' disclosure of Plaintiffs' and Class members' private information in violation of the parties' understanding of confidence, their private information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third

parties. Defendants' Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class members' private information, as well as the resulting damages.

186.    The injury and harm Plaintiffs and Class members suffered was the reasonably foreseeable result of Defendants' unauthorized disclosure of Plaintiffs' and Class members' private information. Defendants knew or should have known their security systems were insufficient to protect the private information that is coveted by thieves worldwide. Defendants also failed to observe industry standard information security practices.

187.    As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class members suffered damages as alleged above.

### COUNT VI
### UNJUST ENRICHMENT
#### (By Plaintiffs on behalf of the Class)

188.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

189.    Plaintiffs and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendants.

190.    Defendants were benefitted by the conferral of Plaintiffs' and Class members' Private Information and by their ability to retain and use that information. Defendants understood that it was in fact so benefitted.

191.    Defendants also understood and appreciated that Plaintiffs' and Class members' Private Information was private and confidential and their value depended upon Defendants maintaining the privacy and confidentiality of that information.

192.    But for Defendants' willingness and commitment to maintain their privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their Private Information to be provided to Defendants, and Defendants would have been deprived of the

competitive and economic advantages it enjoyed by falsely claiming that their data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining patients, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

193.    As a result of Defendants' wrongful conduct as alleged herein (including, among other things, their deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; their failure to employ adequate data security measures; their continued maintenance and use of the Private Information belonging to Plaintiffs and Class members without having adequate data security measures; and their other conduct facilitating the theft of that Private Information), Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

194.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

195.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class members in an unfair and unconscionable manner.

196.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

197.    Defendants are therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically the value to Defendants of the PII and medical information that was accessed in the Data Breach and the profits Defendants receives from the use and sale of that information.

198.    Plaintiffs and Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

199.    Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT VII
## INVASION OF PRIVACY
### (By Plaintiffs on behalf of the Class)

200.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

201.    Plaintiffs and Class members had a reasonable expectation of privacy in the Private Information that Defendants possessed and/or continues to possess.

202.    By failing to keep Plaintiffs' and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendants invaded Plaintiffs' and Class members' privacy by:

      a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

      b.    Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

45

203.    Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Defendants' actions highly offensive.

204.    Defendants invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

205.    As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendants' conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

206.    In failing to protect Plaintiffs' and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendants have acted with malice and oppression and in conscious disregard of Plaintiffs' and Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing their own economic, corporate, and legal interests above the privacy interests of their millions of patients. Plaintiffs, therefore, seeks an award of damages, including punitive damages, individually and on behalf of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Ala. R. Civ. P. 23; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That Plaintiffs be granted the declaratory relief sought herein;

C.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.      That the Court award Plaintiffs and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.      That the Court award Plaintiffs and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.      That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.      That the Court award pre- and post-judgment interest at the maximum legal rate;

H.      That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.      That the Court grant all other relief as it deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, individually and on behalf of the putative Class, demand a trial by jury on all issues so triable.

Date: November 8, 2024                      Respectfully Submitted,

*/s/ Alexandra J. Calton*
Alexandra J. Calton (CAL089)
Annesley H. DeGaris (DEG002)
**DEGARIS LAW, LLC**
2 North 20th Street, Suite 1030
Birmingham, AL 35203
Telephone: (205) 575-8000
Facsimile: (205) 278-1454
acalton@degarislaw.com
adegaris@degarislaw.com

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

Daniel O. Herrera*
Nickolas J. Hagman*

DOCUMENT 35

Mohammed A. Rathur*
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com
mrathur@caffertyclobes.com

* *Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and the Proposed Class*

48



AlaFile E-Notice

69-CV-2024-900054.00

To:   ALEXANDRA JOAN CALTON
      acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:      11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MEDICAL CENTER BARBOUR (PRO SE)
820 W WASHINGTON STREET
EUFAULA, AL, 36027-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:      11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:     11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   ALLIANT MANAGEMENT SERVICES (PRO SE)
      2650 EASTPOINT PARKWAY
      SUITE 310
      LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:      11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
     205 EAST BARBOUR STREET
     EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:     11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:      11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  ROUCO RICHARD PAUL
     rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following complaint was FILED on 11/8/2024 10:36:51 AM

Notice Date:      11/8/2024 10:36:51 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ANNESLEY H DEGARIS
     adegaris@degarislaw.com

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:    01/14/2025
Hearing Time:    10:00:00 AM              Central Time
Location:        Virtual Hearing

Notice Date:     11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALEXANDRA JOAN CALTON
acalton@degarislaw.com

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  RICHARD P ROUCO
     rrouco@qcwdr.com

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  Lacee
     lacee.key@alacourt.gov

---

# COURTESY NOTICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:      01/14/2025
Hearing Time:      10:00:00 AM                 Central Time
Location:          Virtual Hearing

Notice Date:       11/24/2024 8:00:23 PM

This copy is being provided as a courtesy copy only. Providing this copy is not required by law and is not intended to constitute service.

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To: Debbie
debbie.howard@alacourt.gov

---

# COURTESY NOTICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:      01/14/2025
Hearing Time:      10:00:00 AM              Central Time
Location:          Virtual Hearing

Notice Date:       11/24/2024 8:00:23 PM

This copy is being provided as a courtesy copy only. Providing this copy is not required by law and is not intended to constitute service.

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To: Clerk
paige.smith@alacourt.gov

---

# COURTESY NOTICE

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

This copy is being provided as a courtesy copy only. Providing this copy is not required by law and is not intended to constitute service.

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  MEDICAL CENTER BARBOUR (PRO SE)
     820 W WASHINGTON STREET
     EUFAULA, AL, 36027-0000

---

# NOTICE OF VIRTUAL HEARING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:   MCBH, LLC (PRO SE)
      641 S LAWRENCE STREET
      MONTGOMERY, AL, 36104-0000

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
     2650 EASTPOINT PARKWAY
     SUITE 310
     LOUISVILLE, KY, 40223-0000

---

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:     01/14/2025
Hearing Time:     10:00:00 AM              Central Time
Location:         Virtual Hearing

Notice Date:      11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

Judge: HON. BURT SMITHART

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

# NOTICE OF VIRTUAL HEARING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following matter is having a virtual link added. This may be to enable a virtual
hearing or merely to enable a witness or other to connect to an in-court hearing. If you
have any questions, you should contact the Court.

MOTION TO SUPPLEMENT TO PENDING MOTION

11/24/2024 8:00:23 PM

Hearing Date:   01/14/2025
Hearing Time:   10:00:00 AM              Central Time
Location:       Virtual Hearing

Notice Date:    11/24/2024 8:00:23 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

DOCUMENT 39

ELECTRONICALLY FILED
11/25/2024 2:19 PM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK



| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. | A. Signature |
| ■ Print your name and address on the reverse so that we can return the card to you. | X  ☐ Agent ☐ Addressee |
| ■ Attach this card to the back of the mailpiece, or on the front if space permits. | B. Received by *(Printed Name)*    C. Date of Delivery |
| 1. Article Addressed to: | D. Is delivery address different from item 1? ☐ Yes / If YES, enter delivery address below: ☐ No |

1. Article Addressed to:

Medical Center Barbour
820 W. Washington Street
Eufaula, AL 36027

9590 9402 8599 3244 5243 73

2. Article Number *(Transfer from service label)*

9589 0710 5270 0998 2634 91

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
  Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt



AlaFile E-Notice

69-CV-2024-900054.00

To:   ALEXANDRA JOAN CALTON
      acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   MEDICAL CENTER BARBOUR (PRO SE)
      820 W WASHINGTON STREET
      EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MCBH, LLC (PRO SE)
641 S LAWRENCE STREET
MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:     11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:       11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   ROUCO RICHARD PAUL
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   ALEXANDRA JOAN CALTON
acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 11/25/2024 2:19:07
PM

Notice Date:      11/25/2024 2:19:07 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

DOCUMENT 41



SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Health Care Authority for the
City of Eufaula
205 E. Barbour Street
Eufaula, AL 36027

9590 9402 8599 3244 5243 80

2. Article Number (Transfer from service label)

9589 0710 5270 0998 2634 77

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X  Jones                          ☐ Agent
                                   ☐ Addressee
B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

ELECTRONICALLY FILED
12/2/2024 3:43 PM
69-CV-2024-900054.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK



AlaFile E-Notice

69-CV-2024-900054.00

To:  ALEXANDRA JOAN CALTON
     acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:     12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   MEDICAL CENTER BARBOUR (PRO SE)
      820 W WASHINGTON STREET
      EUFAULA, AL, 36027-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:      12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  MCBH, LLC (PRO SE)
     641 S LAWRENCE STREET
     MONTGOMERY, AL, 36104-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:     12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  ALLIANT MANAGEMENT SERVICES (PRO SE)
2650 EASTPOINT PARKWAY
SUITE 310
LOUISVILLE, KY, 40223-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:     12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  HEALTH CARE AUTHORITY FOR THE CITY OF EUFAULA (PRO S
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:      12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:  DEGARIS ANNESLEY HODGES
      adegaris@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:      12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   ROUCO RICHARD PAUL
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:        12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900054.00

To:   ALEXANDRA JOAN CALTON
      acalton@degarislaw.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

LUCY CALTON V. MEDICAL CENTER BARBOUR ET AL
69-CV-2024-900054.00

The following RETURN ON SERVICE - SERVED was FILED on 12/2/2024 3:43:35 PM

Notice Date:      12/2/2024 3:43:35 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

# ALABAMA SJIS CASE DETAIL



**PREPARED FOR: DAWN BOWMAN**
**12/4/2024 10:56:33 AM**

County: **69**     Case Number: **CV-2024-900056.00**     Court Action:

Style: **TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL**



## *Case Action Summary*

| Date: | Time | Code | Comments | Operator |
|---|---|---|---|---|
| 8/30/2024 | 12:15 PM | ECOMP | COMPLAINT E-FILED. | ROU008 |
| 8/30/2024 | 12:17 PM | FILE | FILED THIS DATE: 08/30/2024          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | ASSJ | ASSIGNED TO JUDGE: HON. BURT SMITHART          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 8/30/2024 | 12:17 PM | C001 | C001 PARTY ADDED: SPANN TERETHA          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | C001 | LISTED AS ATTORNEY FOR C001: ROUCO RICHARD PAUL | AJA |
| 8/30/2024 | 12:17 PM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | C002 | C002 PARTY ADDED: FORD CHAKA          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | C002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | C002 | LISTED AS ATTORNEY FOR C002: ROUCO RICHARD PAUL | AJA |
| 8/30/2024 | 12:17 PM | C002 | C002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D001 | D001 PARTY ADDED: MCBH, LLC D/B/A MEDICAL CENTER O | AJA |
| 8/30/2024 | 12:17 PM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D001 | PROCESS SERVE ISSUED: 08/30/2024 TO D001   (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D002 | D002 PARTY ADDED: HEALTHCARE AUTHORITY OF THE CITY | AJA |
| 8/30/2024 | 12:17 PM | D002 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D002 | LISTED AS ATTORNEY FOR D002: PRO SE          (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D002 | PROCESS SERVE ISSUED: 08/30/2024 TO D002   (AV02) | AJA |
| 8/30/2024 | 12:17 PM | D002 | D002 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 9/6/2024 | 11:07 AM | EMISC | RETURN ON SERVICE - SERVED E-FILED | ROU008 |
| 9/6/2024 | 11:42 AM | D001 | SERVICE OF AUTHORIZED ON 09/04/2024 FOR D001(AV02) | DEH |
| 9/10/2024 | 9:04 AM | EMISC | RETURN ON SERVICE - SERVED E-FILED | ROU008 |
| 9/10/2024 | 9:23 AM | EMISC | RETURN ON SERVICE - SERVED E-FILED | ROU008 |
| 9/10/2024 | 3:21 PM | D002 | SERVICE OF AUTHORIZED ON 09/06/2024 FOR D002(AV02) | DEH |

 ***END OF THE REPORT***

DOCUMENT 1

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev. 9/18 | COVER SHEET<br>CIRCUIT COURT - CIVIL CASE<br>(Not For Domestic Relations Cases) | Case Number:<br>69-CV-2024-900056.00 |
|---|---|---|

ELECTRONICALLY FILED
8/30/2024 12:15 PM
69-CV-2024-900056.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
CASSIE WILLIAMS, CLERK

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
TERETHA SPANN ET AL v. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL

| First Plaintiff: | ☐ Business  ☑ Individual<br>☐ Government  ☐ Other | First Defendant: | ☑ Business  ☐ Individual<br>☐ Government  ☐ Other |
|---|---|---|---|

Date of Filing:
08/30/2024

Judge Code:

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☑ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANFS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
  Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
  Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING        A ☐ APPEAL FROM        O ☐ OTHER
                                          DISTRICT COURT

           R ☐ REMANDED               T ☐ TRANSFERRED FROM
                                          OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P. for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
ROU008                    8/30/2024 12:15:15 PM        /s/ RICHARD P ROUCO
                          Date                          Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED

Election to Proceed under the Alabama Rules for Expedited Civil Actions:        ☐ YES ☐ NO

ELECTRONICALLY FILED
8/30/2024 12:13 PM
69-CV-2024-900056.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

## IN THE CIRCUIT COURT OF BARBOUR COUNTY
## STATE OF ALABAMA

TERETHA SPANN and CHAKA FORD,
individually, and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

MCBH, LLC d/b/a MEDICAL CENTER
BARBOUR, and THE HEALTH CARE
AUTHORITY OF THE CITY OF
EUFAULA,

        Defendants.

Case No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Teretha Spann and Chaka Ford ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against MCBH, LLC, d/b/a Medical Center Barbour and The Health Care Authority of the City of Eufaula (collectively, "MCB" or "Defendants"). Plaintiffs bring this action by and through their attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

### I.    INTRODUCTION

1.    MCB is a 74-bed hospital located in Eufaula, Alabama providing laboratory, radiology, emergency care, senior behavior health, surgery, inpatient, family care, and wound care services located in Eufaula, Alabama.[1]

2.    As part of their operations, MCB collects, maintains, and stores highly sensitive personal and medical information belonging to their patients, including, but not limited to their

---

[1] *See* https://www.medctrbarbour.org/mcb-hospital-services (last accessed August 29, 2024).

full names, Social Security numbers, dates of birth, addresses, driver's license or state ID numbers, passport information (collectively, "personally identifying information" or "PII"), health insurance and medical information ("private health information" or "PHI"), and financial information (collectively, with PII and PHI, "Private Information).

3.    On October 29, 2023, MCB experienced a data breach incident in which unauthorized cybercriminals accessed their information systems and databases and stole Private Information belonging to Plaintiffs and Class members (the "Data Breach").

4.    On December 8, 2023, MCB concluded their investigation into the Data Breach and by July 31, 2024, MCB and their data mining vendors identified, reviewed, and reconstructed the data accessed during the Data Breach.

5.    On August 22, 2024, MCB sent a notice to individuals whose information was accessed in the Data Breach.

6.    Because MCB stored and handled Plaintiffs' and Class members' highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

7.    Ultimately, MCB failed to fulfill this obligation, as unauthorized cybercriminals breached MCB's information systems and databases and stole vast quantities of Private Information belonging to MCB's patients, including Plaintiffs and Class members. The Data Breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of MCB.

8.    The Data Breach occurred because MCB failed to implement reasonable security protections to safeguard their information systems and databases. Moreover, before the Data Breach occurred, MCB failed to inform the public that their data security practices were deficient

and inadequate. Had Plaintiffs and Class members been made aware of this fact, they would have never provided such information to MCB.

9.     MCB's subsequent handling of the Data Breach was also deficient.

10.     MCB's meager attempt to ameliorate the effects of this data breach with one year of complimentary credit monitoring woefully inadequate. Much of the Private Information that was stolen is immutable and victims will face of a life-long heightened risk of identity theft.

11.     As a result of MCB's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy their contractual, statutory, and common-law obligations, Plaintiffs and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their Private Information.

12.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief for the consequences of Defendants' failure to reasonably safeguard Plaintiffs' and Class members' Private Information; their failure to reasonably provide timely notification to

Plaintiffs and Class members that their Private Information had been compromised; and for Defendants' failure to inform Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.      PARTIES

### Plaintiff Teretha Spann

13.     Plaintiff Spann is a resident and citizen of Clayton, Alabama. Plaintiff Spann was a patient at MCB. Plaintiff Spann received Defendants' Data Breach Notice.

### Plaintiff Chaka Ford

14.     Plaintiff Ford is a resident and citizen of Midway, Alabama. Plaintiff Ford was a patient at MCB. Plaintiff Ford received Defendants' Data Breach Notice.

### Defendant MCBH, LLC, d/b/a Medical Center Barbour

15.     Defendant MCB is a foreign limited liability company with its principal address located at 6300 Wilshire Boulevard, Suite 1800, Los Angeles, CA 90048. Defendant conducts business in Barbour County, Alabama.

### Defendant Healthcare Authority of the City of Eufaula

16.     Defendant Healthcare Authority of the City of Eufaula is a non-profit Alabama corporation with its principal address located at 205 East Barbour Street, Eufaula, Alabama 36072. Defendant Healthcare Authority of the City of Eufaula jointly operates the MCB hospital together with MCBH, LLC.

## III.      JURISDICTION AND VENUE

17.     This Court has jurisdiction over Defendants because they are both residents and citizens of the State of Alabama with their principal places of businesses in Eufaula. This Court has personal jurisdiction over Defendants because Defendant Healthcare Authority of the City of Eufaula is an Alabama corporation, and Defendants jointly operate MCB in Alabama.

18.     Venue is proper in this court pursuant to Ala. Code § 6-3-7 because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this County and because Defendants reside in this County.

## IV.    FACTUAL ALLEGATIONS

### A.    MCB – Background

19.     MCB is a 74-bed hospital located in Eufaula, Alabama providing laboratory, radiology, emergency care, senior behavior health, surgery, inpatient, family care, and wound care services located in Eufaula, Alabama.[2] As part of their normal operations, MCB collects, maintains, and stores large volumes of Private Information belonging to their current and former patients.

20.      MCB failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of MCB's current and former patients—Plaintiffs and Class members.

21.     Current and former patients of MCB, such as Plaintiffs and Class members, made their Private Information available to MCB with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

22.     This expectation was objectively reasonable and based on an obligation imposed on MCB by statute, regulations, industrial custom, and standards of general due care.

23.     Unfortunately for Plaintiffs and Class members, MCB failed to carry out their duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed

---

[2] *See* https://www.medctrbarbour.org/mcb-hospital-services (last accessed August 29, 2024).

to protect Plaintiffs and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.**    **The Data Breach**

24.    According to Defendants' public statements, cybercriminals breached MCB's information systems on October 29, 2023.

25.    On December 8, 2023, MCB concluded their investigation into the Data Breach and by July 31, 2024, MCB and their data mining vendors identified, reviewed, and reconstructed the data accessed during the Data Breach

26.    On August 22, 2024, MCB sent notice of the Data Breach to all individuals affected by this data security incident.

27.    MCB estimates that the Private Information belonging to at least 61,014 individuals was compromised in the Data Breach. [3]

**C.**    **MCB's Many Failures Both Prior to and Following the Breach**

28.    Defendants collects and maintains vast quantities of Private Information belonging to Plaintiffs and Class members as part of their normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendants.

29.    First, Defendants inexcusably failed to implement reasonable security protections to safeguard their information systems and databases.

30.    Second, Defendants failed to inform the public that their data security practices were deficient and inadequate. Had Plaintiffs and Class members been aware that Defendants did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendants.

---

[3] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/dd0e1242-6b33-43be-bcc2-3cdc38fe7b3b.html (last accessed August 29, 2024).

31.     In addition to the failures that lead to the successful breach, Defendants' failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiffs and Class members.

32.     Defendants' delay in informing victims of the Data Breach that their Private Information was compromised virtually ensured that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before the Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

33.     Additionally Defendants' attempt to ameliorate the effects of the Data Breach with limited complimentary credit monitoring is woefully inadequate. Plaintiffs' and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as healthcare data, is immutable.

34.     In short, Defendants' myriad failures, including the failure to timely detect an intrusion, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiffs' and Class members' Private Information for almost an entire month before Defendants finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

D.    **Data Breaches Pose Significant Threats**

35.    Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

36.    In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[4] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[5]

37.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[6] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%.[7]

---

[4] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.
[5] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/.
[6] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/.
[7] *Id.*



38.    This stolen PII is then routinely traded on dark web black markets as a simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[8]

39.    In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone

---

[8] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/.

> illegally using your Social Security number and assuming your identity can cause
> a lot of problems.[9]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[10]

40.     The most sought after and expensive information on the dark web are stolen medical records which command prices from $250 to $1,000 each.[11] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and Social Security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information."[12] With this bounty of ill-gotten information, cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[13] Cybercriminals can also change the victims' medical records, which can lead to

---

[9] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[10] *Id.*

[11] Paul Nadrag, Capsule Technologies*, Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web.

[12] *Id.*

[13] *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare. *See*

misdiagnosis or mistreatment when the victims seek medical treatment.[14] Victims of medical

identity theft could even face prosecution for drug offenses when cybercriminals use their stolen

information to purchase prescriptions for sale in the drug trade.[15]

41.    The wrongful use of compromised medical information is known as medical

identity theft and the damage resulting from medical identity theft is routinely far more serious

than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an

average of $13,500 to resolve problems arising from medical identity theft and there are currently

no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's

liability for fraudulent credit card charges is capped at $50).[16] It is also "considerably harder" to

reverse the damage from the aforementioned consequences of medical identity theft.[17]

42.    Instances of Medical identity theft have grown exponentially over the years from

approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold

increase in the crime.[18]

43.    In light of the dozens of high-profile health and medical information data breaches

that have been reported in recent years, entities like Defendants charged with maintaining and

securing patient PII should know the importance of protecting that information from unauthorized

disclosure. Indeed, Defendants knew, or certainly should have known, of the recent and high-

profile data breaches in the health care industry: UnityPoint Health, Lifetime Healthcare, Inc.,

---

*also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016),
available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/.
[14] *Id.*
[15] *Id.*
[16] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-
fraud/info-2019/medical-identity-theft.html.
[17] *Id.*
[18] *Id.*

Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[19]

44.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendants on notice of their obligation to safeguard customer and patient information.[20]

45.    Given the nature of Defendants' Data Breach, as well as the length of the time Defendants' networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in their names.

46.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[21] The

---

[19] *See, e.g.*, *Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics.
[20] *See, e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).
[21] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

47.     To date, Defendants has offered their consumers only limited identity theft monitoring services. The services offered are inadequate to protect Plaintiffs and Class members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

48.     Despite the prevalence of public announcements of data breach and data security compromises, their own acknowledgment of the risks posed by data breaches, and their own acknowledgment of their duties to keep Private Information private and secure, Defendants failed to take appropriate steps to protect the Private Information of Plaintiffs and Class members from misappropriation. As a result, the injuries to Plaintiffs and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for their current and former patients.

**E.      MCB Had a Duty and Obligation to Protect Private Information**

49.     Defendants have an obligation to protect the Private Information belonging to Plaintiffs and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII and medical records. Plaintiffs and Class members provided, and Defendants obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.      HIPAA Requirements and Violation**

50.     HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the

confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

51.    HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology. . . ." 45 CFR § 164.402.

52.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires entities to provide notice of a data breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***" (emphasis added).

53.    Defendants failed to implement and/or maintain procedures, systems, and safeguards to protect the Private Information belonging to Plaintiffs and Class members from unauthorized access and disclosure.

54.    Upon information and belief, Defendants' security failures include, but are not limited to:

      a.    Failing to maintain an adequate data security system to prevent data loss;

      b.    Failing to mitigate the risks of a data breach and loss of data;

      c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendants creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

      d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR 164.306(a)(94); and

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

55.  Upon information and belief, Defendants also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

## 2.  FTC Act Requirements and Violations

56.  The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

57.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[22] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[23] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[24] Defendants clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data accessed.

58.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

59.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

---

[22] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[23] *Id.*
[24] *Id.*

unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60.    Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

61.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

62.    Defendants were fully aware of their obligation to protect the Private Information of their current and former patients, including Plaintiffs and Class members. Defendants are sophisticated and technologically savvy businesses that rely extensively on technology systems and networks to maintain their practice, including storing their patients' PII, protected health information, and medical information in order to operate their business.

63.    Defendants have and continue to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendants and Plaintiffs and Class members. Defendants alone had the exclusive ability to implement adequate security measures to their cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

3.    **Industry Standards and Noncompliance**

64.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

65.    Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendants, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

66.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

67.    Defendants should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

4.    **Defendants' Own Stated Policies and Promises**

68.    Defendants' own published privacy policy states that MCB is "required by law to maintain the privacy of your Protected Health Information, or "PHI," thereby incorporating the various statutory duties as self-imposed obligations.[25]

69.    Further, MCB acknowledges that "medical information about [its patients'] health is personal" and MCB promises patients that they "are committed to protecting medical information about you."[26] MCB further promises to "[m]ake sure medical information that identifies [patients] is kept private."

70.    Defendants failed to live up to their own stated policies and promises with regards to data privacy and data security as cybercriminals were able to infiltrate their systems and steal the Private Information belonging to Plaintiffs and Class members.

F.    **Plaintiffs and the Class Suffered Harm Resulting from the Data Breach**

71.    Like any data hack, the Data Breach presents major problems for all affected.[27]

72.    The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[28]

73.    The ramifications of Defendants' failure to properly secure Plaintiffs' and Class members' Private Information are severe. Identity theft occurs when someone uses another

---

[25] https://www.medctrbarbour.org/privacy-notice
[26] *Id.*
[27] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[28] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

74.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

75.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

76.     Accordingly, Defendants' wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[29] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[30]

77.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

78.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[31] The average cost to resolve a

---

[29] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.
[30] *Id.*
[31] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymB

data breach involving health information, however, is more than double this figure at $10.92 million.[32]

79.     The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[33] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (e.g., a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[34]

80.     In response to the Data Breach, Defendants offered to provide certain individuals whose Private Information was exposed in the Data Breach with two years of credit monitoring. However, this is inadequate to protect victims of the Data Breach from the lifelong risk of harm as a result of Defendants' failures.

81.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

a.     Theft of Private Information;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

---

hAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_B
wE&gclsrc=aw.ds.

[32] Id.

[33] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.

[34] Id.

c.   Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

d.   Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendants' delay in disseminating notice in accordance with state law;

e.   The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.   The loss of Plaintiffs' and Class members' privacy.

82.   Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within the limited time of credit monitoring offered by Defendants.

83.   As a direct and proximate result of Defendants' acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

84.   Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

G.    **EXPERIENCES SPECIFIC TO PLAINTIFFS**

*Plaintiff Teretha Spann*

85.    Plaintiff Spann was a patient of MCB in August 2023. As a condition of receiving services from MCB, Plaintiff Spann was required to provide Defendants with her Private Information. When providing her Private Information, Plaintiff Spann reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

86.    Plaintiff Spann received MCB's Data Breach notice. The notice informed Plaintiff Spann that her Private Information was improperly accessed and obtained by third parties.

87.    After the Data Breach, Plaintiff Spann has noticed a dramatic increase in spam phone calls, emails, and text messages.

88.    As a result of the Data Breach, Plaintiff Spann has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Spann has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

89.    As a result of the Data Breach, Plaintiff Spann has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Spann is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

90.    Plaintiff Spann suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and

diminution in the value of her Private Information, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

91.     As a result of the Data Breach, Plaintiff Spann anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**Plaintiff Chaka Ford**

92.     Plaintiff Ford was a patient of MCB in 2023. As a condition of receiving services from MCB, Plaintiff Ford was required to provide Defendants with her Private Information. When providing her Private Information, Plaintiff Ford reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

93.     Plaintiff Ford received MCB's Data Breach notice. The notice informed Plaintiff Ford that her Private Information was improperly accessed and obtained by third parties.

94.     Following the Data Breach, Plaintiff Ford has noticed a dramatic increase in spam phone calls, emails, and text messages.

95.     As a result of the Data Breach, Plaintiff Ford has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Ford has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

96.     As a result of the Data Breach, Plaintiff Ford has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Ford is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

97.     Plaintiff Ford suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

98.     As a result of the Data Breach, Plaintiff Ford anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.    CLASS REPRESENTATION ALLEGATIONS

99.     Plaintiffs bring this action on behalf of themselves and, pursuant to Ala. R. Civ. P. 23, a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendants, their executives and officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

100.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. On information and belief, the number of affected individuals estimated to be 61,014 individuals.[35] The members of the Class will be identifiable through information and records in Defendants' possession, custody, and control.

101.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    When Defendants learned of the Data Breach;

b.    Whether hackers obtained Class members' Private Information via the Data Breach;

c.    Whether Defendants' response to the Data Breach was adequate;

d.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.    Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

f.    Whether Defendants owed a duty to safeguard their Private Information;

g.    Whether Defendants breached their duty to safeguard Private Information;

h.    Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

i.    Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

---

[35] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/dd0e1242-6b33-43be-bcc2-3cdc38fe7b3b.html (last accessed August 29, 2024).

j.      Whether Defendants' conduct violated the FTCA and/or HIPAA;

k.      Whether Defendants' conduct was negligent;

l.      Whether Defendants' conduct was *per se* negligent;

m.      Whether Defendants were unjustly enriched;

n.      What damages Plaintiffs and Class members suffered as a result of Defendants' misconduct;

o.      Whether Plaintiffs and Class members are entitled to actual and/or statutory damages; and

p.      Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief.

102.    Typicality: Plaintiffs' claims are typical of the claims of the Class as Plaintiffs and all members of the Class had their Private Information compromised in the Data Breach. Plaintiffs' claims and damages are also typical of the Class because they resulted from Defendants' uniform wrongful conduct. Likewise, the relief to which Plaintiffs is entitled to is typical of the Class because Defendants have acted, and refused to act, on grounds generally applicable to the Class.

103.    Adequacy: Plaintiffs are adequate class representatives because Plaintiffs' interests do not materially or irreconcilably conflict with the interests of the Class Plaintiffs seek to represent, Plaintiffs have retained counsel competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that are antagonistic to the interests of other members of the Class.

104.    Superiority: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would

be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
#### (By Plaintiffs on behalf of the Class)

105.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

106.    Defendants owe a duty of care to protect the Private Information belonging to Plaintiffs and Class members. Defendants also owe several specific duties including, but not limited to, the duty:

      a.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

      b.      to protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

      c.      to have procedures in place to detect the loss or unauthorized dissemination of Private Information in their possession;

      d.      to employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class members pursuant to the FTCA;

      e.      to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.     to promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

107.     Defendants owe this duty because they had a special relationship with Plaintiffs' and Class members. Plaintiffs and Class members entrusted their Private Information to Defendants on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendants had the ability to protect their systems and the Private Information stored on them from attack.

108.     Defendants also owe this duty because industry standards mandate that Defendants protect their patients' confidential Private Information.

109.     Defendants also owe a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiffs and Class members. This duty exists to provide Plaintiffs and Class members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

110.     Defendants breached their duties owed to Plaintiffs and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

111.     Defendants also breached the duties they owed to Plaintiffs and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

112.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members were damaged. These damages include, and are not limited to:

•     Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

113.    Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

114.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendants also acted with reckless disregard for the rights of Plaintiffs and Class members.

115.    Plaintiffs and the Class are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiffs on behalf of the Class)

116.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

117.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendants to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiffs and Class members.

118.    HIPAA imposes a duty on Defendants to implement reasonable safeguards to protect Plaintiffs' and Class members' Private Information. 42 U.S.C. § 1302(d), *et seq*.

119.    HIPAA also requires Defendants to render unusable, unreadable, or indecipherable all Private Information it collected. Defendants was required to do so through "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

120.    In the event of a data breach, HIPAA obligates Covered Entities and Business Associates to notify affected individuals, prominent media outlets, and the Secretary of the Department of Health and Human Services of the data breach without unreasonable delay and in no event later than 60 days after discovery of the data breach. 45 CFR § 164.400, *et seq.*

121.    Defendants violated the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiffs' and Class members' Private Information.

122.    Defendants violated HIPAA by failing to properly encrypt the Private Information it collected.

123.    Defendants violated HIPAA by unduly delaying reasonable notice of the actual breach; in this case by at least 150 days.

124.    Defendants' failure to comply with HIPAA and the FTCA constitutes negligence *per se*.

125.    Plaintiffs and Class members are within the class of persons that the FTCA and HIPAA are intended to protect.

126.    It was reasonably foreseeable that the failure to protect and secure Plaintiffs' and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

127.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

128.    Plaintiffs and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (By Plaintiffs on behalf of the Class)

129.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

130.    Plaintiffs and Class members provided Defendants with their Private Information.

131.    By providing their Private Information, and upon Defendants' acceptance of this information, Plaintiffs and the Class, on one hand, and Defendants, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

132.    The implied contracts between Defendants and Plaintiffs and Class members obligated Defendants to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendants expressly adopted and assented to these terms in their public statements, representations and promises as described above.

133.   The implied contracts for data security also obligated Defendants to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

134.   Defendants breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

135.   As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiffs and Class members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
### (By Plaintiffs on behalf of the Class)

136.   Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

137.   This count is brought in the alternative to Count III.

138.   Plaintiffs and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendants.

139.   Defendants were benefitted by the conferral of Plaintiffs' and Class members' Private Information and by their ability to retain and use that information. Defendants understood that it was in fact so benefitted.

140.    Defendants also understood and appreciated that Plaintiffs' and Class members' Private Information was private and confidential and their value depended upon Defendants maintaining the privacy and confidentiality of that information.

141.    But for Defendants' willingness and commitment to maintain their privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their Private Information to be provided to Defendants, and Defendants would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that their data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining patients, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

142.    As a result of Defendants' wrongful conduct as alleged herein (including, among other things, their deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; their failure to employ adequate data security measures; their continued maintenance and use of the Private Information belonging to Plaintiffs and Class members without having adequate data security measures; and their other conduct facilitating the theft of that Private Information), Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

143.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class

members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

144.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class members in an unfair and unconscionable manner.

145.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

146.    Defendants are therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically the value to Defendants of the PII and medical information that was accessed in the Data Breach and the profits Defendants receives from the use and sale of that information.

147.    Plaintiffs and Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

148.    Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
## INVASION OF PRIVACY
### (By Plaintiffs on behalf of the Class)

149.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

150.    Plaintiffs and Class members had a reasonable expectation of privacy in the Private Information that Defendants possessed and/or continues to possess.

151. By failing to keep Plaintiffs' and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendants invaded Plaintiffs' and Class members' privacy by:

      a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

      b.    Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

152. Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Defendants' actions highly offensive.

153. Defendants invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

154. As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendants' conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

155. In failing to protect Plaintiffs' and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendants have acted with malice and oppression and in conscious disregard of Plaintiffs' and Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing their own economic, corporate, and legal interests above the privacy interests of their millions of patients. Plaintiffs, therefore, seeks an award of damages, including punitive damages, individually and on behalf of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Ala. R. Civ. P. 23; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That Plaintiffs be granted the declaratory relief sought herein;

C.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award Plaintiffs and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court award Plaintiffs and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.    That the Court award pre- and post-judgment interest at the maximum legal rate;

H.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the putative Class, demand a trial by jury on all issues so triable.

Date: August 30, 2024                          Respectfully Submitted,

/s/ Richard P. Rouco
Richard P. Rouco
Quinn, Connor, Weaver,
  Davies & Rouco, LLP
2- 20th Street North, Suite 930
Birmingham, AL 35203
(205) 870-9989
rrouco@qcwdr.com

DOCUMENT 2

Daniel O. Herrera*
Nickolas J. Hagman*
Mohammed A. Rathur*
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com
mrathur@caffertyclobes.com

* *Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and the Proposed Class*



AlaFile E-Notice

69-CV-2024-900056.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following complaint was FILED on 8/30/2024 12:15:16 PM

Notice Date:      8/30/2024 12:15:16 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR
6300 WILSHIRE BLVD.
SUITE 1800
LOS ANGELES, CA, 90048

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following complaint was FILED on 8/30/2024 12:15:16 PM

Notice Date:     8/30/2024 12:15:16 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA
     205 EAST BARBOUR STREET
     EUFAULA, AL, 36072

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following complaint was FILED on 8/30/2024 12:15:16 PM

Notice Date:      8/30/2024 12:15:16 PM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>69-CV-2024-900056.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL

**NOTICE TO:** MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR, 6300 WILSHIRE BLVD. SUITE 1800, LOS ANGELES, CA 90048

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RICHARD P ROUCO

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: Two North Twentieth Street, 2  20th Street North, Suite 930, BIRMINGHAM, AL 35203  .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

[☑] You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

[ ] Service by certified mail of this Summons is initiated upon the written request below of pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

| 08/30/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

[ ] Certified Mail is hereby requested.

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

*Certified Mail*

[ ] Return receipt of certified mail received in this office on _____ .

*(Date)*

*Personal/Authorized*

[ ] I certify that I personally delivered a copy of this Summons and the Complaint or other document to
_____ in _____ County, Alabama on _____ .

*(First and Last Name of Person Served)*  *(Name of County)*  *(Date)*

Document left:

    [ ] with above-named Defendant;

    [ ] with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

    [ ] at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

[ ] I certify that service of process of this Summons and the Complaint or other document was refused by
_____ in _____ County, Alabama on _____ who is:

*(First and Last Name of Person Served)*  *(Name of County)*  *(Date)*

    [ ] the above-named Defendant;

    [ ] an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

[ ] As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

| *(Type of Process Server)* | *(Server's Signature)* | *(Address of Server)* |
|---|---|---|
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Server's Printed Name)* | |
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Telephone Number of Designated Process Server)* | |

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 7/2023 | SUMMONS<br>- CIVIL - | Court Case Number<br>69-CV-2024-900056.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL**

**NOTICE TO:** HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA, 205 EAST BARBOUR STREET, EUFAULA, AL 36072
*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RICHARD P ROUCO
*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: Two North Twentieth Street, 2 20th Street North, Suite 930, BIRMINGHAM, AL 35203
*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request below of pursuant to the Alabama Rules of the Civil Procedure.    _____ *[Name(s)]*

08/30/2024            /s/ PAIGE SMITH      By: _____
*(Date)*              *(Signature of Clerk)*            *(Name)*

☐ Certified Mail is hereby requested.
*(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

*Certified Mail*
☐ Return receipt of certified mail received in this office on _____.
*(Date)*

*Personal/Authorized*
☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to _____ in _____ County, Alabama on _____.
*(First and Last Name of Person Served)*   *(Name of County)*    *(Date)*

Document left:
☐ with above-named Defendant;
☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;
☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*
☐ I certify that service of process of this Summons and the Complaint or other document was refused by _____ in _____ County, Alabama on _____ who is:
*(First and Last Name of Person Served)*   *(Name of County)*    *(Date)*
☐ the above-named Defendant;
☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

*(Type of Process Server)*       *(Server's Signature)*        *(Address of Server)*

*(Badge or Precinct Number of Sheriff or Constable)*  *(Server's Printed Name)*

*(Badge or Precinct Number of Sheriff or Constable)*  *(Telephone Number of Designated Process Server)*

ELECTRONICALLY FILED
9/6/2024 11:07 AM
69-CV-2024-900056.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 7/2023 | **SUMMONS**<br><br>**- CIVIL -** | C...<br>6... |
| --- | --- | --- |

## IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
### TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL

**NOTICE TO:** MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR, 6300 WILSHIRE BLVD. SUITE 1800, LOS ANGELES, CA 90048

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RICHARD P ROUCO

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: Two North Twentieth Street, 2  20th Street North, Suite 930, BIRMINGHAM, AL 35203

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request below of _____ pursuant to the Alabama Rules of the Civil Procedure.                    *[Name(s)]*

| 08/30/2024 | /s/ PAIGE SMITH | By: | |
| --- | --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | | *(Name)* |

☐ Certified Mail is hereby requested.    _____
*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

**Certified Mail**

☐ Return receipt of certified mail received in this office on _____
*(Date)*

**Personal/Authorized**

☒ I certify that I personally delivered a copy of this Summons and the Complaint or other document to
*Stacy Ellis* in *Montgomery* County, Alabama on *9-4-24*.
*(First and Last Name of Person Served)*    *(Name of County)*    *(Date)*

Document left:

☐ with above-named Defendant;

☒ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

**Return of Non-Service**

☐ I certify that service of process of this Summons and the Complaint or other document was refused by _____ in _____ County, Alabama on _____ who is:
*(First and Last Name of Person Served)*    *(Name of County)*    *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

*PRIVATE PROCESS SERVER*
*(Type of Process Server)*    *(Server's Signature)*    *(Address of Server)* P O BOX 241806

#213    #9387    *Henderson*    Mont AL 36124
*(Badge or Precinct Number of Sheriff or Constable)*    *(Server's Printed Name)*

(334) 618-0498
*(Badge or Precinct Number of Sheriff or Constable)*    *(Telephone Number of Designated Process Server)*    **Service Return Copy**



AlaFile E-Notice

69-CV-2024-900056.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/6/2024 11:07:20 AM

Notice Date:      9/6/2024 11:07:20 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR (PRO SE)
6300 WILSHIRE BLVD.
SUITE 1800
LOS ANGELES, CA, 90048-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/6/2024 11:07:20 AM

Notice Date:     9/6/2024 11:07:20 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA (PRO SE)
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/6/2024 11:07:20 AM

Notice Date:      9/6/2024 11:07:20 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/6/2024 11:07:20 AM

Notice Date:      9/6/2024 11:07:20 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

Case 2:24-cv-00787-RAH-KFP   DOCUMENT 7   Filed 12/06/24   ELECTRONICALLY FILED

9/9/24, 4:36 PM                                AT&T Yahoo Mail - Re: Eufaula                9/10/2024 9:04 AM
                                                                                           69-CV-2024-900056.00
                                                                                           CIRCUIT COURT OF
                                                                                           BARBOUR COUNTY, ALABAMA
                                                                                           PAIGE SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 7/2023 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>69-CV-2024-900056.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
**TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL**

NOTICE TO: HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA, 205 EAST BARBOUR STREET, EUFAULA, AL 36072

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S):
RICHARD P ROUCO

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: Two North Twentieth Street, 2  20th Street North, Suite 930, BIRMINGHAM, AL 35203

*(Address(es) of Plaintiff(s) or Attorney(s))*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL**
**PROCEDURE TO SERVE PROCESS:**

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request below of _____ *(Name(s))*
pursuant to the Alabama Rules of the Civil Procedure.

| 08/30/2024 | /s/ PAIGE SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☐ Certified Mail is hereby requested.                _____
                                                      *(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

*Certified Mail*

☐ Return receipt of certified mail received in this office on _____
                                                              *(Date)*

*Personal/Authorized*

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to
Darlene Jones in Barbour County, Alabama on 9/6/24
*(First and Last Name of Person Served)*       *(Name of County)*                        *(Date)*

Document left:

☐ with above-named Defendant;

☑ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*

☐ I certify that service of process of this Summons and the Complaint or other document was refused by
_____ in _____ County, Alabama on _____ who is:
*(First and Last Name of Person Served)*   *(Name of County)*                 *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

Alicia Sutton _____ 105 Ashurst Bar Rd, Tallassee, AL
*(Type of Process Server)*   *(Server's Signature)*   *(Address of Server)*   36078

Alicia Sutton
*(Badge or Precinct Number of Sheriff or Constable)*   *(Server's Printed Name)*



AlaFile E-Notice

69-CV-2024-900056.00

To: RICHARD P ROUCO
    rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:04:21 AM

Notice Date:      9/10/2024 9:04:21 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:   MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR (PRO SE)
      6300 WILSHIRE BLVD.
      SUITE 1800
      LOS ANGELES, CA, 90048-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:04:21 AM

Notice Date:      9/10/2024 9:04:21 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA (PRO SE)
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:04:21 AM

Notice Date:     9/10/2024 9:04:21 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  RICHARD P ROUCO
     rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:04:21 AM

Notice Date:     9/10/2024 9:04:21 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov

Case 2:24-cv-00787-RAH-KFP   Document 1-2   Filed 12/06/24   Page 302 of 306

ELECTRONICALLY FILED
9/10/2024 9:23 AM
69-CV-2024-900056.00
CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
PAIGE SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | **SUMMONS**<br>- CIVIL - | Court Case Number<br>69-CV-2024-900056.00 |
|---|---|---|

**IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA**
TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL

NOTICE TO: HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA, 205 EAST BARBOUR STREET, EUFAULA, AL 36072
*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RICHARD P ROUCO
*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: Two North Twentieth Street, 2  20th Street North, Suite 930, BIRMINGHAM, AL 35203
*(Address(es) of Plaintiff(s) or Attorney(s))*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

[✓] You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

[ ] Service by certified mail of this Summons is initiated upon the written request below of pursuant to the Alabama Rules of the Civil Procedure.    *(Name(s))*

08/30/2024            /s/ PAIGE SMITH            By:
*(Date)*            *(Signature of Clerk)*            *(Name)*

[ ] Certified Mail is hereby requested.
*(Plaintiffs/Attorney's Signature)*

**RETURN ON SERVICE**

*Certified Mail*
[ ] Return receipt of certified mail received in this office on _____ *(Date)*

*Personal/Authorized*
[ ] I certify that I personally delivered a copy of this Summons and the Complaint or other document to
Darlene Jones in Barbour County, Alabama on 9/6/24
*(First and Last Name of Person Served)*   *(Name of County)*   *(Date)*
Document left:
[ ] with above-named Defendant;
[✓] with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;
[ ] at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

*Return of Non-Service*
[ ] I certify that service of process of this Summons and the Complaint or other document was refused by
_____ in _____ County, Alabama on _____ who is:
*(First and Last Name of Person Served)*   *(Name of County)*   *(Date)*
[ ] the above-named Defendant;
[ ] an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

[ ] As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

Alicia Sutton ____    65 Ashurst Bar Rd Tallassee, Al 36078
*(Type of Process Server)*   *(Servers Signature)*   *(Address of Server)*
*(Badge or Precinct Number of Sheriff or Constable)*   Alicia Sutton *(Server's Printed Name)*

about:blank



AlaFile E-Notice

69-CV-2024-900056.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:23:17 AM

Notice Date:      9/10/2024 9:23:17 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR (PRO SE)
     6300 WILSHIRE BLVD.
     SUITE 1800
     LOS ANGELES, CA, 90048-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:23:17 AM

Notice Date:     9/10/2024 9:23:17 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:  HEALTHCARE AUTHORITY OF THE CITY OF EUFAULA (PRO SE)
205 EAST BARBOUR STREET
EUFAULA, AL, 36072-0000

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:23:17 AM

Notice Date:     9/10/2024 9:23:17 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov



AlaFile E-Notice

69-CV-2024-900056.00

To:   RICHARD P ROUCO
      rrouco@qcwdr.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA

TERETHA SPANN ET AL V. MCBH, LLC D/B/A MEDICAL CENTER OF BARBOUR ET AL
69-CV-2024-900056.00

The following RETURN ON SERVICE - SERVED was FILED on 9/10/2024 9:23:17 AM

Notice Date:       9/10/2024 9:23:17 AM

PAIGE SMITH
CIRCUIT COURT CLERK
BARBOUR COUNTY, ALABAMA
405 EAST BARBOUR STREET
SUITE 3, ROOM 119
EUFAULA, AL, 36027

334-687-1500
paige.smith@alacourt.gov